==ORAL ARGUMENT NOT YET SCHEDULED==

## No. 22-5105

_____

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤
# 𝕗𝕠𝕣 𝕥𝕙𝕖 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 𝕠𝕗 ℂ𝕠𝕝𝕦𝕞𝕓𝕚𝕒 ℂ𝕚𝕣𝕔𝕦𝕚𝕥

**WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH,
ERIC KOSZYK, JESSE MALEY a/k/a ALEX ANDREWS and
THE INTERNET ARCHIVE,**

*Appellants,*

v.

**THE UNITED STATES OF AMERICA
AND MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE UNITED STATES,**

*Appellees.*

_____

From an Order by the U.S. District Court for the District of Columbia
The Honorable Richard J. Leon, Judge Presiding (Case No. 1:18-cv-1552-RJL)

---

### JOINT APPENDIX

---

Lawrence G. Walters
WALTERS LAW GROUP
195 W. Pine Ave.
Longwood, FL 32750-4104
Phone: 407-975-9150

Robert Corn-Revere
Adam S. Sieff
Caesar Kalinowski IV
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Phone: 202-973-4200

*Attorneys for Appellants*

*additional counsel inside cover*

David Greene
Aaron Mackey
Corynne McSherry
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Phone:  415-436-9333

Daphne Keller
STANFORD CYBER POLICY
CENTER

Encina Hall
616 Jane Stanford Way #E016
Stanford, CA 94305
Phone:  650-725-0325

# TABLE OF CONTENTS

**Page**

Docket Sheet, *Woodhull Freedom Foundation, et al. v. United States*,
Case No. 18-cv-01552-RJL (D.D.C.) ................................................................JA0001

Complaint for Declaratory and Injunctive Relief
(ECF 1, June 28, 2018) ................................................................JA0012

Plaintiffs' Motion for Summary Judgment, Memorandum in Support, and
Accompanying Declarations and Exhibits
(ECF 34 & ECF 34-1 to 34-16, August 31, 2020).........................................JA0063

Defendants' Motion for Summary Judgment, Memorandum in Support, and
Accompanying Declarations and Exhibits
(ECF 35 & ECF 35-1 to 35-3, August 31, 2020).........................................JA0457

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
(ECF 37 & ECF 37-1 to 37-3, October 9, 2020) .........................................JA0512

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment
(ECF 38 & 38-1, October 9, 2020) ................................................................JA0588

Plaintiffs' Reply to Opposition to Motion for Summary Judgment and
Memorandum in Support
(ECF 39, October 26, 2020)................................................................JA0653

Defendants' Reply to Opposition to Motion for Summary Judgment and
Memorandum in Support
(ECF 40, October 26, 2020)................................................................JA0686

Memorandum Opinion re: Motions for Summary Judgment
(ECF 54, March 29, 2022) ................................................................JA0717

Order re: Motions for Summary Judgment
(ECF 55, March 29, 2022) ................................................................JA0745

Notice of Appeal
(ECF 56, April 25, 2022) ................................................................JA0746

APPEAL,CLOSED,TYPE-D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:18-cv-01552-RJL

WOODHULL FREEDOM FOUNDATION et al v. UNITED
STATES OF AMERICA et al
Assigned to: Judge Richard J. Leon
Case in other court:  USCA, 18-05298
                      22-05105
Cause: 42:1983 Civil Rights Act

Date Filed: 06/28/2018
Date Terminated: 03/30/2022
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**WOODHULL FREEDOM
FOUNDATION**

represented by **Robert Corn-Revere**
DAVIS WRIGHT TREMAINE LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
202-973-4200
Fax: 202-973-4499
Email: bobcornrevere@dwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
Fax: (415) 436-9993
Email: davidg@eff.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
WALTERS LAW GROUP
195 W. Pine Avenue
Longwood, FL 32750
(407) 975-9150
Fax: (407) 774-6151
Email: larry@firstamendment.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
FOUNDATION FOR INDIVIDUAL
RIGHTS IN EDUCATION

700 Pennsylvania Avenue, SE
Suite 340
Washington, DC 20003
215-717-3473
Email: ronnie.london@thefire.org
*TERMINATED: 02/26/2021*

**Plaintiff**
**HUMAN RIGHTS WATCH**                    represented by **Robert Corn-Revere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
(See above for address)
*TERMINATED: 02/26/2021*

**Plaintiff**
**ERIC KOSZYK**                    represented by **Robert Corn-Revere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
(See above for address)
*TERMINATED: 02/26/2021*

**Plaintiff**
**JESSE MALEY**                    represented by **Robert Corn-Revere**
*also known as*                    (See above for address)
ALEX ANDREWS                    *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

JA0002

**David Allen Greene**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
(See above for address)
*TERMINATED: 02/26/2021*

**Plaintiff**

**INTERNET ARCHIVE**                     represented by **Robert Corn-Revere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Greene**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lawrence G. Walters**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G. London**
(See above for address)
*TERMINATED: 02/26/2021*

V.

**Defendant**

**UNITED STATES OF AMERICA**            represented by **Kathryn L. Wyer**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 616-8475
Fax: (202) 616-8470
Email: kathryn.wyer@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason Todd Cohen**
U.S. DEPARTMENT OF JUSTICE
175 N Street, NE
Washington, DC 20002
202-514-0335

JA0003

Fax: 202-616-4473
Email: jason.t.cohen@usdoj.gov
*TERMINATED: 03/19/2020*

**Sean Michael Tepe**
U.S. DEPARTMENT OF JUSTICE
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2533
Fax: (202) 252-2599
Email: sean.tepe@usdoj.gov
*TERMINATED: 06/29/2020*

**Defendant**

**WILLIAM P. BARR**                    represented by    **Kathryn L. Wyer**
*in his official capacity as Attorney General*                       (See above for address)
*of the United States*                       *LEAD ATTORNEY*
                       *ATTORNEY TO BE NOTICED*

                       **Sean Michael Tepe**
                       (See above for address)
                       *TERMINATED: 06/29/2020*

**Defendant**

**JEFFERSON B. SESSIONS, III**         represented by    **Jason Todd Cohen**
*in his official capacity as Attorney General*                       (See above for address)
*of the United States*                       *TERMINATED: 03/19/2020*
*TERMINATED: 03/19/2020*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/28/2018 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA ( Filing fee $ 400 receipt number 0090-5562787) filed by WOODHULL FREEDOM FOUNDATION, JESSE MALEY, ERIC KOSZYK, HUMAN RIGHTS WATCH, THE INTERNET ARCHIVE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons)(Corn-Revere, Robert) (Attachment 1 replaced on 6/29/2018) (zmd). (Entered: 06/28/2018) |
| 06/28/2018 | 2 | Corporate Disclosure Statement by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | 3 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Lawrence G. Walters, :Firm- Walters Law Group, :Address- 195 W. Pine Avenue, Longwood, Florida. Phone No. - (407) 975-9150. Filing fee $ 100, receipt number 0090-5562939. Fee Status: Fee Paid. by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Corn-Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | 4 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- David Greene, :Firm- ELECTRONIC FRONTIER FOUNDATION, :Address- 815 Eddy Street, San Francisco, California 94109. Phone No. - (415) 436-9993. Fax No. - (415) 436-9993 Filing fee $ 100, receipt number 0090-5562959. Fee Status: Fee Paid. by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL |

| | | |
|---|---|---|
| | | FREEDOM FOUNDATION (Attachments: # [1] Declaration, # [2] Text of Proposed Order) (Corn-Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | [5] | MOTION for Preliminary Injunction by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # [1] Declaration of K. D'Adamo, # [2] Declaration of R. Levy, # [3] Declaration of D. Pokempner, # [4] Declaration of E. Koszyk, # [5] Declaration of J. Maley, # [6] Declaration of B. Kahle, # [7] Declaration of A. Lutnick, # [8] Declaration of A. Levy, # [9] Declaration of K. Mehlman-Orozco, # [10] Text of Proposed Order)(Corn-Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | [6] | MOTION to Exclude Plaintiffs from Local Rule 7(m) re [5] MOTION for Preliminary Injunction by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION (Attachments: # [1] Text of Proposed Order)(Corn-Revere, Robert) (Entered: 06/28/2018) |
| 06/28/2018 | | Case Assigned to Judge Richard J. Leon. (zmd) (Entered: 06/29/2018) |
| 06/29/2018 | [7] | SUMMONS (2) Issued as to JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA, U.S. Attorney (Attachments: # [1] Notice and Consent) (zmd) (Entered: 06/29/2018) |
| 06/29/2018 | [8] | CERTIFICATE OF SERVICE by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION re [6] MOTION to Exclude Plaintiffs from Local Rule 7(m) re [5] MOTION for Preliminary Injunction , [4] MOTION for Leave to Appear Pro Hac Vice :Attorney Name- David Greene, :Firm- ELECTRONIC FRONTIER FOUNDATION, :Address- 815 Eddy Street, San Francisco, California 94109. Phone No. - (415) 436-9993. Fax No. - (415) 436-9993 Filing fee &, [5] MOTION for Preliminary Injunction , [3] MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Lawrence G. Walters, :Firm- Walters Law Group, :Address- 195 W. Pine Avenue, Longwood, Florida. Phone No. - (407) 975-9150. Filing fee $ 100, receipt number 0090-5562939., [2] Corporate Disclosure Statement . (Corn-Revere, Robert) (Entered: 06/29/2018) |
| 06/29/2018 | [9] | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 6/29/18. (Corn-Revere, Robert) (Entered: 06/29/2018) |
| 06/29/2018 | [10] | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/29/2018. Answer due for ALL FEDERAL DEFENDANTS by 8/28/2018. (Corn-Revere, Robert) (Entered: 06/29/2018) |
| 07/02/2018 | [11] | NOTICE of filing of Exh. 1 to R. Levy Decl. [Dkt. 5-2] by HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY, THE INTERNET ARCHIVE, WOODHULL FREEDOM FOUNDATION re [5] MOTION for Preliminary Injunction (Attachments: # [1] Exhibit to R. Levy Decl. in Support of Motion for Preliminary Injunction)(Corn-Revere, Robert) (Entered: 07/02/2018) |
| 07/02/2018 | [12] | NOTICE of Appearance by Jason Todd Cohen on behalf of All Defendants (Cohen, Jason) (Entered: 07/02/2018) |
| 07/02/2018 | [13] | NOTICE of Appearance by Ronald G. London on behalf of All Plaintiffs (London, Ronald) (Entered: 07/02/2018) |
| 07/05/2018 | | MINUTE ORDER: Upon consideration of [3] Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that Lawrence G. Walters is allowed to appear pro hac vice for |

| | | |
|---|---|---|
| | | Plaintiffs in this case. SO ORDERED. Signed by Judge Richard J. Leon on 7/5/2018. (lcrjl2) (Entered: 7/5/2018) (Entered: 07/05/2018) |
| 07/05/2018 | | MINUTE ORDER: Upon consideration of 4 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that David Greene is allowed to appear pro hac vice for Plaintiffs in this case. SO ORDERED. Signed by Judge Richard J. Leon on 7/5/2018. (lcrjl2) (Entered: 07/05/2018) (Entered: 07/05/2018) |
| 07/05/2018 | | MINUTE ORDER. Upon consideration of 5 Motion for Preliminary Injunction, it is hereby ORDERED that Defendants shall file their Opposition to 5 the Motion by 6:00pm on July 10, 2018, and that Plaintiffs shall file their Reply in support of 5 the Motion by 6:00pm on July 17, 2018. It is further ORDERED that a hearing on the 5 Motion for Preliminary Injunction is scheduled for July 19, 2018 at 4:00pm before Judge Richard J. Leon in Courtroom 18. SO ORDERED. Signed by Judge Richard J. Leon on 7/5/2018. (lcrjl2, ) (Entered: 07/05/2018) |
| 07/05/2018 | 14 | First MOTION for Extension of Time to File Response/Reply as to 5 MOTION for Preliminary Injunction by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Cohen, Jason) (Entered: 07/05/2018) |
| 07/05/2018 | | Set/Reset Deadlines/Hearings: Defendants Opposition to the Motion for 5 Preliminary Injunction is due by 6:00 PM on 7/10/2018; Plaintiffs Reply is due by 6:00 PM on 7/17/2018; a Hearing on the Motion for Preliminary Injunction is scheduled for 7/19/2018 at 4:00 PM before Judge Richard J. Leon in Courtroom 18. (jth) (Entered: 07/08/2018) |
| 07/10/2018 | | MINUTE ORDER. Upon consideration of 14 Defendants' First Motion for Extension of Time to File Opposition to Plaintiffs' Motion for Preliminary Injunction 5 , and for good cause shown, it is hereby ORDERED that Defendants shall file their Opposition to 5 the Motion for Preliminary Injunction by 6:00pm on July 12, 2018, and that Plaintiffs shall file their Reply in support of 5 the Motion by 6:00pm on July 17, 2018. It is further ORDERED that a hearing on the 5 Motion for Preliminary Injunction is scheduled for July 19, 2018 at 4:00pm before Judge Richard J. Leon in Courtroom 18. SO ORDERED. Signed by Judge Richard J. Leon on 7/10/2018. (lcrjl2, ) (Entered: 07/10/2018) |
| 07/12/2018 | 15 | Memorandum in opposition to re 5 MOTION for Preliminary Injunction *and Motion to Dismiss Plaintiffs' Complaint* filed by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit Mar. 23, 2018, Letter to OMB from DOJ, # 2 Text of Proposed Order)(Cohen, Jason) (Entered: 07/12/2018) |
| 07/12/2018 | 16 | MOTION to Dismiss *(Duplicate filing of ECF No. 15)* by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Exhibit Mar. 23, 2018, Letter to OMB from DOJ, # 2 Text of Proposed Order)(Cohen, Jason) (Entered: 07/12/2018) |
| 07/17/2018 | 17 | REPLY to opposition to motion re 5 MOTION for Preliminary Injunction filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) (Entered: 07/17/2018) |
| 07/19/2018 | | Minute Entry for Proceedings held before Judge Richard J. Leon: Motion Hearing held on 7/19/2018 re: Plaintiffs' 5 Motion for Preliminary Injunction. Plaintiffs' 5 Motion was Heard and Taken Under Advisement. The parties may file supplemental pleadings within ten (10) days of their receipt of the transcript. (Court Reporter: William P. Zaremba) (jth) (Entered: 07/19/2018) |
| 07/20/2018 | 18 | STANDING ORDER. Signed by Judge Richard J. Leon on 7/20/2018. (lcrjl2, ) (Entered: 07/20/2018) |
| 07/26/2018 | 19 | RESPONSE re 16 MOTION to Dismiss *(Duplicate filing of ECF No. 15)* filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, |

| | | WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) (Entered: 07/26/2018) |
|---|---|---|
| 08/02/2018 | 20 | Unopposed MOTION for Extension of Time to File Response/Reply as to 16 MOTION to Dismiss *(Duplicate filing of ECF No. 15)* by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Cohen, Jason) (Entered: 08/02/2018) |
| 08/03/2018 | | MINUTE ORDER: Upon consideration of 20 Defendants' Unopposed Motion for Extension of Time to File Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss, it is hereby ORDERED that 20 the Motion is GRANTED. It is further ORDERED that the deadline for Defendants to file their Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss is extended to August 6, 2018. Signed by Judge Richard J. Leon on 8/3/2018. (lcrjl2, ) (Entered: 08/03/2018) |
| 08/06/2018 | 21 | REPLY to opposition to motion re 16 MOTION to Dismiss *(Duplicate filing of ECF No. 15)* filed by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA. (Cohen, Jason) (Entered: 08/06/2018) |
| 08/06/2018 | 22 | SUPPLEMENTAL MEMORANDUM to re 5 MOTION for Preliminary Injunction filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) (Entered: 08/06/2018) |
| 08/13/2018 | 23 | TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION HEARING PROCEEDINGS before Judge Richard J. Leon held on July 19, 2018; Page Numbers: 1-43. Date of Issuance: August 13, 2018. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public termi nal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/3/2018. Redacted Transcript Deadline set for 9/13/2018. Release of Transcript Restriction set for 11/11/2018.(wz) (Entered: 08/13/2018) |
| 08/14/2018 | 24 | Consent MOTION for Extension of Time to *Confer and to File Joint Meet and Confer Statement* by JEFFERSON B. SESSIONS, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Cohen, Jason) (Entered: 08/14/2018) |
| 09/24/2018 | 25 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 9/24/2018. (jth) (Entered: 09/24/2018) |
| 09/24/2018 | 26 | ORDER. For the reasons stated in the accompanying Memorandum Opinion, defendants' 16 Motion to Dismiss is GRANTED, and plaintiffs' 5 Motion for Preliminary Injunction is DENIED as moot. SO ORDERED. Signed by Judge Richard J. Leon on 9/24/2018. (jth) (Entered: 09/24/2018) |
| 10/09/2018 | 27 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 26 Order on Motion for Preliminary Injunction,, Order on Motion to Dismiss, by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM |

JA0007

| | | |
|---|---|---|
| | | FOUNDATION. Filing fee $ 505, receipt number 0090-5728095. Fee Status: Fee Paid. Parties have been notified. (Corn-Revere, Robert) (Entered: 10/09/2018) |
| 10/09/2018 | 28 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 27 Notice of Appeal to DC Circuit Court. (zrdj) (Entered: 10/09/2018) |
| 10/12/2018 | | USCA Case Number 18-5298 for 27 Notice of Appeal to DC Circuit Court, filed by JESSE MALEY, ERIC KOSZYK, INTERNET ARCHIVE, HUMAN RIGHTS WATCH, WOODHULL FREEDOM FOUNDATION. (zrdj) (Entered: 10/15/2018) |
| 03/18/2020 | 29 | MANDATE of USCA as to 27 Notice of Appeal to DC Circuit Court, filed by JESSE MALEY, ERIC KOSZYK, INTERNET ARCHIVE, HUMAN RIGHTS WATCH, WOODHULL FREEDOM FOUNDATION ; USCA Case Number 18-5298. (Attachment: # 1 USCA Judgment)(zsb) (Entered: 03/19/2020) |
| 03/19/2020 | 30 | NOTICE OF SUBSTITUTION OF COUNSEL by Sean Michael Tepe on behalf of All Defendants Substituting for attorney Jason Cohen (Tepe, Sean) (Entered: 03/19/2020) |
| 06/29/2020 | 31 | MOTION for Telephone Conference - *Request for Scheduling Conference* by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION (Corn-Revere, Robert) Modified per counsel to remove the wording "joint" on 6/29/2020 (ztd). (Entered: 06/29/2020) |
| 06/29/2020 | 32 | NOTICE OF SUBSTITUTION OF COUNSEL by Kathryn L. Wyer on behalf of WILLIAM P. BARR, UNITED STATES OF AMERICA Substituting for attorney Sean M. Tepe (Wyer, Kathryn) (Entered: 06/29/2020) |
| 06/29/2020 | 33 | RESPONSE re 31 Joint MOTION for Telephone Conference - *Request for Scheduling Conference* filed by WILLIAM P. BARR, UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 06/29/2020) |
| 07/07/2020 | | MINUTE ORDER. Upon consideration of 31 Request for Scheduling Conference, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that a telephonic scheduling conference is set for July 13, 2020 at 3:00 PM before Judge Richard J. Leon. The Deputy Clerk will contact the parties regarding instructions for participating in the conference. SO ORDERED. Signed by Judge Richard J. Leon on 7/7/2020. (lcrjl1) (Entered: 07/07/2020) |
| 07/07/2020 | | Set/Reset Hearings: Telephonic Scheduling Conference Call is set for 7/13/2020 at 3:00 PM before Judge Richard J. Leon. (jth) (Entered: 07/07/2020) |
| 07/13/2020 | | Minute Entry for proceedings held before Judge Richard J. Leon: Telephone Scheduling Conference Call held on 7/13/2020. Scheduling Order to be issued by the Court. (Court Reporter: William P. Zaremba) (jth) (Entered: 07/13/2020) |
| 07/16/2020 | | MINUTE ORDER. It is hereby ORDERED that the any cross-motions for summary judgment shall be due within 45 days of this order, oppositions shall be due within 30 days of the filing of any cross-motions for summary judgment, and any replies in support of any cross-motions for summary judgment shall be due within 15 days of the filing of oppositions. SO ORDERED. Signed by Judge Richard J. Leon on 7/16/2020. (lcrjl1) (Entered: 07/16/2020) |
| 08/31/2020 | 34 | MOTION for Summary Judgment by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration of K. D'Adamo (Ex. A to Statement of Facts), # 4 Exhibit to D'Adamo Decl., # 5 Declaration of J. Ashooh (Ex. B to Statement of Facts), # 6 Declaration of A. Lutnik (Ex. C to Statement of Facts), # 7 Exhibit to Lutnik Decl., # 8 Declaration of A. Yelderman (Ex. D to |

JA0008

| | | |
|---|---|---|
| | | Statement of Facts), # 9 Exhibit to Yelderman Decl., # 10 Declaration of J. Maley (Ex. E to Statement of Facts), # 11 Declaration of B. Kahle (Ex. F to Statement of Facts), # 12 Declaration of R. Levy (Ex. G to Statement of Facts), # 13 Exhibit to Levy Decl., # 14 Declaration of E. Koszyk (Ex. H to Statement of Facts), # 15 Declaration of D. PoKempner (Ex. I to Statement of Facts), # 16 Text of Proposed Order)(Corn-Revere, Robert) (Entered: 08/31/2020) |
| 08/31/2020 | 35 | MOTION for Summary Judgment by WILLIAM P. BARR, UNITED STATES OF AMERICA (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Wyer, Kathryn) (Entered: 08/31/2020) |
| 09/14/2020 | 36 | MOTION for Extension of Time to File Response/Reply as to 35 MOTION for Summary Judgment , 34 MOTION for Summary Judgment by WILLIAM P. BARR, UNITED STATES OF AMERICA (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 09/14/2020) |
| 09/16/2020 | | MINUTE ORDER. Upon consideration of 36 Defendants' Uncontested Motion for an Extension of Time, it is hereby ORDERED that the motion is GRANTED. It is ORDERED that the parties will file their oppositions to the cross-motions for summary judgment on or before October 9, 2020. It is further ORDERED that the parties will file their replies on or before October 26, 2020. SO ORDERED. Signed by Judge Richard J. Leon on 9/16/20. (lcrjl1) (Entered: 09/16/2020) |
| 09/17/2020 | | Set/Reset Deadlines: Response to Cross Motions due by 10/9/2020. Reply to Cross Motions due by 10/26/2020. (tb) (Entered: 09/17/2020) |
| 10/09/2020 | 37 | Memorandum in opposition to re 34 MOTION for Summary Judgment filed by WILLIAM P. BARR, UNITED STATES OF AMERICA. (Attachments: # 1 Response to Plaintiffs' Statement of Facts, # 2 Declaration of Kathryn Wyer, # 3 Text of Proposed Order)(Wyer, Kathryn) (Entered: 10/09/2020) |
| 10/09/2020 | 38 | Memorandum in opposition to re 35 MOTION for Summary Judgment filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Attachments: # 1 Response to Defendants' Statement of Material Facts Not In Dispute)(Corn-Revere, Robert) (Entered: 10/09/2020) |
| 10/26/2020 | 39 | REPLY to opposition to motion re 34 MOTION for Summary Judgment filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) (Entered: 10/26/2020) |
| 10/26/2020 | 40 | REPLY to opposition to motion re 35 MOTION for Summary Judgment filed by WILLIAM P. BARR, UNITED STATES OF AMERICA. (Wyer, Kathryn) (Entered: 10/26/2020) |
| 01/07/2021 | 41 | NOTICE OF SUPPLEMENTAL AUTHORITY by WILLIAM P. BARR, UNITED STATES OF AMERICA (Attachments: # 1 Memorandum Opinion and Order, United States v. Martono (N.D. Tex. Jan. 5, 2021))(Wyer, Kathryn) (Entered: 01/07/2021) |
| 01/11/2021 | 42 | ENTERED IN ERROR.....RESPONSE re 41 NOTICE OF SUPPLEMENTAL AUTHORITY filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) Modified on 1/12/2021 (zjf). (Entered: 01/11/2021) |
| 01/12/2021 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 42 Response to Document was entered in error and counsel was instructed to refile said pleading as proper pleading. (Counsel should review LCvR 5.1 (a) CORRESPONDENCE WITH THE COURT) (zjf) (Entered: 01/12/2021) |
| 01/12/2021 | | NOTICE OF ERROR re 42 Response to Document; emailed to bobcornrevere@dwt.com, |

JA0009

| | | cc'd 23 associated attorneys -- The PDF file you docketed contained errors. 1. Incorrect header/caption/case number, 2. Please refile document, 3. as a proper pleading. Case caption Court heading Case number etc. (zjf, ) (Entered: 01/12/2021) |
|---|---|---|
| 01/12/2021 | 43 | RESPONSE re 41 NOTICE OF SUPPLEMENTAL AUTHORITY filed by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) (Entered: 01/12/2021) |
| 02/26/2021 | 44 | NOTICE OF WITHDRAWAL OF APPEARANCE as to HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. Attorney Ronald G. London terminated. (London, Ronald) (Entered: 02/26/2021) |
| 03/09/2021 | 45 | NOTICE OF SUPPLEMENTAL AUTHORITY by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Exhibit)(Corn-Revere, Robert) (Entered: 03/09/2021) |
| 06/30/2021 | 46 | NOTICE OF SUPPLEMENTAL AUTHORITY by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Superior Court Documents)(Corn-Revere, Robert) (Entered: 06/30/2021) |
| 07/07/2021 | 47 | NOTICE OF SUPPLEMENTAL AUTHORITY by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION (Attachments: # 1 Americans for Prosperity Foundation v Bonta, # 2 Order Granting Preliminary Injunction - NetChoice v Moody)(Corn-Revere, Robert) (Entered: 07/07/2021) |
| 07/07/2021 | 48 | RESPONSE *Defendants' Response to Plaintiffs' Notice of Supplemental Authority* by WILLIAM P. BARR, UNITED STATES OF AMERICA re 46 NOTICE OF SUPPLEMENTAL AUTHORITY (Wyer, Kathryn) Modified event title on 7/15/2021 (znmw). (Entered: 07/07/2021) |
| 07/13/2021 | 49 | RESPONSE *Defendants' Response* by WILLIAM P. BARR, UNITED STATES OF AMERICA re 47 NOTICE OF SUPPLEMENTAL AUTHORITY, (Wyer, Kathryn) Modified event title on 7/15/2021 (znmw). (Entered: 07/13/2021) |
| 02/07/2022 | 50 | MOTION for Hearing - *Status Conference* by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Attachments: # 1 Text of Proposed Order)(Corn-Revere, Robert) (Entered: 02/07/2022) |
| 02/15/2022 | 51 | MOTION for Extension of Time to File Response/Reply as to 50 MOTION for Hearing - *Status Conference* by WILLIAM P. BARR, UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 02/15/2022) |
| 02/17/2022 | | MINUTE ORDER. Upon consideration of defendants' 51 Motion for Extension of Time to File Response/Reply, it is hereby ORDERED that motion is GRANTED. It is further ORDERED that Defendants shall file any response to plaintiffs' motion on or before March 7, 2022. SO ORDERED. Signed by Judge Richard J. Leon on 2/17/2022. (lcrjl1) (Entered: 02/17/2022) |
| 03/07/2022 | 52 | Memorandum in opposition to re 50 MOTION for Hearing - *Status Conference* filed by WILLIAM P. BARR, UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(Wyer, Kathryn) (Entered: 03/07/2022) |
| 03/08/2022 | 53 | REPLY re 51 MOTION for Extension of Time to File Response/Reply as to 50 MOTION for Hearing - *Status Conference* filed by HUMAN RIGHTS WATCH, INTERNET |

| | | |
|---|---|---|
| | | ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. (Corn-Revere, Robert) Modified on 3/9/2022 (zjf). (Entered: 03/08/2022) |
| 03/29/2022 | 54 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 03/29/2022. (lcrjl1) (Entered: 03/29/2022) |
| 03/29/2022 | 55 | ORDER. The Clerk is directed to close this case. Signed by Judge Richard J. Leon on 03/29/2022. (lcrjl1) (Entered: 03/29/2022) |
| 04/25/2022 | 56 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 54 Order on Motion for Summary Judgment,, Order on Motion for Hearing by HUMAN RIGHTS WATCH, INTERNET ARCHIVE, ERIC KOSZYK, JESSE MALEY, WOODHULL FREEDOM FOUNDATION. Filing fee $ 505, receipt number ADCDC-9192156. Fee Status: Fee Paid. Parties have been notified. (Corn-Revere, Robert) (Entered: 04/25/2022) |
| 04/25/2022 | 57 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 56 Notice of Appeal to DC Circuit Court,. (zjf) (Entered: 04/25/2022) |
| 05/02/2022 | | USCA Case Number 22-5105 for 56 Notice of Appeal to DC Circuit Court, filed by JESSE MALEY, ERIC KOSZYK, INTERNET ARCHIVE, HUMAN RIGHTS WATCH, WOODHULL FREEDOM FOUNDATION. (zjf) (Entered: 05/02/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/27/2022 11:50:14 | | |
| **PACER Login:** | dw0013 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-01552-RJL |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WOODHULL FREEDOM FOUNDATION  )
1601 18th Street NW #4                        )
Washington, DC  20036,                       )
                                                          )
HUMAN RIGHTS WATCH                    )
350 Fifth Avenue, 34th Floor              )
New York, NY  10118-3299,               )
                                                          )       Case No. _____
ERIC KOSZYK                                     )
5632 SE 68th Ave                              )
Portland, OR  97206,                         )       **COMPLAINT FOR
                                                          )       DECLARATORY AND
                                                          )       INJUNCTIVE RELIEF**
JESSE MALEY, a/k/a ALEX ANDREWS  )
1060 Lotus Pkwy, #1011                     )
Altamonte Springs, FL  32714, and      )
                                                          )
THE INTERNET ARCHIVE                   )
3300 Funston Ave                              )
San Francisco, CA  94118,                  )
                                                          )
              Plaintiffs,                            )
                                                          )
       v.                                               )
                                                          )
THE UNITED STATES OF AMERICA    )
and JEFFERSON B. SESSIONS, in his   )
official capacity as ATTORNEY GENERAL  )
OF THE UNITED STATES                    )
950 Pennsylvania Avenue, NW             )
Washington, DC  20530,                     )
                                                          )
              Defendants.                         )
                                                          )

## INTRODUCTION

1.      This is an action for declaratory and injunctive relief challenging the constitution-

ality of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA" or

the "Act"), which created a new federal offense that prohibits the use or operation of websites

with the intent to "promote" or "facilitate" prostitution, expanded potential liability for federal

sex trafficking offenses, and amended Section 230 of the Communications Decency Act of 1996,

47 U.S.C. § 230 ("Section 230" or "CDA"), to limit federal immunity for online platforms that

host third-party speech.  Using expansive and undefined terms, FOSTA's criminal penalties and ruinous civil liability turn entirely on what content and viewpoints online speakers publish, the content and viewpoints that a platform allows to be posted, and the editorial policies a platform uses in determining whether to block, modify or remove material created by others.  The law has already muzzled countless online speakers and led to closure of many online platforms that hosted their speech.  By this action, Plaintiffs seek to have the Act declared unconstitutional under the First and Fifth Amendments of the United States Constitution, both on its face and as applied to Plaintiffs, and to enjoin the government from enforcing the Act.

2.     Plaintiffs are individuals and organizations engaged in constitutionally protected speech on the Internet, including a national human rights organization dedicated to sexual free-dom, an international human rights organization, a massage therapist, an activist dedicated to assisting and advocating for the rights of sex workers, and a digital library of Internet sites and other cultural artifacts in digital form, that have already been harmed by FOSTA.  Three Plain-tiffs advocate for the legalization of sex work, both domestically and internationally, provide education, health and safety resources, and more broadly work to support sex workers, and are thus concerned that continuing their advocacy and assistance efforts will be considered "promot-ing or facilitating" prostitution, or that prosecutors or civil litigants will allege that they "reck-lessly disregard" that their activities may "contribute to" sex trafficking.  This uncertainty has stopped some plaintiffs from speaking, at significant costs to their organizational and individual missions.  Another plaintiff has suffered constitutional and monetary injuries because the online platforms he used to disseminate his speech have shut down because the operators reasonably fear liability under FOSTA.  Still others are uncertain as to the legality of their well-established practices.

JA0013

3.      FOSTA represents the most broadly-based and comprehensive legislative censor-ship of Internet speech since Congress passed the anti-indecency provisions of the CDA in 1996, which were struck down in a unanimous Supreme Court ruling.  FOSTA contains a number of speech-restricting provisions, but most significantly, it:

    a.   Created new federal criminal and civil liability for  anyone who "owns, manages, or operates an interactive computer service" and speaks, or hosts third-party content, with the intent to "promote or facilitate the prostitution of another person."  18 U.S.C. § 2421A(a);

    b.   Expanded criminal and civil liability to treat any online speaker or platform that allegedly assists, supports, or facilitates sex trafficking as though they are participating "in a venture" with individuals directly engaged in sex trafficking. *Id.* § 1591;

    c.   Carved out significant exceptions to the immunity provisions of 47 U.S.C. § 230 to create new criminal and civil liability for online platforms based on whether the content and viewpoints expressed by their users' speech might be seen as promoting or facilitating prostitution, or as assisting, supporting or facilitating sex trafficking.

4.      FOSTA's prohibitions are entirely content-based, imposing harsh criminal penalties and authorizing heavy civil liability for online publishers who allegedly "promote" or "facilitate" the "prostitution" of another person, or who act in "reckless disregard" that their actions "contribute to sex trafficking."

5.      Both through direct restrictions and because of multiple layers of ambiguity, FOSTA is driving constitutionally protected speech off the Internet at a rapid pace; and, like the CDA before it, FOSTA "threatens to torch a large segment of the Internet community." *Reno v. ACLU*, 521 U.S. 844, 882 (1997).  FOSTA's restrictions on speech cannot satisfy strict scrutiny because they do not effectively serve a compelling interest and are not the least restrictive means of attempting to do so, its operative provisions are vague and overly broad, and its selective alter-ation of federal immunity for online intermediaries is designed to promote censorship.  These constitutional defects are magnified by the law's *ex post facto* application.

6.      The threat to online freedom of expression is significant.  As the Supreme Court explained in *Reno*, the Internet burst onto the scene as a unique and wholly new global medium of human communication that gave individuals access to information as "diverse as human thought" on topics ranging from "the music of Wagner to Balkan politics to AIDS prevention to the Chicago Bulls." *Id*. at 849-52.  It also naturally enabled people to communicate about sex, which the Court has acknowledged is "a great and mysterious motive force in human life" that "indisputably [has] been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and public concern." *Roth* v. *United States,* 354 U.S. 476, 487 (1957).

7.      The other unprecedented innovation of online communication is that it allows individuals to both publish and receive information, and it facilitates countless interactions on a worldwide scale.  As the first courts to consider the implications of this new medium quickly determined, the Internet is "the most participatory form of mass speech yet developed," and it makes possible for the first time in history "a never-ending worldwide conversation." *ACLU v. Reno*, 929 F. Supp. 824, 883 (E.D. Pa. 1996) (Dalzel, J.), *aff'd*, 521 U.S. 844.  The need to protect the online ecosystem has become even more vital in the two decades since these initial decisions, as ways to access the Web have multiplied and social media have become a part of daily life.

8.      The initial impulse of Congress to this wondrous new medium was to censor it. Senator James Exon proposed the CDA to prohibit "indecent" speech online as part of a comprehensive rewrite of the Communications Act.  At the time, Congress believed it could freely regulate Internet speech under a relaxed level of First Amendment scrutiny, the same as it regulates broadcast radio and television, expression directed to minors, or certain "secondary

effects." *Reno*, 521 U.S. at 867.  Another section of the CDA, Section 507, prohibited trans-

mission of information "intended for producing abortion."  *See Sanger v. Reno*, 966 F. Supp.

151, 157-58 (E.D.N.Y. 1997).  However, another provision of the CDA, Section 230, was added

to Senator Exon's proposal as something of a First Amendment "savings clause."  Internet

Freedom and Family Empowerment Act, H.R. 1978, 104th Cong. (1995).  It was based on the

recognition that free expression on this new medium would greatly depend on the ability to host

third-party speech without incurring the risk of liability, and to make editorial judgments about

what expression to permit.  *See*, *e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1027-29 (9th Cir. 2003).

Without such protections, and especially in light of the censorship provisions elsewhere in the

CDA, online communication would have been far less robust, diverse, and free.  *Zeran v. Am.

Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

      9.     The Supreme Court rejected not just the CDA's specific censorial provisions, but

also the very premise on which they were based, admonishing that "our cases provide no basis

for qualifying the level of First Amendment scrutiny that should be applied to this medium."

*Reno*, 521 U.S. at 870.  It raised alarms about any approach to Internet regulation that would cast

doubt among speakers about whether they might risk liability if they communicated about such

things as birth control practices, homosexuality, sexually oriented topics, or the consequences of

prison rape (among many other matters).  *Id*. at 871.  And it has reaffirmed and expanded on

these findings in decisions over the past twenty years.  *E.g.*, *Ashcroft v. Free Speech Coalition*,

535 U.S. 234 (2002); *Ashcroft v. ACLU*, 542 U.S. 656 (2004).  Just last year the Supreme Court

observed that the Internet, and particularly social media, has become an indispensable place to

exchange ideas because it "offers 'relatively unlimited, low-cost capacity for communication of

all kinds.'"  *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735-36 (2017) (quoting *Reno*, 521

U.S. at 870).  It accordingly urged "extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium." *Id*. at 1736.

10.    Throughout this same period, Section 230 of the CDA remained intact, and numerous courts held its speech-protective provisions provided essential support for online freedom of expression.  *E.g.*, *Jones v. Dirty World Ent'm't Recordings LLC*, 755 F.3d 398, 408-09 (6th Cir. 2014); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007); *Batzel*, 333 F.3d at 1027-29.

11.    These twin pillars of online free expression – strict scrutiny of any regulation of online expression, coupled with freedom to transmit third-party speech without risk of civil or criminal sanctions – have helped maintain the Internet as "the premier technological innovation of the present age."  *American Libraries Ass'n. v. Pataki*, 969 F. Supp. 160, 161 (S.D.N.Y. 1997).

12.    Because the medium is the most democratized forum for communication in human history and facilitates speech that is both good and bad, there have been ongoing efforts to impose various types of restrictions.  Even after the Supreme Court invalidated the indecency regulations of the CDA, Congress adopted, and for a decade the government defended, the Child Online Protection Act, which sought to prohibit Internet speech considered "harmful to minors." But after two trips to the Supreme Court, that measure was invalidated under the same principles articulated in *Reno*.  *See ACLU v. Mukasey*, 534 F.3d 181 (3d Cir. 2008).  The various efforts to restrict online speech illustrate the difficulty of regulating in this area without going too far, and underscore "the importance of preserving free speech on the internet, even though that medium serves as a conduit for much that is distasteful or unlawful."  *Google v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016).

JA0017

13.     Passage of FOSTA represents the latest such effort, and is another example of where Congress got the balance wrong.  Plaintiffs oppose all forms of human coercion and therefore do not question congressional intentions.  And they support appropriately targeted and effective measures to end sex trafficking.  But FOSTA will not reduce such practices; to the contrary, it only makes matters worse.  The law erroneously conflates all sex work with trafficking.  By employing expansive and undefined terms to regulate online speech, backed by the threat of heavy criminal penalties and civil liability, FOSTA casts a pall over any online communication with even remote connections to sexual relations.  It has impeded efforts to prevent trafficking and rescue victims, and has only made all forms of sex work more dangerous.  FOSTA has undermined protections for online freedom of expression, contrary to the near unanimity of judicial decisions over the past two decades.

14.     Plaintiffs therefore urge this Court to declare FOSTA unconstitutional and to enjoin its enforcement.

**THE PARTIES**

15.     Plaintiff Woodhull Freedom Foundation ("Woodhull") is a 501(c)(3) tax-exempt organization based in Washington, DC.  Founded in February, 2003, Woodhull is the only national human rights organization working full time toward affirming and protecting the fundamental human right to sexual freedom.

16.     Human Rights Watch  ("HRW") is a 501(c)(3) tax-exempt organization based in New York, NY that monitors human rights conditions worldwide and advocates for the cessation and remediation of human rights violations worldwide.  Since 2013, HRW has advocated for the decriminalization of sex work, and for respect for the human rights of sex workers around the world, including in the United States.

JA0018

17.     Eric Koszyk is a licensed massage therapist who lives in Portland, Oregon.  He is the sole proprietor of Soothing Spirit Massage, a personal massage business he has run since 2007.  He has used the online classified advertising platform Craigslist (www.craigslist.org) as the primary way of finding clients for Soothing Spirit Massage, but since the passage of FOSTA has been blocked from posting advertisements for his service.

18.     Jesse Maley, aka Alex Andrews, is the co-founder, organizer, and director of several organizations and a website dedicated to advocating for sex workers' health, safety, and human rights who resides in Altamonte Springs, Florida.  She is a co-founder of the website Rate That Rescue (www.ratethatrescue.org), which is a sex worker-led, public, free, community effort to help everyone share information about both the organizations they can rely on, and those they should avoid.

19.     The Internet Archive ("the Archive") is a 501(c)(3) nonprofit founded in 1996 to build an Internet library and to prevent online and other "born-digital" materials from disappearing into the past.  The Archive collects and displays web materials on behalf of the Library of Congress, the National Archives, most state archives and libraries, as well as universities and other countries, with the vast majority in its collection being material authored by third parties.

20.     Defendant Attorney General Jefferson B. Sessions III heads the United States Department of Justice, which is the agency of the United States government responsible for enforcement of federal criminal laws, including the statute at issue in this case.

21.     Defendant United States of America includes all federal government agencies and departments responsible for implementation of the Act.

## JURISDICTION AND VENUE

22.     This action arises under FOSTA and the United States Constitution, particularly

Article I and the First and Fifth Amendments.

23.     This Court has original jurisdiction over these federal claims pursuant to

28 U.S.C. § 1331.

24.     This Court has authority to grant the requested declaratory judgment pursuant to

28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, because the case presents

an actual case or controversy within the Court's jurisdiction.

25.     This Court has authority to issue the requested injunctive relief under Federal

Rule of Civil Procedure 65, along with its inherent power to render equitable relief.

26.     Venue is appropriate pursuant to 28 U.S.C. § 1391(e)(1).

## BACKGROUND

### Legislative History

27.     As enacted, FOSTA combined provisions of a bill passed by the House, the Allow

States and Victims to Fight Online Sex Trafficking Act of 2017, and a bill the Senate passed, the

Stop Enabling Sex Traffickers Act ("SESTA"), to create what experts called "the worst of both

worlds."  Eric Goldman, *'Worst of Both Worlds' FOSTA Signed Into Law, Completing Section

230's Eviceration*, Technology & Marketing Law Blog, April 11, 2018,

https://blog.ericgoldman.org/archives/2018/04/worst-of-both-worlds-fosta-signed-into-law-

completing-section-230s-evisceration.htm.

28.     On April 3, 2017, Representative Ann Wagner introduced FOSTA, H.R. 1865,

with a stated purpose of "clarify[ing] that Section 230 … does not prohibit the enforcement … of

Federal and State criminal and civil law relating to sexual exploitation of children or sex

trafficking[.]"  163 Cong. Rec. H2629 (daily ed. Apr. 3, 2017).  As later explained in the House Report on the bill, it was "designed to combat online sex trafficking by providing new tools to law enforcement through a new federal criminal statute and by making it easier for states to prosecute criminal actor websites by amending section 230 of the Communications Decency Act."  H.R. Rep. No. 115-572, pt. 1, at 3 (2018).  The bill also proposed to amend 18 U.S.C. § 1591 to define the term "participation in a venture" relating to trafficking, and to impose liability on interactive computer services in connection with "publish[ing] information" in furtherance of trafficking offenses.

29.     On August 1, 2017, Senator Rob Portman introduced the first version of SESTA, the purpose of which was said to be the same as FOSTA.  163 Cong. Rec. S4670-71 (daily ed. Aug. 1, 2017), S4670S.  It proposed amending Section 230 to eliminate immunity for "any State criminal prosecution or civil enforcement action targeting conduct" that violates federal criminal law prohibiting certain forms of sex trafficking, and to remove immunity for federal civil suits by victims of sex trafficking under 18 U.S.C. § 1595.  The bill defined "participation in a venture" as knowingly "assist[ing], support[ing], or facilitat[ing]" sex trafficking.  *Id.*

30.     As Congress weighed the legislation, experts warned it would have a widespread censorial impact on online speech, that it would fail to reduce trafficking, and that it would make sex work more dangerous.  Senator Ron Wyden warned the bill "punches a hole in the legal framework of the open internet."  164 Cong. Rec. S1869 (daily ed. Mar. 21, 2018).  Groups as diverse as the ACLU and the Cato Institute opposed the measure.  Cato cautioned that "[a] combined FOSTA/SESTA would benefit established social media platforms and trial lawyers at the expense of an open internet while doing little to prevent sex trafficking."  *Id.* S1867.  The ACLU predicted that "the scope of the bill's language will encompass the actions of sex workers

who have no connection to trafficking whatsoever within its enforcement, including effective harm reduction and anti-violence tactics." *Id*.

31.    Congress was also warned that despite its stated intention to assist law enforcement and anti-trafficking efforts, the proposed law would actually hinder such efforts, and pose grave risks to sex workers.  Russ Winkler, a Special Agent in Charge with the Tennessee Bureau of Investigation who oversees human trafficking investigations, explained the investigative value of above-ground online advertising sites, and urged Congress "to consider this as yet another example of the need for legal structure that ensures that law enforcement can access the digital evidence we need to keep the public safe."  *Latest Developments in Combating Online Sex Trafficking: Hearing before the Subcomm. on Commc'ns and Tech. of the H. Comm. on Energy and Commerce*, 115th Cong. 4 (2017) (statement of Russ Winkler, Special Agent in Charge, Tennessee Bureau of Investigation) at p.4.  The Freedom Network, an anti-trafficking organization, urged caution in making changes to Section 230 immunity.  The Freedom Network explained:  "It is important to note that responsible website administration can make trafficking more visible – which can lead to increased identification.  There are many cases of victims being identified online – and little doubt that without this platform, they would have not been identified. Internet sites provide a digital footprint that law enforcement can use to investigate trafficking into the sex trade, and to locate trafficking victims.  When websites are shut down, the sex trade is pushed underground and sex trafficking victims are forced into even more dangerous circumstances.   Street-based sex workers report significantly higher levels of victimization, including physical and sexual violence. This means that trafficking victims face even more violence, are less likely to be identified, with less evidence of their victimization." https://freedomnetworkusa.org/ app/uploads/2017/10/FNUSAUrgesCautionCDAReform.pdf.   A

coalition of women's rights organizations similarly cautioned Congress that the law would harm rather than help sex workers: "By removing online platforms for sex workers, the legislation eliminates an important tool to screen clients and negotiate safe working conditions, exposing sex workers to violence and putting their lives at risk.  The legislation not only harms sex workers, it will also undermine the US government's own goal of ending trafficking." "Women's Rights Organizations Call on Congress to Protect Sex Workers Rights in Fight to End Trafficking of Persons," https://iwhc.org/press-releases/congress-protect-sex-workers-rights-end-trafficking.

32.    FOSTA was reported out of the House Judiciary Committee with an amendment that proposed to expand the bill, to add a provision to the federal criminal code.  The newly crafted 18 U.S.C. § 2421A, governing interactive computer services, sought to prohibit reckless disregard of sex trafficking, and the promotion or facilitation of prostitution.

33.    On February 26, 2018, the House Committee on Rules approved H.R. 1865 with an amendment offered by Representative Walters that would add SESTA, creating a combined FOSTA-SESTA bill as H.R. 1865.  164 Cong. Rec. H1248 (daily ed. Feb. 26, 2018).  The House passed H.R.1865 and the bill was referred to the Senate the following day.  164 Cong. Rec. S1293 (daily ed. Feb. 28, 2018).

34.    As the combined H.R. 1865 was proceeding toward enactment, the Department of Justice wrote Representative Robert Goodlatte, one of the bill's sponsors, to voice serious concerns.  *See* 164 Cong. Rec. H1297 (daily ed. Feb. 27, 2018).  It wrote that "Section 2421A as originally drafted is broader than necessary because it would extend to situations where there is a minimal federal interest, such as to instances in which an individual [] uses a cell phone to manage local commercial sex transactions involving consenting adults."  DOJ criticized the bill's

changes to Section 1591 as "unnecessary," and shared a "serious constitutional concern" with retroactive removal of Section 230 immunity. *Id.* DOJ wrote that "[i]nsofar as this bill would 'impose[] a punishment for an act which was not punishable at the time it was committed' or 'impose[] additional punishment to that then prescribed,' it would violate the Constitution's Ex Post Facto Clause." *Id.* (quoting *Cummings v. Missouri*, 4 Wall. 277, 325-326 (1867); and citing *Beazell v. Ohio*, 269 U.S. 167, 169-170 (1925); U.S. Const. art. I, § 9, cl. 3).

35.     Despite this, the House made no changes to the portions of the bill revising Section 1591 or to those making retroactive changes to Section 230. On March 21, 2018, the Senate approved the legislation without amendment. 164 Cong. Rec. S1849 (Mar. 21, 2018). The President signed H.R. 1865 into law on April 11, 2018, and FOSTA took effect.

### The Law as Enacted

36.     FOSTA effected three major changes in the law:  (1) it created a new federal crime, codified at 18 U.S.C. § 2421A, prohibiting the use or attempted use of any facility of interstate commerce to promote or facilitate the prostitution of another person; (2) it amended Section 230 of the CDA to allow state authorities to prosecute Internet service providers if the underlying conduct would violate Section 2421A or 18 U.S.C. § 1591, and to permit civil causes of action based on violations of Section 1591; and (3) it expanded the scope of Section 1591 to prohibit "participation in a venture" involving sex trafficking to include any action "knowingly assisting, supporting, or facilitating" a violation of the law.

37.     Section 2421A makes it a felony to use any means of interstate commerce, including operating an interactive computer service "with the intent to promote or facilitate the prostitution of another person." It creates an "aggravated violation" of the same provision when the underlying conduct "promotes or facilitates the prostitution of 5 or more persons" or when a

defendant "acts in reckless disregard" of the fact that his conduct "contributed to sex trafficking" of a minor.  The new provision also allows for civil recovery and mandatory restitution for victims of the aggravated violation.

38.     Under Section 2421A, any person or platform may be criminally liable if they own, manage or operate a website or other interactive computer service with the intent to promote or facilitate prostitution (or if they conspire or attempt to do so).  The law does not define what it means to "promote" or "facilitate" prostitution, nor does it specify what constitutes "the prostitution of another person," even though "prostitution" is not defined in federal law.

39.     The statutory language to "promote or facilitate" is reasonably read to extend to persons who engage in broad categories of protected speech that makes sex work safer and easier, including speech advocating for the decriminalization of sex work, harm reduction, including speech identifying bad clients and other risks to sex workers, and speech seeking to reach sex workers to inform them of their legal rights, medical resources, or other informational material.

40.     A person may be convicted of an "aggravated violation" under Section 2421A(b) if they use or operate a facility of interstate commerce, including an interactive computer service, with intent to promote or facilitate prostitution of another person and (1) promotes or facilitates the prostitution of 5 or more persons; or (2) acts in reckless disregard of the fact that such conduct "contributed to sex trafficking."  Section 2421A(b) does not define the terms "promote," "facilitate," or "contributed to sex trafficking."

41.     Anyone convicted of violating Section 2421A(a) shall be fined, imprisoned for up to 10 years, or both.  Anyone convicted of an "aggravated violation" under Section 2421A(b) shall be fined, imprisoned for up to 25 years, or both.

JA0025

42.    In addition to criminal penalties, Section 2421A(c) provides that any person injured by reason of a violation of Section 2421A(b) may recover damages and attorneys' fees in an action in federal court.  Section 2421A(d) provides that, in addition to any criminal or civil penalties, a court "shall" order restitution for any aggravated violation of Section 2421A(b)(2), which is subject only to a "reckless disregard" standard of *mens rea*.

43.    FOSTA's changes to the preexisting statutory immunities contained in CDA Section 230 will permit both civil and criminal causes of action to be brought that previously were immunized under federal law.

44.    FOSTA amended Section 230(e) to state that it shall no longer provide immunity for "(A) any claim in a civil action brought under section 1595 of title 18, United States Code, if the conduct underlying the claim constitutes a violation of section 1591 of that title;" "(B) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of title 18, United States Code;" or "(C) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, United States Code, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted."

45.    As amended by FOSTA, Section 230 will no longer provide federal immunity for civil actions brought under 18 U.S.C. § 1595, where the underlying claim constitutes a violation of 18 U.S.C. § 1591.

46.    As amended by FOSTA, Section 230 will no longer provide federal immunity for state law criminal prosecutions where the underlying charge would constitute a violation of 18 U.S.C. § 1591.

47.     As amended by FOSTA, Section 230 will not provide federal immunity for state law criminal prosecutions where the conduct underlying the charge would constitute a violation of 18 U.S.C. § 2421A involving the "promotion" or "facilitation" of prostitution in states where prostitution is prohibited.

48.     The Section 230 amendments became effective upon the date of FOSTA's enactment, and the changes to the CDA's statutory immunities apply "regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment."

49.     Along with the changes in Section 230, FOSTA provides that state attorneys general may bring civil actions as *parens patriae* under 18 U.S.C. § 1595 if there is reason to believe "an interest of the residents of that State has been or is threatened or adversely affected by any person who violates section 1591."

50.     FOSTA's changes to 18 U.S.C. § 1591 expand the law's scope to define "participation in a venture" to mean "knowingly assisting, supporting, or facilitating a violation of" the prohibition on sex trafficking.  The amendment is ambiguous about what *mens rea* the language about "participation in a venture" requires.  As amended, the law does not appear to require participants to realize, or even suspect, a crime has occurred or will occur.  Violations of 18 U.S.C. § 1591 are punishable by mandatory minimum sentences of ten or fifteen years (depending on the victim's age and the use of coercion), and fines of $250,000 for individuals and $500,000 for organizations.

51.     Moreover, FOSTA's amendments to Section 1591 changed the scienter structure of the previous version of the law, which was most recently amended in 2014 to incorporate "advertising" into the trafficking offense.  FOSTA's expansive definition of "participation in a

venture" to mean "knowingly assisting, supporting, or facilitating" now means that Section 1591 encompasses many types of speech other than advertising.  As a result, while those publishing advertising are protected by a specific knowledge requirement, those whose speech amounts to "assisting, supporting or facilitating" sex trafficking are subject to only a reckless disregard standard.

## FOSTA's Immediate Impact

52.     FOSTA's creation of new federal offenses for "promotion or facilitating prostitution" and "reckless disregard of sex trafficking" with broad, undefined terms, and related retrenchments of Section 230 immunity, had precisely the chilling effect on protected online speech that Congress was repeatedly warned would occur.

53.     Since FOSTA's passage, numerous interactive computer service providers that enable interpersonal contact by their users, including many that lack even a remote connection to content that might be considered sexually oriented, have removed content, closed down entire sections, or been shuttered altogether out of fear of state or federal prosecution, or ruinous civil liability.

54.     These include websites that host personal ads, facilitate dating and community forums devoted to lawful adult sexual relationships, and online platforms that hosted speech about non-sexual massage therapy.  Some have taken these actions based simply on the risk of liability because they cannot afford to monitor their sites under the new law.

55.     Two days after the Senate passed H.R. 1865, Craigslist eliminated its Personals section, including non-sexual subcategories such as "Missed Connections" and "Strictly Platonic."  Users now receive "404 Errors" if they attempt to access those pages.  Craigslist released the following statement:

US Congress just passed HR 1865, "FOSTA", seeking to subject websites to criminal and civil liability when third parties (users) misuse online personals unlawfully.

Any tool or service can be misused.  We can't take such risk without jeopardizing all our other services, so we are regretfully taking craigslist personals offline. Hopefully we can bring them back some day.

To the millions of spouses, partners, and couples who met through craigslist, we wish you every happiness!

About FOSTA, CRAIGSLIST, https://www.craigslist.org/about/FOSTA (last visited June 26, 2018.).

56.    Craigslist also shut down its Therapeutic Services section and will not permit ads that were previously listed in Therapeutic Services to be re-listed in other sections, such as Skilled Trade Services or Beauty Services.  Plaintiffs are informed and believe that this action also was taken as a result of the FOSTA's enactment.

57.    In response to FOSTA, the Desiree Alliance, an organization that advocates for sex workers' human, labor and civil rights, cancelled its July 2019 conference *Transcending Borders: Immigration, Migration, and Sex Work*.  The Desiree Alliance is a national coalition of current and former sex workers, health professionals, social scientists, sex educators, and their supporting networks, who work for an improved understanding of sexual policies and of the human, social, and political impacts of criminalization surrounding global policies in sex work, and its conference would have been the largest U.S. gathering to address human, labor, and civil rights for sex workers.  In an online post, the Desiree Alliance's Director, Cris Sardina, stated that because of FOSTA, "our leadership made the decision that we cannot put our organization and our attendees at risk."  *See* http://desireealliance.org/conference.

58.    Reddit – a website where users post content, including news articles, photographs, or links to other online content, and participate in comment threads to discuss the "posts" – also

has censored itself and its users in response to FOSTA. On the day the Senate passed FOSTA, Reddit published an announcement that specifically banned "Paid services involving physical sexual contact." Reddit began to remove several "subreddits" relating to sex, including: r/Escorts, r/MaleEscorts, r/Hookers, and r/SugarDaddy. The moderator of the r/sexworkers subreddit – which is described as "a community forum for sex workers, clients, and even those unaffiliated with the industry to come together and ask questions and share resources" – received a warning that the subreddit could be shut down if administrators felt that it infringed on Reddit's new policy.

59.    VerifyHim formerly maintained various online tools that helped sex workers avoid abusive clients. It described itself as "the biggest dating blacklist database on earth." One such resource was JUST FOR SAFETY, which had screening tools designed to help sex workers check to see if they might be meeting someone dangerous, create communities of common interest, and talk directly to each other about safety. Following passage of FOSTA, VerifyHim took down many of these tools, including JUST FOR SAFETY, and explained that it is "working to change the direction of the site." Nitasha Tiku, "Craigslist Shuts Personal Ads For Fear of New Internet Law," Wired (March 23, 2018), https://www.wired.com/story/craigslist-shuts-personal-ads-for-fear-of-new-internet-law/. Screening is still active, but it appears user generated safety tips have been removed. Pounced.org, a personals website serving the "furry" community with a goal of having an online space dedicated solely to that community, shut down entirely. Though the furry community includes people with an interest in anthropomorphized animals, which sometimes includes sexual fantasies, the site did not promote prostitution or sex trafficking. As a small, free site that relied on volunteer resources, the organization decided it could not take the risk of moderating third-party postings to manage the new burdens created by

JA0030

potential liability under Section 2412A, if it did not have the protection of Section 230.  It expressly attributed its closure to FOSTA, stating:

> FOSTA changes [things] in a way that makes sites operated by small organizations like pounced.org much riskier to operate.  FOSTA essentially says that if we facilitate the prostitution of another person we're liable.  If you read FOSTA carefully the bill says "or facilitate" – the problem is that "or facilitate" is ill-defined.

http://pounced.org/why.html.

60.     FOSTA's effects have been repeated on various platforms across the Internet.  On Facebook, an adult filmmaker shared a request from journalist Sofia Barrett-Ibarria seeking sex workers to speak to for a Vice article on the impact of SESTA.  The user was banned from the social network for 30 days.  Natasha Lennard, "Law claiming to fight sex trafficking is doing the opposite – by cracking down on sex work advocacy and organizing," The Intercept (June 13, 2018), https://theintercept.com/2018/06/13/sesta-fosta-sex-work-criminalize-advocacy/ .

**Impact on Plaintiffs**

<u>Woodhull Freedom Foundation</u>

61.     The Woodhull Freedom Foundation envisions sexual freedom as inclusive of the right to enjoy sexual pleasure, form relationships and families of our choosing, and protecting our bodies from sexual violence.  Woodhull's mission includes support for the health, safety and protection of sex workers, which include adult film performers, live webcam models, sexual wellness instructors, escorts and prostitutes.  Woodhull's work is conducted through education, advocacy, lobbying and collaboration with other organizations.

62.     Woodhull uses its website to advocate for the right to sexual freedom, including the rights of sex workers.  Woodhull's position is that if every human being has a right to work and be paid to support themselves, and a right to autonomy over their body, then the rights of sex

workers must be protected as well. Woodhull strongly opposes sex trafficking or sexual assault in any form, while advocating for the right to engage in consensual sexual activity.

63.     In 2005, Woodhull submitted testimony to the Subcommittee on Constitution, Civil Rights, and Property of the U.S. Senate, Judiciary Committee, regarding the First Amendment protections associated with sexually explicit media. Woodhull also successfully lobbied the State of Florida in 2012 to pass legislation ending the practice of shackling and restraining pregnant female inmates. In addition, Woodhull participates as *amicus curiae* in cases impacting sexual freedom issues. Woodhull is aware that Congress passed FOSTA, which was signed into law by the President, and that the law contains a new criminal prohibition on promoting or facilitating prostitution using an interactive computer service, and expands liability associated with sex trafficking.

64.     Because Woodhull's work involves the use of the Internet and other means of interstate commerce to pursue its mission, it faces a risk of liability under FOSTA's broad and vague provisions regarding "promoting" or "facilitating" the "prostitution" of another person.

65.     Woodhull's mission would have included immediate efforts to publish information on its website designed to assist sex workers who were negatively impacted by FOSTA, in an effort to educate these individuals about their rights, risks, and options under the new legal environment, and promote their overall well-being. Woodhull also would have published resources available for sex workers on its site, and strongly opposed enforcement of the law against marginalized sex workers on its blog and social media. Woodhull would have permitted third parties to post similar information about sex work on its *Sex and Politics* blog, found at https://www.woodhullfoundation.org/news-blogs. Instead, Woodhull has been forced to censor its own speech on its website, and the speech of third parties on its blog. Thus, FOSTA

has inhibited the implementation of Woodhull's mission by compelling Woodhull to engage in self-censorship of these activities out of fear its activities could be deemed to promote or facilitate prostitution.

66.    Woodhull's signature event is its annual multi-day Sexual Freedom Summit ("Summit") held in the Washington, DC area during August, which brings together hundreds of educators, therapists, legal and medical professionals, and leaders of advocacy organizations to strategize, share information, and work collaboratively to protect the members of its diverse communities and their right to information, health, and pleasure. Woodhull uses a wide variety of interactive computer services to organize, facilitate, and promote the Summit each year.

67.    Historically, the Summit has included a variety of educational or informational workshops, organized into distinct tracks, each of which focuses on specific aspects of sexual freedom.  Recent years have included a "sex worker" track which involved workshops devoted to issues affecting sex workers, such as harm reductions, disability, age, health and personal safety.

68.    In 2017, the Summit included workshops entitled:  Sex Work, Human Trafficking and the Void Between; Making Pleasure Political: How To Be Politically Engaged While Repping Your Pleasure-based Business; The Unexpected Consequences of Age of Consent Laws; The New War on Sexual Expression; and Promoting HIV Education and Biomedical Prevention Tools:  Lessons and Next Steps From the Field.

69.    In 2016, the Summit included workshops entitled:  Intuition & Technology: A Client Screening Workshop for Sex Workers; Sex Work is Work: Examining Ways to Legiti-mize Sex Industry Experience in the Business World; The Whore Singularity:  When Everyone is Naked on the Internet, Is No One Naked on the Internet; The Road to Criminalization; The

Gameshow on How Sex for Money Became Criminalized in the US; and Advocacy: Sexual Health for Sex Workers!

70.     Previous years' events included a day-long institute entitled: Sex Work, Sex Trade, Prostitution & Human Rights, and workshops entitled: Breaking Ground: Understanding Criminalization of Sex Work as Violence; and End Demand and How the Anti-Trafficking Movement is Hurting Sex Workers, LGBTQ Individuals, and the Sex-positive Community.

71.     The 2018 Summit is scheduled to occur from August 2-5, 2018, at the Hilton Alexandria Mark Center in Alexandria, Virginia.

72.     In early 2018, Woodhull began preparing for its annual Summit by selecting workshop topics and presenters. After a rigorous selection process, Woodhull identified fifty-four (54) workshop presentations, organized into six different tracks. One official track is entitled "Sex As Work" and includes workshops on: Sex Work and Disability: Shifting the Focus to Disabled Sex Workers; Capitalism is not Consensual: Sex Work and the Shaky Foundations of Consent; Avoiding Harm When You Need an Ambulance; and Courting and Whoring: Balancing Work and Play.

73.     Woodhull's "Sex as Work" Track seeks to advance and promote the careers, safety, and dignity of individuals engaged in professional sex work.

74.     In presenting and promoting the Sexual Freedom Summit, and the Sex Work Track in particular, Woodhull operates and uses interactive computer services in numerous ways:

   a.  Woodhull uses online databases and cloud storage services to organize, schedule and plan the Summit.

   b.  Woodhull exchanges emails with organizers, volunteers, website developers, promoters and presenters during all phases of the Summit.

   c.  Woodhull has promoted the titles of all workshops on its Summit website, https://www.sexualfreedomsummit.org.

JA0034

    d.   Woodhull also publishes the biographies and contact information for workshop presenters on its website.  This includes the biographies and contact information about sex workers participating in the Sex Work Track and other tracks.

    e.   Most, if not all, of the workshops are also promoted by Woodhull on social media such as Facebook and Twitter.

    f.   Woodhull wishes to stream the Sex Work Track on Facebook, as it does other tracks, so that those who cannot attend can benefit from the information and commentary.

75.    Woodhull is aware on information and belief that numerous websites that provided information about sex workers or sex work have closed, blocked United States users, or shut down channels associated with this category of information, such as:  Craigslist.org (closed its adult personals ads), reddit.com (closed sub-reddits such as r/escorts, r/maleescorts, r/sugar-daddy, r/hookers, r/sexworkerblogs), yellowpages.com (closed adult boards), cityvibe.com (closed), men4rentnow.com (closed), theeroticreview.com (closed due to FOSTA), nightshift.co (closed due to FOSTA), myproviderguide.com (closed), and others.

76.    Because of FOSTA's passage, Woodhull became concerned that its promotion of the sex worker track workshops could be seen by federal or state law enforcement, or private civil litigants, as "facilitating" prostitution, and in Congress' eyes necessarily as recklessly disre-garding the risk that the workshops assist sex trafficking, thus violating FOSTA.

77.    Accordingly, in April, 2018, Woodhull initially responded by ceasing all online promotion of the sex work track workshops for the Summit.

78.    Specifically, Woodhull feared publishing names and contact information for sex workers serving as presenters would be seen as "promoting the prostitution of another person." Woodhull thus also initially censored the titles, presenter biographies, and workshop descriptions associated with the sex work track, from its website.  This decision prevented Woodhull from

fully publicizing and promoting its Summit activities, and singled out sex worker content for disparate treatment, in advance of the Summit.

79.     As a result of its effort to comply with FOSTA by not promoting or publishing online information about its sex worker track, Woodhull faced a social media backlash and threats to boycott the Summit.  At least one presenter cancelled her planned presentation due to Woodhull's efforts to comply with the law.  These developments threatened the success and reputation of the Summit.

80.     While Woodhull remains uncertain whether publication and promotion of its sex worker track workshops and presenter information is prohibited by FOSTA, it has chosen to engage in some of these activities due to the adverse consequences it endured in attempting to comply with the law through self-censorship.  In June 2018, in conjunction with its decision to bring this action, Woodhull decided to publish and promote all information about the sex worker track workshops, including biographical and contact information about the presenters.  It also decided to promote the workshops on social media such as Twitter and Facebook.  Woodhull has struggled to understand its legal obligations and remains uncertain as to its potential liability under FOSTA, in connection with its past and future activities.

81.     As a result of its activities and decisions regarding the upcoming Summit, Woodhull has a well-founded fear that its efforts to promote information about sex workers on the Internet could be construed by an ambitious prosecutor or enterprising plaintiff's lawyer as promoting or facilitating prostitution in violation of FOSTA.

82.     After the Desiree Alliance cancelled its July conference in response to FOSTA, Woodhull considered offering it the opportunity to conduct its institute during Woodhull's 2018

Summit.  However, Woodhull concluded it would be too risky under FOSTA to promote the institute in conjunction with the Summit.

83.    FOSTA's passage substantially inhibits Woodhull's mission which includes advocacy for harm reduction, health and safety of sex workers, by restricting the use of its online resources for these purposes.

84.    While Woodhull staunchly opposes sex trafficking and all forms of sexual abuse and coercion, it is uncertain regarding its liability for aggravated violations of Section 2421A, which impose substantial additional penalties for anyone who operates an interactive computer service and is "recklessly indifferent" to sex trafficking activities.  Due to efforts of lawmakers and the proponents of FOSTA to conflate consensual sex work with sex trafficking, along with the potential liability imposed for actions of third parties imposed by FOSTA, Woodhull has a credible fear of prosecution under these broad, vague, and undefined provisions.

85.    The amendments creating state criminal and civil liability for platforms by carving out significant exceptions to Section 230 immunity has exposed Woodhull to potential liability for speech of third parties on its blog or social media accounts.

<u>Human Rights Watch</u>

86.    HRW is one of the major international human rights monitoring organizations, that sees its mission as exposing violations of international human rights law to public scrutiny around the world and generating momentum for change.  Among those violations are exploitation and violence directed at women and girls, including women and girls who are sex workers.

87.    Sex workers, like other types of workers, may experience a wide range of human rights violations.  Some may be trafficked or held in conditions akin to modern slavery; others

may be subjected to violence, coercion, health risks or other dangerous conditions through their work. HRW believes that the criminalization of sex work impedes sex workers in finding protection and redress for such violations and in exercising basic rights such as access to essential health services and police protection.

88.     Every year, HRW produces and publishes many hundreds of reports, press releases, videos, podcasts and other online documents on its website and social media accounts. Some of these include research and advocacy on behalf of the rights of sex workers, including our advocacy that sex work be decriminalized.  For example, in 2010, HRW reported on the unlawful arrests and detention of sex workers in Cambodia; in 2012, HRW reported on police searches of women for condoms as evidence of prostitution in four US cities; in 2013, HRW documented torture, beatings and other assaults by police officials against sex workers, and similar abuses against sex workers in Tanzania; in 2014, HRW advocated against a Canadian anti-prostitution bill.  HRW has also documented abuses against sex workers in Ukraine, Greece, Lebanon and South Africa.

89.     Human Rights Watch's policy, adopted in 2013, opposes the criminalization of consensual adult sex work and states that the criminalization of voluntary, consensual sexual relations among adults is incompatible with respect for a number of internationally recognized human rights including the rights to personal autonomy and privacy.

90.     The policy further states that "[f]orced prostitution and trafficking in human beings are among the most serious violations of human rights" and that "[a]ll states have an obligation to take necessary measures to prevent and combat such criminal activities."  However, HRW believes that "those engaged in sex work are more likely to be capable of seeking

protection from the law if they and their work are not treated as criminal" and advocates accordingly.

91.     Despite these clear distinctions in its policy, HRW is concerned that its global advocacy against criminalization of sex work and arrest of sex workers could be seen by US litigants as "facilitating" "prostitution" or in some way assisting sex trafficking, thus violating FOSTA.

92.     Moreover, because HRW relies heavily on individuals spreading its reporting and advocacy through social media, it is concerned that social media platforms and websites that host, disseminate, or allow users to spread our reports and advocacy materials may be inhibited from doing so on the basis of the substantial additional penalties of Section 2421A, as demonstrating a "reckless disregard" of sex trafficking activities.

<u>Eric Koszyk</u>

93.     Eric Koszyk has worked as a massage therapist since 2006, and is licensed as a massage therapist in Washington State, Virginia, Washington, DC, and Oregon.  He is the owner and sole proprietor of Soothing Spirit Massage, a personal massage business he has run since 2007.   Although each state's licensure requirements are different, they generally require applicants to prove they have formal education and training in massage therapy and anatomy and physiology.  They also generally require licensees to pass background checks and, as part of that process, some require applicants to provide fingerprints and other personal information.

94.     Mr. Koszyk has used the online classified advertising platform Craigslist (www.craigslist.org) as the primary way of finding clients for Soothing Spirit.  Craigslist is the largest online classified advertising site in the United States.  Approximately 90 percent of Soothing Spirit's clients have come through advertising contacts on Craigslist.

95.     Since 2007, Mr. Koszyk has generally posted one or two advertisements per week on Craigslist to find clients for Soothing Spirit, typically in the Therapeutic Services section. Mr. Koszyk's ads make clear he is male and provides massage therapy that is professional and therapeutic.  The advertising content has largely remained unchanged during the entire period Mr. Koszyk has posted on Craigslist.

96.     Mr. Koszyk found Craigslist to be the easiest and the best way to reach clients for Soothing Spirit.  Although he has placed ads on other websites, he did not find them to be as effective at finding clients and believes the success of Soothing Spirit is directly related to his ability to use Craigslist to advertise the service.  This is because Craigslist is such a well-known platform used by all sorts of individuals and businesses while also being popular with Internet users.

97.     In late March 2018, Mr. Koszyk learned that legislation known as FOSTA passed both chambers of Congress.  On April 13, 2018, after FOSTA was signed into law, Mr. Koszyk discovered Craigslist had removed his then most-recent ad for Soothing Spirit, which had been posted earlier that week.  He also learned Craigslist had shut down its Therapeutic Services section in response to FOSTA's passage.

98.     The following week, Mr. Koszyk attempted to re-post an ad he had been running on Craigslist for many years in another section of the website, known as Skilled Services. Craigslist blocked the posting and he was unable to advertise therapeutic massages for Soothing Spirit.  He has not been able to advertise his services on any part of Craigslist's website since April 13, 2018.

99.     Mr. Koszyk  is not aware of any other website that would allow him to post similar advertisements and to reach a similar sized audience as Craigslist.  He does not know

whether he will be able to continue to operate Soothing Spirit if he cannot post advertisements on Craigslist.

100.    Because Mr. Koszyk has been unable to post ads on Craigslist since April 13, 2018, he has had almost no clients for Soothing Spirit and has been unable to provide supplemental income for his family.

101.    Given Craigslist's own statement that it only shut down its Personals section because of FOSTA, and its stated hope "that we can bring them back some day," a ruling by this Court that FOSTA is unconstitutional, and enjoining the enforcement of the law, will result in Craigslist reinstating the sections it deleted and affording Mr. Koszyk the opportunity to advertise his services once again.

<u>Alex Andrews</u>

102.    Jesse Maley, aka Alex Andrews, is the co-founder and organizer of several organizations and a website dedicated to advocating for sex workers' health, safety and human rights.  She has been an advocate for sex workers' rights for roughly eight years and is currently a member of the board of directors and serves as the treasurer of the Sex Workers Outreach Project USA ("SWOP USA").  SWOP USA is a national social justice network dedicated to the fundamental human rights of people involved in the sex trade and their communities, focusing on ending violence and stigma through education and advocacy.

103.    Ms. Andrews is also the founder of a local chapter of SWOP USA, SWOP Orlando, which provides a range of direct services to sex workers in the region and also advocates on their behalf.

104.    Ms. Andrews also co-founded another chapter affiliated with SWOP USA, called SWOP Behind Bars, in May 2016, to provide support and services to sex workers in prisons and

JA0041

jails throughout the United States.  SWOP Behind Bars operates a support line that connects sex workers with national and local resources they need, including local SWOP chapters or other sex worker advocacy or support organizations

105.    In 2015 Ms. Andrews collaborated with other advocates and sex workers to create an online resource for sex workers to learn more about the various organizations that provide services to them.  Some rescue organizations fail to distinguish between adult sex workers who choose their work, and those who are coerced into sex work.  Because those organizations treat all sex workers as victims, the services and support they provide often do not match the needs of sex workers who do not view themselves as victims.  This discrepancy can frustrate and harm sex workers using the organization's services.

106.    The website, Rate That Rescue (www.ratethatrescue.org), is a sex worker-led, public, free, community effort to share information about both the organizations on which sex workers can rely, and those they should avoid.  Rate That Rescue was created in response to the rapid growth of organizations that have publicly stated missions to assist or rescue sex workers. The site works as a ratings and review website of these various organizations, hosting content created by both organizations and the sex worker community.  Rate That Rescue allows any user to create a listing for a particular organization or to post a review of any organization.  Users can post anonymously or create an account.  After creating an account, a user can receive notifications when another user responds to their reviews or comments.  Users can rate the organization on a scale of 1-5 for an overall rating and can also rate the organization's provision of various services, such as housing, childcare, counseling, education and outreach.  Users can also post comments describing their experiences, and other users and the rescue organizations can reply to those comments.

JA0042

107.   Rate That Rescue also allows organizations being reviewed to take control of their listings and to respond to reviewers and edit their listing to describe the services they provide.

108.   Each review listing on Rate That Rescue provides basic information about the organization, including a brief description of the service, contact information, and the type of services that the organization offers, such as legal, educational, and healthcare.  Organizations can further self-identify based on various categories, including whether they are religious based, led by sex workers, or led by women.

109.   Although Rate That Rescue was originally designed to provide information about sex worker support and rescue organizations, it has expanded to share information about all types of organizations that provide services that sex workers use, be they public, private, nonprofit, or commercial.  This includes organizations that do not focus on sex workers, but have products or services that sex workers commonly use – like Twitter, Wix, or PayPal.

110.   Because Rate That Rescue is designed to host the speech of its users, it relies on Section 230 of the CDA, which provides immunity from suit to online platforms based on the content of user-generated speech on the site.  *See* https://www.ratethatrescue.org/wp/about.

111.   Without Section 230's protections, Rate That Rescue would not be able to function and would face potentially ruinous liability for the content of users' speech.  The website makes no revenue, is run by volunteers, and is unable to actively or comprehensively review, edit or moderate user-generated content.  The mere threat of suit or potential prosecution because of third-party content creates a powerful chilling effect.

112.   Ms. Andrews is concerned that FOSTA's changes in Section 230's immunity provisions make Rate That Rescue potentially subject to criminal liability for the speech of its users.  She is particularly concerned the website could be targeted by federal or state prosecutors

under 18 U.S.C. § 2421A(a) for hosting user-generated speech that could be alleged "to promote or facilitate the prostitution of another person."  And because Congress believes that prostitution and sex trafficking are inextricably linked, she is concerned she could also be liable criminally and civilly for hosting speech that violates Sections 2421A(b)(2) and 1591.  Such lawsuits are no longer immunized by Section 230 under FOSTA's amendments.

113.    Because FOSTA does not define what "promote" or "facilitate" means, the terms could be interpreted broadly to include a variety of speech hosted on Rate That Rescue, such as speech about how to increase sex workers' safety, which could be interpreted as making prostitution easier, that is, facilitating it.  Similarly, user-generated content on Rate That Rescue listing the organizations that provide free services to sex workers, including healthcare, housing and childcare, could also be seen as assisting sex workers and thus construed as facilitating prostitution, and, under FOSTA, "contributing to" sex trafficking as well.

114.    Because user-generated speech could be viewed as helping or assisting sex workers or expressing positive views about sex work, Ms. Andrews is concerned that a court could find the user-generated content on Rate That Rescue promotes or facilitates prostitution and that Section 230's immunity shield is inapplicable.  Rate That Rescue would then be criminally liable for the content of its users' speech.  Even if a court would not agree with this interpretation, Ms. Andrews is concerned that prosecutors in the 50 states and civil litigants could impose devastating costs simply by threatening or bringing legal action.

115.    Ms. Andrews is also concerned that Rate That Rescue may also be directly liable under FOSTA's new criminal provisions that prohibit anyone from owning, managing or operating a website with the intent to promote or facilitate prostitution, or to attempt or conspire to do so.  18 U.S.C. § 2421A(a).  Because Rate That Rescue was established by sex workers and

their advocates to improve the lives, health, safety and wellbeing of sex workers, it is not unreasonable to think law enforcement may interpret the website and the speech of its founders as "promoting" or "facilitating" prostitution.

116.    FOSTA's draconian criminal penalties exacerbate this fear.  The law treats as "trafficking," and imposes heightened penalties if the individuals who own, manage or operate the website with the intent to promote or facilitate prostitution, do so to five or more people.  18 U.S.C. § 2421A(b)(1).  Because Rate That Rescue has thousands of users, it is plausible to anticipate that law enforcement may seek enhanced penalties for Rate That Rescue because it provides services and support for sex workers.

117.    Because of FOSTA's passage, Ms. Andrews has delayed a decision about whether to purchase an in-development mobile phone application and website dedicated to increasing sex worker safety.  The application's main features would allow sex workers to use the app to report violence, harassment and other harmful behavior against them.  The app would send notifications based on the reports to other users in the region to alert them.  The app also would maintain a database of these reports that other sex workers could query to avoid bad actors and to decrease violence against them.

118.    Sex workers and their allies have long maintained similar "bad date" lists in both paper and digital form as a way to reduce violence against sex workers and increase their safety.  The application would provide similar benefits through a readily accessible and easy to use online platform that could be used by all sex workers with a mobile phone or Internet access.

119.    Because the application would host speech from sex workers that intends to help others work safely and avoid violence and harassment, that speech could be construed as

promoting or facilitating prostitution. The application would thus be ineligible for Section 230's immunity and could face liability for its users' speech under Section 2421A(a).

120.    Additionally, it is reasonable to believe law enforcement may perceive the application itself as an online platform that intends to promote or facilitate prostitution, or at least attempts or conspires to do so. The application could thus be threatened with criminal liability under Section 2421A for the same reasons as Rate That Rescue. Similarly, the application could likely face criminal enhancement penalties created by SESTA because the application and website could easily be seen as promoting or facilitating the prostitution of five or more people.

<u>The Internet Archive</u>

121.    The Archive is a 501(c)(3) organization located in San Francisco, California, that works to prevent the Internet and other "born-digital" materials from disappearing into the past. It offers permanent access for researchers, historians, scholars, people with disabilities, and the general public to historical collections that exist in digital format.

122.    The vast majority of the material in the Archive's collection is authored by third parties. The material includes over 330 billion web pages spanning from 1996 to the present, over 17 million texts (including over 2 million scanned public-domain works), 5 million audio files, and 4 million video files.

123.    The Archive "crawls" and archives about 80 million web pages per day, and over 20,000 items are added to the collection by third parties per day. These files are downloaded by tens of millions of users each month.

124.    The Archive does at times remove content, but it has no practical ability to evaluate the legality of any significant portion of the third-party content that it archives and

makes available.  The Archive relies upon the immunity from liability granted by 47 U.S.C. § 230 for suits based on that third-party content.

125.   The Archive is concerned that the changes to 18 U.S.C. §1591 and 18 U.S.C. §2421A will result in the Archive becoming subject to federal criminal, state criminal, and civil liability.  This is because some third-party content hosted by the Archive, such as archives of particular websites, information about books, and the books themselves, could be construed as promoting or facilitating prostitution, or assisting, supporting, or facilitating sex trafficking.  The Archive also fears that because of FOSTA's changes to Section 230, it can no longer rely on statutory immunity under the CDA to bar liability for content created by third parties and hosted by the Archive.

## CAUSES OF ACTION

## COUNT I

### First Amendment—FOSTA's Overly Broad Speech Restrictions

126.   Plaintiffs reallege and incorporate Paragraphs 1 through 125 as if fully set forth herein.

127.   There can be no doubt that FOSTA "prohibits a substantial amount of protected expression."  It creates a new federal crime targeting anyone who "owns, manages, or operates an interactive computer service" with the intent to "promote" or "facilitate" prostitution or who recklessly disregards that they are "contributing to sex trafficking" and it authorizes state prosecutions and civil actions for such actions.  The law provides no definitions, nor does it suggest discernable limits for what might constitute promotion or facilitation of prostitution or trafficking.

128.   A law is "unconstitutional on its face if it prohibits a substantial amount of protected expression." *Free Speech Coalition*, 535 U.S. at 244; *United States v. Stevens*, 559 U.S. 460, 473 (2010).  Likewise, a law that targets speech is facially unconstitutional if there is a "likelihood that the statute's very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799, 800 (1984).  "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).  For that reason, "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, [it] must do so." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002).

129.   Each of FOSTA's operative provisions suffers from substantial overbreadth. Section 2421A (FOSTA § 3) criminalizes speech that may be alleged to "promote" or "facilitate" "prostitution," and FOSTA contains no definitions or limiting principles that might constrain those expansive concepts.  It provides for an aggravated violation and greatly heightened penalties for a user or operator of an interactive computer service who "promotes or facilitates the prostitution of 5 or more persons" or who "acts in reckless disregard" of the fact that his conduct "contributed to sex trafficking" of a minor, again without limiting or defining what constitutes a "contribution to "sex trafficking."  FOSTA's expansion of liability under 18 U.S.C. § 1591 (FOSTA § 5) to define "participation in a venture" to include "assisting or supporting, or facilitating a violation of" the prohibition on sex trafficking does not appear to require that a participant realize, or even suspect, that a crime has occurred or will occur.  And FOSTA's amendment of Section 230 (FOSTA § 4) selectively removes statutory immunities from the

JA0048

broad provisions modified by the other sections and creates a powerful incentive for online platforms to restrict speech.

130.    The aggravated violation set forth in Section 2421A(b)(2) is inhibiting the speech of sex worker advocates even though they do not advocate for, and indeed are firmly opposed to, sex trafficking.  Although Section 2421A(b)(2) applies specifically to conduct "contribut[ing] to sex trafficking," Congress expressed that sex trafficking and non-trafficking prostitution are "inextricably linked."  HR.. Rep. No. 115-572, pt. 1, at 6.  Thus, given Congress's view conflating prostitution with sex trafficking, those who advocate for sex workers, as set forth above, are reasonably fearful they will be found to be in "reckless disregard of the fact that such conduct contributed to sex trafficking," a problem compounded by the fact that "contributed to sex trafficking" is undefined.

131.    FOSTA's amendment to 18 U.S.C. § 1591 does not define what constitutes "assisting, supporting, or facilitating" or "contributing to" sex trafficking.  The breadth and indeterminacy of those terms threatens to impose criminal liability based on mere generalized knowledge of another's conduct.

132.    FOSTA's prohibitions are not limited to online platforms that host advertising, that provide adult services, or even that "offer" any kind of services at all.  Under FOSTA, anything on an online platform, commercial or non-commercial alike, that can be said to "promote" or "facilitate" prostitution or trafficking is at risk of criminal prosecution or ruinous civil liability.  Accordingly, websites that support sex workers by providing health-related information or safety tips could be charged with promoting or facilitating prostitution. Additionally, websites that make possible any interpersonal or intimate connections, such as "personals" or "dating" information, face obvious risks from prosecutors and civil litigants.

JA0049

133.    FOSTA's broad provisions empower 50 state attorneys general and enterprising plaintiffs' lawyers across America to concoct arguments for what might constitute "promoting" or "facilitating" prostitution or trafficking.

134.    FOSTA's overbreadth is not cured because it preserves immunity under Section 230(c)(2), which shields service providers from liability for "good faith" efforts to restrict access to material they consider to be "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2).  FOSTA's selective modification of intermediary immunity under Section 230 creates an overwhelming incentive to over-censor online speech.  Moreover, immunity under Section 230(c)(2) does not affect the new federal crime created by 18 U.S.C. § 2421A, which itself is overly broad.

## COUNT II

### First Amendment—FOSTA's Content-Based Restrictions Fail Strict Scrutiny

135.    Plaintiffs reallege and incorporate Paragraphs 1 through 134 as if fully set forth herein.

136.    FOSTA as a whole targets online speech, creating new federal offenses and removing current statutory immunities for anyone who "owns, manages, or operates an interactive computer service."    18 U.S.C. § 2421A(a); 47 U.S.C. § 230(e)(5).   FOSTA's prohibitions are entirely content-based, imposing harsh criminal penalties and authorizing heavy civil liability on any online publisher who "promotes" or "facilitates" the prostitution of another person or who acts in "reckless disregard" that their actions "contributed to sex trafficking."

137.    The new federal crime set forth in 18 U.S.C. § 2421A (FOSTA § 3) is itself a content-based restriction on speech.  The provision makes it a felony to use any means of

interstate or international commerce, including operating an interactive computer service "with the intent to promote or facilitate the prostitution of another person." Determining what speech might constitute "promoting" or "facilitating," or what acts are included in "prostitution" require the government to base criminal liability on the content of speech.

138.    The statutory language to "promote or facilitate" extends to websites or individuals who engage in broad categories of protected speech, including speech advocating for the legalization of prostitution, harm reduction, including speech identifying bad clients and other risks to sex workers, speech seeking to reach sex workers to inform them of their legal rights, medical resources, or other informational material.

139.    FOSTA's changes to 18 U.S.C. § 1591 also impose a content-based restriction on speech. By expanding the law's definition of "participation in a venture" to mean "knowingly assisting or supporting, or facilitating a violation" of the law, it requires the government to evaluate what speech may be liable under those capacious terms.

140.    FOSTA's amendment of Section 230(e) of the CDA imposes a content-based restriction on speech by selectively removing immunities designed to promote online freedom of expression. The removal of immunity for cases brought under 18 U.S.C. § 2421A, or 18 U.S.C. § 1591 (and its civil counterpart 18 U.S.C. § 1595), incorporates the content-based speech restrictions adopted in FOSTA's other sections. Accordingly, the same First Amendment infirmities that apply to those sections are equally true of the Section 230(e) amendment. Additionally, because of the selective removal of immunity, the changes to Section 230 create a government-induced incentive for online platforms to censor third-party speech for any area of human interaction that even arguably falls within FOSTA's reach.

JA0051

141.    As a general matter, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Stevens*, 559 U.S. at 468 (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). "[R]egulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 811 (2000). Such content-based restrictions of speech, "enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people." *ACLU*, 542 U.S. at 660. "A law that is content-based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 135 S. Ct. at 2228 (citation omitted). The First Amendment "demands" that such restrictions "be presumed invalid, and that the Government bear the burden of showing their constitutionality." *ACLU*, 542 U.S. at 660 (citations omitted). To satisfy strict scrutiny, the government must prove the law is "narrowly tailored to promote a compelling Government interest," meaning it must directly advance the government's interest, it must be neither overinclusive nor underinclusive, and no "less restrictive alternative would serve the Government's purpose." *Playboy Entm't Grp.*, 529 U.S. at 813.

142.    FOSTA fails strict scrutiny because the law does not directly advance the government's objective. To the contrary, as Congress was warned, the law has made it more difficult for law enforcement to investigate trafficking, and hindered operations of anti-trafficking organizations. Statement of Freedom Network, "Freedom Network Urges Caution in Reforming the CDA."

143.    FOSTA also fails strict scrutiny because it is not narrowly tailored.  It prohibits both commercial and non-commercial speech about sex work that does not involve sex trafficking.  It also criminalizes speech that furthers public health and welfare goals such as provision of health and educational resources to consensual, adult sex workers, as well as advocacy for the decriminalization of sex work. Congress' belief that this non-commercial speech about prostitution contributes to sex trafficking is not supported by evidence.

144.    FOSTA also fails strict scrutiny because its draconian approach imposes the most, not the least, restrictive alternative to restricting online speech.  *See Free Speech Coalition*, 535 U.S. at 244 ("a law imposing criminal penalties on protected speech is a stark example of speech suppression" and "a textbook example of why we permit facial challenges to statutes that burden expression").  Violations of Section 2421A are subject to 10 years in prison, while aggravated violations carry a sentence of up to 25 years.  18 U.S.C. § 2421A(a)-(b).  In addition, FOSTA authorizes criminal enforcement both by federal authorities and by the 50 state attorneys general. 18 U.S.C. § 2421A(a); 47 U.S.C. § 230(e)(5); 18 U.S.C. § 1595(d).

145.    FOSTA imposes these criminal penalties on speech despite the fact that federal law already prohibits sex trafficking and allows the government to prosecute those who exploit their victims.  18 U.S.C. § 1591.  FOSTA instead expands the scope of the law to punish those who host speech of which the government disapproves.  However, under the First Amendment, "[t]he normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it."  *Bartnicki v. Vopper,* 532 U.S. 514, 529-30 (2001).

146.    In addition, FOSTA authorizes civil damages claims in federal court, strips away existing statutory immunities from civil liability in state and federal courts, and imposes mandatory restitution "in addition to any other civil or criminal penalties authorized by law."

18 U.S.C. § 2421A(c)-(d); 47 U.S.C. § 230(e)(5).  Just as with criminal penalties, the prospect of significant civil liability based on the exercise of free speech is circumscribed by the First Amendment.  *Snyder v. Phelps*, 580 F.3d 206, 217-18 (4th Cir. 2009), *aff'd*, 562 U.S. 443 (2011); *New York Times Co. v. Sullivan*, 376 U.S. 254, 264-65 (1964).

147.   The government cannot meet the "heavy burden" under strict scrutiny, *Reno*, 521 U.S. at 879, unless it can show FOSTA restricts speech "no further than necessary."  *ACLU*, 542 U.S. at 666.   Strict scrutiny is not satisfied where Congress has used "a butcher knife on a problem that requires a scalpel to fix."  *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013).  Because FOSTA does not employ the least restrictive means of satisfying its purpose, the Court should declare that the law violates the First Amendment.

COUNT III

First and Fifth Amendments—FOSTA's Vague Speech Restrictions

148.   Plaintiffs reallege and incorporate Paragraphs 1 through 147 as if fully set forth herein.

149.   Not only is FOSTA overly broad, its restrictions on speech also are unconstitutionally vague.  It imposes criminal penalties based entirely on speaking or publishing online with the "intent" to "promote" or "facilitate" the prohibited offenses but does not define those terms.   The Act creates further ambiguity by increasing punishment for those who act "in reckless disregard of the fact that such conduct contributed to sex trafficking," yet with no definition of what it means to "contribute to sex trafficking."  18 U.S.C. § 2421A(b)(2).

150.   As a general proposition, vague laws offend due process because they fail to give people of ordinary intelligence fair warning of what conduct is prohibited, allow arbitrary and discriminatory enforcement, and delegate basic policy matters to policemen, judges and juries for

resolution on an ad hoc and subjective basis.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Statutory vagueness takes on added significance where the government seeks to regulate speech.  Entirely apart from due process concerns, vague statutes that affect "sensitive areas of basic First Amendment freedoms" are unconstitutional because they "inevitably lead citizens to 'steer far wider of the unlawful zone' … than if the boundaries of the forbidden areas were clearly marked." *Id*. at 109.

151.   A vague law that regulates expression "raises special First Amendment concerns because of its obvious chilling effect on speech." *Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 796, 807 (2011) (Alito, J., concurring) (quoting *Reno*, 521 U.S. at 871-72).  "Where a statute's literal scope … is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).  And where penal statutes are involved, as they are with FOSTA, "[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *NAACP*, 371 U.S. at 433.

152.   FOSTA falls far short of this constitutional standard.  It imposes criminal penalties based entirely on speaking or publishing online with the "intent" to "promote" or "facilitate" the prohibited offenses but does not define those terms.  The Act creates further ambiguity by increasing punishment for those who act "in reckless disregard of the fact that such conduct contributed to sex trafficking," yet with no definition of what it means to "contribute to sex trafficking."  18 U.S.C. § 2421A(b)(2).  The vagueness of "contributed to sex trafficking" is compounded by Congress's belief that sex trafficking and consensual sex work are "inextricably linked," thus raising the probability that Congress considers anything that "contributes to" sex work, whatever that means, to also "inherently" "contribute to sex trafficking."

JA0055

153.    Even under normal due process standards, an intent to "facilitate" criminal activity can be constitutionally vague.  FOSTA's inclusion of an "intent" standard does nothing to cure the law's vagueness where the operative terms "promote" or "facilitate" are ambiguous and undefined.

154.    The language added to Section 1591, defining "participation in a venture" to mean "assisting, supporting, or facilitating" muddies rather than clarifies the provision because Congress at the same time asserted an "inherent link" between sex trafficking and consensual, adult sex work.  The result is a great ambiguity regarding whether Congress included any speech "assisting" sex workers to also be inherently "assisting" sex trafficking.

155.    FOSTA's vague mandate can be used by prosecutors and private litigants in all 50 states to censor speech and threaten lifestyle choices with which they disagree.  FOSTA provides them the perfect tool for driving material they dislike from the Internet, even though it is consti-tutionally protected.  Given the massive criminal penalties and the prospect of onerous civil liability, online platforms large and small will have no choice but to "steer far wider of the unlawful zone." *Grayned*, 408 U.S. at 108 (citation omitted).

### COUNT IV

### First Amendment—FOSTA's Selective Removal of Statutory Immunity

156.    Plaintiffs reallege and incorporate Paragraphs 1 through 155 as if fully set forth herein.

157.    Section 230 of the CDA was predicated on an understanding that the Internet would be crippled if online providers could be held liable for third-party content, "given the volume of material communicated …, the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech." *Lycos*, 478 F.3d at 418-19.  At the

same time, Congress recognized that Internet service providers are likely to abandon efforts to self-regulate content posted on their sites if efforts "to review and omit third-party defamatory, obscene or inappropriate material make a computer service provider ... liable for posted speech." *Batzel*, 333 F.3d at 1029.

158.     To serve these twin goals, Congress adopted two different immunity provisions: Section 230(c)(1), which bars imposing liability on service providers for alleged harms arising from content posted by third parties, and Section 230(c)(2) which shields service providers from liability for good faith efforts to restrict access to material they consider to be "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."   Together, the two immunity provisions reinforce important First Amendment protections.

159.     FOSTA selectively limits the scope of immunity for third-party postings that relate to prostitution and sex trafficking and does not define what it means for an online platform to "promote" or "facilitate" prostitution or trafficking.   Nor does it define what constitutes "prostitution" or "contributing to sex trafficking."   Accordingly, the newly structured "immunity" provisions leave intermediaries with only one choice – to broadly censor third-party content even though it is constitutionally protected.

160.     FOSTA amended Section 230(c)(1) of the CDA, which previously provided that online intermediaries are not to be treated as the publisher or speaker of third-party speech, so that it no longer bars civil claims under 18 U.S.C. § 1595; state criminal charges where underlying conduct would violate 18 U.S.C. § 1591; or state criminal charges for conduct that would violate 18 U.S.C. § 2421A in jurisdictions where prostitution is illegal.  By limiting the scope of Section 230(c)(1) and preserving only the immunity of (c)(2) based on *blocking or*

*removing* posted content, FOSTA transforms the law into an engine of censorship contrary to First Amendment principles.  As modified by FOSTA, the only way for an online platform to be confident that Section 230 immunity still applies is to over-censor what may be posted – and to do so, as Section 230(c)(2) provides, "whether or not [such speech is] protected by the First Amendment."  47 U.S.C. § 230(c)(2).

161.    Because FOSTA enables enforcement through potential state prosecutions and civil claims, websites are compelled by the law to err on the side of excessive censorship, and the new provisions provide a mechanism for the exercise of a heckler's veto.  Past experience suggests that those seeking to impose liability under Sections 1591 or 1595 (and, by logical extension, under the new federal crime under § 2421A), simply will argue that any website that allows postings regarding "escorts" or "adult services" (or anything else promoting human interaction, such as "dating" or "personals") is promoting or facilitating prostitution, or contributing to sex trafficking.

162.    Section 230 previously barred liability based on bare allegations that a website "encouraged" unlawful content in some way based on the understanding that such a basis for liability would effectively eclipse the immunity Congress sought to provide.  *E.g.*, *Jones*, 755 F.3d at 408-09.  Under FOSTA, it is not necessary to allege a website encouraged the posting of material in violation of its provisions, but only that the operator "promoted" or "*facilitated*" prostitution, or disregarded that postings "*contributed to* sex trafficking," which could be anything.

163.    The only rational response under FOSTA is for websites to broadly censor consti-tutionally protected material and immediately take down material subject to a complaint, which is exactly what has occurred since FOSTA passed.  Whether or not this was the intended

JA0058

outcome, it is the inexorable result of the way FOSTA is drafted, and it cannot be reconciled with the First Amendment.

## COUNT V

### First Amendment—FOSTA's Defective Scienter Standard

164.   Plaintiffs reallege and incorporate Paragraphs 1 through 163 as if fully set forth herein.

165.   FOSTA is unconstitutional because it seeks to evade constitutional requirements for scienter. The First Amendment precludes the government from imposing liability for distributing expressive materials without proof of scienter. *Smith v. California*, 361 U.S. 147 (1959).  "The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material …." *Mishkin v. New York*, 383 U.S. 502, 511 (1966). *See Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) ("[W]rongdoing must be conscious to be criminal.") (citation omitted).

166.   FOSTA amended 18 U.S.C. § 1591 to provide that violation of the law requires only "participation in a venture" that includes "knowingly assisting, supporting, or facilitating" prostitution or trafficking.  However, the law does not define what constitutes "assisting, supporting, or facilitating" such activities.  While FOSTA requires "intent" to promote or facilitate prostitution, the breadth and vagueness of those terms threatens to impose criminal liability based on mere generalized knowledge of another's conduct.

167.   FOSTA's "aggravated" offense under 18 U.S.C. § 2421A(b)(2) further dispenses with scienter by imposing liability based on "reckless disregard" of the fact that conduct "contributed to sex trafficking."  This provision strips away the requirement of specific knowledge mandated by the Constitution in favor of an amorphous standard that – like the

"promote or facilitate" language – threatens liability based on inferences of generalized knowledge. The predictable result of this legislation has been "self-censorship of constitutionally protected material" on a massive scale. *Mishkin*, 383 U.S. at 511.

COUNT VI

**Fifth Amendment and Article I of the Constitution—FOSTA's *Ex Post Facto* Provisions**

168.    Plaintiffs reallege and incorporate Paragraphs 1 through 167 as if fully set forth herein.

169.    Section 4(b) of FOSTA sets forth an effective date to allow enforcement "regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment." This provision implements changes to 47 U.S.C. § 230(e), which authorizes (1) civil claims that are predicated on violations of criminal law set forth in 18 U.S.C. § 1591; (2) criminal prosecutions brought under state law where the underlying conduct violates Section 1591; and (3) criminal prosecutions brought under state law where the underlying conduct violates the newly adopted prohibitions in 18 U.S.C. § 2421A.

170.    On its face, FOSTA violates the Constitution's command that "[n]o … ex post facto Law shall be passed." U.S. Const. art. I, § 9. This "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). The Supreme Court has long recognized retroactive legislation as "oppressive, unjust, and tyrannical," and therefore "condemned by the universal sentence of civilized man." *Ogden v. Sanders*, 25 U.S. (12 Wheat.) 213, 266 (1827).

171.    FOSTA (1) allows states to prosecute conduct that states could not prosecute at the time it occurred, and (2) exposes defendants to increased penalties that were unavailable

prior to FOSTA.  This is precisely the type of legislation the *Ex Post Facto* Clause was designed to prohibit, because it "makes an action, done before the passing of the law, and which was innocent when done, criminal."  *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798); *Bailey v. Fulwood*, 793 F.3d 127, 135 (D.C. Cir. 2015)

172.    The prohibition on *ex post facto* laws is also necessary to protect due process. Through the prohibition on *Ex Post Facto* Clause, "the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed."  *Weaver v. Graham*, 450 U.S. 24, 28-29 (1980).  It also "restricts governmental power by restraining arbitrary and potentially vindictive legislation."  *Id.* at 29.  "Critical to relief under the *Ex Post Facto* Clause is … the lack of fair notice and governmental restraint when the legislature" punishes conduct in excess of what was prescribed when it occurred.  *Id.* at 30.

173.    These same considerations bar enforcement of FOSTA's amendment to Section 230(e)(5)(A), which eliminates immunity for civil actions predicated on violations of 18 U.S.C. § 1591.  The *Ex Post Facto* Clause limits civil legislation that has a punitive effect.  *Flemming v. Nestor*, 363 U.S. 603 (1960); *Burgess v. Salmon*, 97 U.S. (7 Otto) 381, 385 (1878).  In this case, FOSTA's selective modification of statutory immunity from civil liability applies only to actions found to violate federal criminal law.  *See Baltimore & Ohio R.R. Co. v. New York, New Haven & Hartford R.R. Co.*, 196 F. Supp. 724, 745 (S.D.N.Y. 1961) ("Withdrawal of immunization, any more than conferral of approval, cannot have a retroactive effect.").  Accordingly, FOSTA's amendment of Section 230 is the sort of punitive legislative conduct that the *Ex Post Facto* Clause is designed to prevent.

174.    Section 4(b) of FOSTA was adopted contrary to DOJ's warning that FOSTA's effective date makes it an unconstitutional *ex post facto* law to the extent it "imposes a punishment for an act which was not punishable at the time it was committed" or "imposes additional punishment to that then prescribed."  164 Cong. Rec. H1297 (daily ed. Feb. 27, 2018).

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    Declare that FOSTA is facially unconstitutional under the First and Fifth Amendments;

2.    Declare that FOSTA is unconstitutional under the First and Fifth Amendments as applied to Plaintiffs;

3.    Declare that FOSTA is an unconstitutional *ex post facto* law;

4.    Permanently enjoin Defendants from enforcing FOSTA;

5.    Provide for expeditious proceedings in this action;

6.    Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

7.    Grant such other relief as the Court may deem just and proper.

DATED:  June 28, 2018

Respectfully submitted,

_____/s/ Robert Corn-Revere_____
ROBERT CORN-REVERE
D.C. Bar No. 375415
RONALD G. LONDON
D.C. Bar No. 456284
**Davis Wright Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
         ronnielondon@dwt.com

JA0062