ORAL ARGUMENT NOT YET SCHEDULED

**No. 22-5105**

_____

# United States Court of Appeals
# for the District of Columbia Circuit

**WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY a/k/a ALEX ANDREWS and THE INTERNET ARCHIVE,**

*Appellants,*

v.

**THE UNITED STATES OF AMERICA
AND MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES,**

*Appellees.*

_____

From an Order by the U.S. District Court for the District of Columbia
The Honorable Richard J. Leon, Judge Presiding (Case No. 1:18-cv-1552-RJL)
_____

**BRIEF OF DECRIMINALIZE SEX WORK, THE SEX WORKERS PROJECT OF THE URBAN JUSTICE CENTER, FREEDOM NETWORK, BROOKLYN DEFENDER SERVICES, THE EROTIC LABORERS ALLIANCE OF NEW ENGLAND, OLD PROS, NATIONAL COALITION FOR SEXUAL FREEDOM, NEW YORK TRANSGENDER ADVOCACY GROUP, FREE SPEECH COALITION, SEX WORKERS OUTREACH PROJECT BROOKLYN, GLITS, and ST. JAMES INFIRMARY IN SUPPORT OF APPELLANTS**

_____

Melissa Sontag Broudo
New York Bar #4506317
DECRIMINALIZE SEX WORK
12 Park Street, Ste. 305
Brooklyn, NY 11206
Email: melissa@dswork.org
Phone: (914) 450-7137
*Of Counsel*

Rebecca Cleary
New York Bar #5875109
DECRIMINALIZE SEX WORK
12 Park Street, Ste. 305
Brooklyn, NY 11206
becca@dswork.org
Phone: (516) 633-7344
*Attorney for Amicus Curia*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit R. 28(a)(1), amici curiae Decriminalize Sex Work, The Sex Workers Project of the Urban Justice Center, Freedom Network, Brooklyn Defender Services, The Erotic Laborers Alliance of New England, Old Pros, National Coalition for Sexual Freedom, New York Transgender Advocacy Group, Free Speech Coalition, Sex Workers Outreach Project Brooklyn, GLITS, and St. James Infirmary certify the following:

### A. Parties and Amici

Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley, a/k/a Alex Andrews, and The Internet Archive, Plaintiffs below, Appellants here, filed suit challenging the constitutionality of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA"), naming as Defendants, Appellees here, the United States and the Attorney General of the United States in his official capacity. The amici here anticipate that four other amicus curiae briefs will be filed: (1) the Center for Democracy and Technology; (2) Coyote–Rhode Island; (3) Foundation for Individual Rights and Expression, and other entities aligned with its position; and (4) the Transgender Law Center. Amici here are unaware of any other parties or *amici* at this time.

**B. Rulings Under Review**

The ruling under review is *Woodhull Freedom Foundation, et al. v. United States*, 2022 WL 910600 (D.D.C. Mar. 29, 2022), and its accompanying Order, by which the District Court granted Appellees' motion for summary judgment and denied Appellants' motion for summary judgment, dismissing Appellants' Complaint challenging the constitutionality of FOSTA.

**C. Related Cases**

There are no related cases.

## STATEMENT OF NEED FOR SEPARATE BRIEFS

Amici here are several organizations with expertise in state and federal policies affecting adult consensual sex workers and survivors of human trafficking. This brief details a historical perspective of misguided trafficking policies that conflate sex work with trafficking in persons to the detriment of both sex workers and trafficking survivors. It also reflects on policy and advocacy efforts and the way they have been limited by online censorship in the wake of FOSTA's passage.

A single joint amicus brief is not practicable here because COYOTE-RI's brief addresses the harms of FOSTA from the perspective of directly affected sex workers in their community using quantitative data. While the briefs may reference similar and sometimes identical authorities, this brief instead uses qualitative

evidence to provide a bird's-eye perspective on the motivations behind and impacts of FOSTA.

Each brief approaches the same issues from different perspectives. COYOTE's focuses on the harmful effect of FOSTA on the ability for sex workers to engage in erotic labor safely and to access necessary social support systems, while this brief instead frames the issues in the historical and political context of the conflation between sex work and human trafficking and examines the larger causes of these harmful policies. Separate briefs are necessary to illustrate the wide breadth of FOSTA's harms to various communities and inform the court of the various underpinnings of trafficking policy that don't fall into the scope of appellants' argument.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and D.C. Cir. R. 26.1, amici represent that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## STATUTES AND REGULATIONS

Applicable statutes are contained in the Brief for Appellants.

## SOURCE OF AUTHORITY TO FILE

Amici submit that Both Appellants and Appellees have consented to the filing of this amicus brief and thus it is permitted under Fed. R. App. P. 29(a)(2).

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than amici contributed money intended to fund the brief's preparation or submission.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES    i

    A. Parties and Amici ........................................................................... i

    B. Rulings Under Review ................................................................... ii

    C. Related Cases .............................................................................. ii

STATEMENT OF NEED FOR SEPARATE BRIEFS ........................................... ii

CORPORATE DISCLOSURE STATEMENT ....................................................... iii

STATUTES AND REGULATIONS..................................................................... iii

SOURCE OF AUTHORITY TO FILE .................................................................. iii

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS........ iv

TABLE OF CONTENTS .......................................................................... v

TABLE OF AUTHORITIES ................................................................... vii

INTEREST OF AMICI CURIAE................................................................. 1

LIST OF AMICI CURIAE ........................................................................ 2

SUMMARY OF ARGUMENT .................................................................. 7

ARGUMENT.......................................................................................... 7

    I. FOSTA Arose From a Long History of Uninformed Policies Conflating
    Human Trafficking and Adult Consensual Sex Work........................... 8

II. Congress's Failure to Understand the Nature of Human Trafficking Led to the

Creation of Flawed and Unconstitutional Legislation........................................ 10

    A. FOSTA is unconstitutionally overbroad and vague................................... 12

    B. FOSTA is unconstitutionally content- and viewpoint-based ..................... 14

III. FOSTA's Constitutional Weaknesses Have Caused Immeasurable Harm

Without Advancing its Purpose.......................................................................... 16

    A. Decreased access to safety tools and diminished online community building

    have forced sex workers into more dangerous spaces .................................... 17

    B. FOSTA fails to accomplish its purported goals ......................................... 18

IV. Legislators Recognize FOSTA's Shortcomings ........................................... 19

    A. Some legislators who supported FOSTA now co-sponsor the SSWSA ..... 20

    B. FOSTA has impeded legislative advocacy efforts ..................................... 22

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*McCullen v. Coakley*
    573 U.S. 464 (2014)……………………………………………………….16

*United States v. Holte*,
    236 U.S. 140 (1915)……………………………………………………….10


**Statutes**

18 U.S.C.
    § 2421A(a)………………………………………………………………….10

22 U.S.C.
    § 7102(10)……………………………….………………………………..8
    § 7102(9)…………………………………………………………….9,10

White-Slave Traffic (Mann) Act
    Ch. 395, 36 Stat. 825 (1910) ……………………………………………….10


**Other Authorities**

Carol Leigh, *Inventing Sex Work*, *in Whores and Other Feminists*
    (Jill Nagle ed., 1997)……………………………………………………..9

David Eichert, *"It Ruined My Life": FOSTA, Male Escorts, and the Construction of
Sexual Victimhood in American Politics,* 26 Va. J. Soc. Pol'y & L. 201 (2019)
    211-218……………………………………………………………………….12

Gillian Abel and Melissa Ludeke,
    *Brothels as Sites of Third-Party Exploitation? Decriminalisation and Sex
    Workers' Employment Rights*, Social Sciences 10, no. 1 (2020)…………..11

H.R. REP. NO. 115-572 (2018)………………………………………………11

Lynzi Armstrong, *From Law Enforcement to Protection?
    Interactions between Sex Workers and Police in a Decriminalized Street-Based
    Sex Industry: Table 1,* British Journal of Criminology 57 (2018)……………11

Lucy Wiesner, *Good Intentions and Unintended Consequences: SESTA/FOSTA's First Two Years*, 93 Temp. L. Rev. 151 (2020)………………13

Marc J. Randazza,
*The Freedom to Film Pornography*, 17 Nev. L.J. 97 (2016)……………………..9

Maria L. Di Tommaso et al., *As Bad as It Gets: Well-Being Deprivation of Sexually Exploited Trafficked Women,*
    European Journal of Political Economy 25, no. 2 (2009)………………....…11

*SAFE SEX Workers Study Act*, S.3165, 116th Cong. (2019)………………..20,21

U.S. Attorney's Office, Southern District of New York press release,
"Ghislaine Maxwell Sentenced To 20 Years In Prison For Conspiring With Jeffrey
    Epstein To Sexually Abuse Minors". (June 28, 2022)………………...…….12

Lucy Wiesner, *Good Intentions and Unintended Consequences: SESTA/FOSTA's First Two Years*, 93 Temp. L. Rev. 151……………………………………….13

## INTEREST OF AMICI CURIAE

*Amici curiae* consist of 12 organizations with varying, interrelated interests in the present case. Amici work within any number of realms to achieve the same goal: safety, health, wellbeing, and human rights for sex workers and survivors of human trafficking. Amici are activists, advocates, organizers, service providers, policy experts, or a combination of any of the above. Amici have all seen their work affected by the consequences of the Fighting Online Sex Trafficking Act [hereinafter referred to as FOSTA] and the Stop Enabling Sex Trafficking Act [hereinafter referred to as SESTA, although for brevity, the brief will reference FOSTA to encompass both]. Amici have had their online presence censored, have had to limit information-sharing vital to their work, and have provided support to populations who have been censored or have self-censored. Being experts in policies surrounding both adult consensual adult sex work and human trafficking, amici are in a unique position to shine light on the law's failure to differentiate between the two and the harms caused by conflation of the issues.

An amicus brief is desirable here because appellants' argument necessarily does not represent the breadth of the issues caused by the challenged policy nor its context. The matters asserted are relevant to the present case because they speak to harms suffered by communities other than those experienced by appellants and demonstrate the unconstitutional provisions of the law on a broader scale.

## LIST OF AMICI CURIAE

*Decriminalize Sex Work (DSW)* is a national organization using a state-by-state strategy to advance policies related to the decriminalization of adult consensual sex work. DSW was founded in 2018 in direct response to FOSTA. DSW's staff are multidisciplinary seasoned advocates and experts in the areas of sex work, human trafficking, and the consequences of criminalization. The organization has successfully introduced and passed legislation to protect the human rights of sex workers, including immunity laws that protect victims of crime from being prosecuted for prostitution, the repeal of harmful loitering for prostitution laws, and expanded criminal record relief for survivors of trafficking.


*The Sex Workers Project (SWP) of the Urban Justice Center* is a national organization that defends the human rights of sex workers by destigmatizing and decriminalizing people in the sex trades through free legal services, education, research, and policy advocacy. As both a direct service provider and advocacy organization, SWP understands the negative consequences of SESTA/FOSTA on individual people involved in the sex trades and on efforts to reduce systemic harms and improve laws that effect sex workers and survivors of human trafficking.

*Freedom Network* is dedicated to a human rights-based approach to human trafficking. Protecting the rights of each survivor is the only path to restoring their dignity and the opportunity for a better life. This commitment to human rights ties the network together as it works toward the common goal of ending human trafficking.

*Brooklyn Defender Services (BDS)* is one of the largest public defense offices in New York State and has been a pioneering force in developing practices in New York City's Human Trafficking Intervention Courts, where many sex workers and survivors of trafficking have their cases heard. BDS works, in and out of court, to protect and uphold the rights of individuals and to change laws and systems that perpetuate injustice and inequality.

The *Erotic Laborers Alliance Of New England (ELA-ONE)* is a grassroots harm reduction organization that supports trans folx who have been directly impacted by FOSTA. As a peer-led group, ELA-ONE has experienced censorship, shadow banning, and conflation in online efforts as a harm reduction organization as a result of FOSTA, creating an environment where outreach efforts are obstructed. ELA-ONE has unfortunately witnessed firsthand the impact of this damaging legislation and the way outreach efforts have been obstructed. Further, some of the

organization's most marginalized community members have been pressured into unsafe working conditions due to FOSTA.

*Old Pros* is a nonprofit media organization focused on creating the conditions to change the status of sex workers in society through storytelling. Old Pros produces a podcast about sex worker history and a newsletter about sex worker rights related news. The mission is to change cultural narratives around sex work, setting the stage for policy reforms that will destigmatize sex work and ensure sex workers have access to all the tools they need to thrive.

*National Coalition for Sexual Freedom (NCSF)* is the advocacy organization for consenting adults who engage in kink and consensual non-monogamy. NCSF has received reports from our constituent groups and licensed professionals that under FOSTA/SESTA, they have been deplatformed from social media, their books and videos have been delisted from search functions, and they're not allowed to advertise their clinical services or events on social media.

*New York Transgender Advocacy Group (NYTAG)* is a non-profit organization that centers the TGNCNBI community. NYTAG stands with those who are sex-workers and have been impacted by FOSTA.

*Free Speech Coalition (FSC)* is the trade and advocacy organization for the adult industry. In the wake of the passage of FOSTA, FSC witnessed rapid and widespread removal of workers and businesses from social media, the shuttering of online resources for health and safety, and the denial of basic services from mainstream internet platforms. FOSTA has had a massive chilling effect that has harmed businesses and made workers less safe.

*SWOP (Sex Workers Outreach Project) Brooklyn* was founded in October 2019 with the mission to build community and provide mutual aid to sex workers in Brooklyn. SWOP Brooklyn is a 100% volunteer-run peer-led organization dedicated to supporting New York sex workers in need and has seen firsthand the harmful impact of FOSTA on its members

*G.L.I.T.S. (Gays and Lesbians Living in a Transgender Society)* builds future trans community leaders, public education, sex worker rights advocacy - and in collaboration with allies - policy solutions. G.L.I.T.S. addresses the stigmatization and criminalization of trans people and the laws that perpetuate it.

*St. James Infirmary* is a peer-based non-profit organization serving sex workers throughout the San Francisco Bay Area and is the first occupational health and

safety clinic in the U.S. run by sex workers, for sex workers. St. James Infirmary provides free, compassionate, and nonjudgmental healthcare, social services, and community support for current or former sex workers of all genders and sexual orientations while preventing occupational illnesses and injuries through a comprehensive continuum of services.

## SUMMARY OF ARGUMENT

Amici provide historical and cultural context to appellants' argument, explaining that FOSTA's vagueness and overbreadth arise from a legacy of policymaking that conflates trafficking in persons and adult consensual sex work, and demonstrating the clear chilling effect that this content- and viewpoint-based legislation has created on online speech about sex work and trafficking. FOSTA has not only failed in myriad ways to meet the purpose of its enactment - it has caused harm to already marginalized communities, impeded efforts to advance the health and safety of those engaged in adult consensual sex work, and obstructed the work of advocates and policymakers to advance related legislation.

## ARGUMENT

FOSTA is part of a legacy of federal and state laws that have wrongfully conflated human trafficking and adult consensual sex work while overlooking the realities of each. Congress passed FOSTA without understanding the reality of human trafficking, resulting in the enactment of a law that is unconstitutionally overbroad, vague, and content- and viewpoint-based. FOSTA has had a demonstrable chilling effect on speech in the form of overmoderation by internet service providers and self-censorship of protected speech by internet users. This overmoderation and self-censorship has created well-documented and widespread

harms to survivors of trafficking, adult consensual sex workers, service providers, anti-trafficking endeavors, and the legislative process; and the law has failed to meet the purpose of its legislative intent to the point that congressmembers once in support of the law's passage now seek to study its negative effects [see the SAFE SEX Worker Study Act in Section IV]. The limitations on free speech caused by FOSTA have essentially censored harm reduction and safety information sharing, removed tools that sex workers used to keep themselves and others safe, and interrupted organizing and legislative endeavors to make policies that will enhance the wellbeing of sex workers and trafficking survivors alike. Each of these effects has had a devastating impact on already marginalized and vulnerable communities; meanwhile, FOSTA has not addressed nor redressed any of the issues cited as motivation for its enactment.

## I. FOSTA Arose From a Long History of Uninformed Policies Conflating Human Trafficking and Adult Consensual Sex Work

In discussing both the history and the harms of FOSTA, it is important to understand the distinction between certain key terms. Federal law defines a "severe form[] of trafficking in persons" as "sex trafficking[1] in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform

---

[1] "The term 'sex trafficking' means the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act." 22 U.S.C. § 7102(10).

such acts has not yet attained 18 years of age". 22 U.S.C. § 7102(9).  Nearly every

U.S. state also legally defines trafficking as involving force, fraud, or coercion.

The word "prostitution" refers to the criminalized conduct of exchanging a

sex act for some form of compensation. The legal definition of prostitution varies

state-to-state, and as prostitution is not criminalized federally, no definition of

prostitution has been codified in federal law.

Sex work is erotic labor performed voluntarily and consensually by adults.[2]

Sex work is an umbrella term, encompassing a wide swath of erotic labor,

including but not limited to prostitution, stripping, sensual bodywork, fetish work,

adult film performance, webcam and phone sex, etc. Some forms of sex work are

criminalized, some are not; some states criminalize certain aspects of sex work that

may be perfectly legal elsewhere.[3]

Sex work, by definition, is entirely distinct from human trafficking. Sex

work is erotic labor performed by adults voluntarily and consensually; trafficked

persons are subject to force, fraud, and coercion - consent is inherently missing.

Human trafficking is an unspeakably horrific crime, and efforts to combat

trafficking are necessary. However, legislative efforts to address trafficking have

often been reactionary and uninformed. Long before federal law defined human

---

[2] The term "sex work" was coined by Carol Leigh, a sex work activist, in the 1970s. Carol Leigh, *Inventing Sex Work*, *in Whores and Other Feminists* (Jill Nagle ed., 1997).
[3] For example, laws regulating the production of pornography vary significantly from state to state. *See* Marc J. Randazza, *The Freedom to Film Pornography*, 17 Nev. L.J. 97 (2016).

trafficking, the Mann Act sought to curtail movement across state lines for the purpose of engaging in prostitution. White-Slave Traffic (Mann) Act, Ch. 395, 36 Stat. 825 (1910) (codified as amended at 18 U.S.C. §§ 2421-2424 (2012)). The Mann Act, though amended many times since its enactment, is still on the books today. It prohibits the transport, persuasion, inducement, enticement or coercion of any individual to travel in interstate or foreign commerce to engage in prostitution. *Id.* The Mann Act was borne of moral panic and had devastating consequences far beyond its intended purpose. The law contained no definition for "prostitution" and ultimately led women to be convicted as co-conspirators in their own exploitation. *See United States v. Holte*, 236 U.S. 140 (1915) (conviction upheld of a woman for conspiracy to exploit herself). Human trafficking was later defined in federal law in 2000 with the passage of the Trafficking Victims Protection Act [hereinafter referred to as the TVPA], which created the federal crime of trafficking in persons. 22 U.S.C. § 7102(9). Prostitution is still not defined under federal law.

## II. Congress's Failure to Understand the Nature of Human Trafficking Led to the Creation of Flawed and Unconstitutional Legislation

Modern understandings of sex work and human trafficking have perpetuated the problem created by the Mann Act. FOSTA's language similarly contains the word prostitution - in this case, "prostitution of another person", without defining the term. 18 U.S.C. §2421A(a). However, the trafficking in persons definitions codified in the TVPA did little to solve the widespread conflation of the two terms;

10

though it seems legislators recognize that "prostitution" and "trafficking" are words with two different meanings, they don't necessarily understand them as mutually exclusive *realities.*

This confusion is evident in a 2008 House Judiciary Committee report on FOSTA: "Prostitution and sex trafficking are inextricably linked, and where prostitution is legalized or tolerated, there is a greater demand for human trafficking victims and nearly always an increase in the number of women and children trafficked into commercial sex slavery." *See* H.R. REP. NO. 115-572 (2018), pt. 1, at 5. No evidence was provided to substantiate this claim. In reality, quite the opposite is true: in places where prostitution laws have been repealed, trafficking is actually *less* prevalent. Sex workers are able to operate safely and publicly, rather than in criminalized, shadowy spaces that create vulnerability to exploitation. They are able to work with law enforcement (whose resources can be rerouted towards targeting human trafficking instead of adult consensual sex work) in order to identify and prosecute trafficking operations.[4] The House Judiciary Committee report is demonstrative of Congress's ignorance to the reality of trafficking - its causes, the best strategies to stop it, and, crucially, the breadth of its

---

[4] *See* Maria L. Di Tommaso et al., *As Bad as It Gets: Well-Being Deprivation of Sexually Exploited Trafficked Women,* European Journal of Political Economy 25, no. 2 (2009) 143-162; Gillian Abel and Melissa Ludeke, *Brothels as Sites of Third-Party Exploitation? Decriminalisation and Sex Workers' Employment Rights*, Social Sciences 10, no. 1 (2020) 3-15; Lynzi Armstrong, *From Law Enforcement to Protection? Interactions between Sex Workers and Police in a Decriminalized Street-Based Sex Industry: Table 1,* British Journal of Criminology 57 (2018) at 583.

definition. The record from bill hearings illustrates the sensationalized conception of trafficking. Legislators almost exclusively referred to victims as "girls" and perpetrators as "men",[5] despite the fact that people of all genders are victim to exploitation, and women are, sometimes very publicly,[6] convicted of human trafficking offenses. The exclusion of sex workers and trafficking survivors from the policymaking process created the very problems they have been warning of since the bill's introduction. Failure to understand the issues can only hurt the people that FOSTA purportedly aims to help, all while ensnaring countless others, most of whom are already members of marginalized communities.

### A. FOSTA is unconstitutionally overbroad and vague

Appellants thoroughly argue that the language in FOSTA is impermissibly overbroad and vague, effectively chilling speech - as to not repeat their argument, amici will instead provide examples of the demonstrable chill that FOSTA has created.

### 1. FOSTA has created a chilling effect on free speech

Internet service providers [hereinafter referred to as ISPs] are subject to significant criminal and civil penalties for failure to moderate content that is not

---

[5] David Eichert, *"It Ruined My Life": FOSTA, Male Escorts, and the Construction of Sexual Victimhood in American Politics,* 26 Va. J. Soc. Pol'y & L. 201 (2019) 211-218.
[6] U.S. Attorney's Office, Southern District of New York press release, "Ghislaine Maxwell Sentenced To 20 Years In Prison For Conspiring With Jeffrey Epstein To Sexually Abuse Minors". (June 28, 2022).
https://www.justice.gov/usao-sdny/pr/ghislaine-maxwell-sentenced-20-years-prison-conspiring-jeffrey-epstein-sexually-abuse

clearly defined. Necessarily, they immediately began overmoderating content that could be perceived in any way as related to trafficking in persons *or* prostitution, a direct result of the law's failure to differentiate the two. FOSTA essentially forced the hand of ISPs back into the "moderator's dilemma", the very situation that the Communications Decency Act was built to prevent.[7]

As a result of ISP overmoderation, internet users self-censor to avoid losing their platform. Despite the law's purported intent to target human trafficking operations, the ultimate result has been widespread deplatforming of anyone posting content related to sexual activity - including when it doesn't even involve erotic labor. But sex workers are the population that see the gravest consequences and the greatest chilling effect of FOSTA's vague and overbroad language.

The challenges created by FOSTA have mutated in the years since its passage for several converging reasons - formerly popular social media platforms have faded into obscurity, with others gaining tremendous popularity. Internet usage itself has evolved in a way no one anticipated prior to the beginning of the COVID pandemic. What has emerged is a new online economy. Confronted with the economic hardships and employment limitations of the pandemic, people began engaging in erotic labor that they hadn't prior to COVID, self-promoting on social

---

[7] "…the pre-Section 230 environment gave companies two equally problematic choices: either heavily moderate user content and ensure nothing offensive slipped through the cracks or stop moderating at all to avoid 'knowledge' of their users' posts." Lucy Wiesner, *Good Intentions and Unintended Consequences: SESTA/FOSTA's First Two Years*, 93 Temp. L. Rev. 151 (2020) 175-6.

media platforms while trying to dodge unprecedented new censorship practices. Some experienced sex workers similarly increased their social media presence. Sex workers adapted - creating new and constantly evolving coded language in an effort to avoid account suspensions or shadowbans. "Sex" became "s3x" became "s3ggz" and strippers became "accountants". The downside, of course, is that using this coded language can "prevent[] people unaware of these tactics who may support sex worker rights from learning about organizing efforts or campaigns". Grant Decl. ¶ 12. While these language choices arise in part out of social media Terms of Service, both over-moderation and self-censorship of content in the way they exist now are direct products of FOSTA.[8] Sex workers also have seen decreased access to safety, health, and educational information due to content removal and self-censorship. Organizations seeking to distribute content about harm reduction, health, etc. to sex worker communities must "navigate a dizzying array of constantly evolving coded terms for "sex work" and "prostitution" while trying to educate [their] audience on these very issues". Bailey Decl. ¶ 6. This is another striking example of the effect FOSTA has had on free speech.

## B. FOSTA is unconstitutionally content- and viewpoint-based

Overmoderation and self-censorship seen post-FOSTA demonstrate that it is an unconstitutionally content- and viewpoint-based law. The greatest effects of the

---

[8] For quantitative research findings of sex workers' motivations to self-censor, see amicus brief filed by COYOTE-RI sections II(B)-(D).

law have been seen by internet users and websites sharing content advocating for things like the decriminalization of sex work, harm reductive approaches to sex work, and even types of erotic labor that are not criminalized, such as stripping or fetish play. On the other hand, users sharing content condemning sex work or encouraging its continued criminalization are generally *not* having content removed by ISPs or self-censoring for fear of being deplatformed. Appellants correctly argue that FOSTA is a content-based regulation because it doesn't restrict all online speech, instead "'singl[ing] out' only 'specified content' for regulation - i.e., publication of speech that promotes or facilitates prostitution, whatever that means." Appellants' Br. (09/06/2022) at 44.

*Amici* Old Pros is a media organization that uses storytelling as a tool to change popular narratives around sex work with the ultimate goal of creating a cultural environment in which policy reforms advancing the rights of sex workers are common. Bailey Decl. ¶ 2. Old Pros is uniquely positioned in its relationship to FOSTA; their experience in dealing with the challenges to their work presented by the law is an illustrative example of how FOSTA discriminates on the basis of conduct and viewpoint. The storytellers at Old Pros "hear and share the many ways FOSTA has hurt members of our communities". *Id.* ¶ 8. Then, in sharing content and publishing those stories, they "have to constantly self-censor to ensure [they] don't lose [their] platform by getting content flagged, removed, or shadowbanned."

15

*Id.* ¶¶ 5. Old Pros exists to uplift the stories of sex workers; in other words, their productions promote stories about engaging in sex work. Old Pros is limited in their ability to operate because the content they create is plainly restricted by FOSTA's language.

Appellants also observe that FOSTA is impermissibly viewpoint-based because it "creates liability…for speech that supports sex work - such as harm-reduction education and advocacy for decriminalization." Appellants' Br. (09/06/2022) at 45. Old Pros is open about the ultimate goal of their storytelling, which is to destigmatize sex work and advance decriminalization and other related efforts. A hypothetical similar endeavor that instead, for example, shared stories of trafficking survivors solely to shed light on human trafficking with no mention of sex work - a topic ostensibly related to FOSTA's purpose - would not face the same challenges that Old Pros must confront in their work. FOSTA undeniably discriminates against both Old Pros' content and their viewpoint.

## III. FOSTA's Constitutional Weaknesses Have Caused Immeasurable Harm Without Advancing its Purpose

Content-based regulations have a presumption of invalidity, which can only be overcome by a showing that the law uses "the least restrictive means of achieving a compelling state interest." Appellants' Br. (09/06/2022) at 46, quoting *McCullen v. Coakley,* 573 U.S. 464, 478 (2014). Anti-trafficking legislation that

pre-dates FOSTA has already been effectively used to prosecute trafficking in persons, and the Backpage case that inspired FOSTA's inception was fully resolved before the bill's passage. Less restrictive and more effective means already exist, and FOSTA has failed to actually *achieve* any compelling state interest. In fact, it has created harms for already marginalized communities, all the while failing to result in any successful anti-trafficking endeavors.

### A. Decreased access to safety tools and diminished online community building have forced sex workers into more dangerous spaces

This censorship of information directly results in devastating real-life consequences. Amici have witnessed firsthand the immediate fallout of website removals and deplatforming resulting from FOSTA's passage. Pre-FOSTA internet forums provided safety tools to sex workers such as "bad date" lists, client vetting opportunities, and general networking with other sex workers in the community to develop safety strategies. Now that many of those forums have been removed,[9] many sex workers have had to engage in street-based sex work: in San Francisco, *amici* St. James Infirmary staff "witnessed and recorded an approximately three-fold increase in the number of sex workers working out on the streets." Remora-Guerrero Decl. ¶ 4. Ultimately, FOSTA stripped sex workers of existing safety nets as well as access to critical information, creating vulnerability to harm touching

---

[9] The COYOTE-RI brief discusses sex workers' reluctance and/or inability to participate in online community building and safety strategizing communities post-FOSTA in more detail, see Sections II(B)-(D).

every corner of their lives. Amici Old Pros explains, "As sex worker storytellers, we hear the stories of people driven back into poverty, back into exploitative relationships, who are losing their livelihoods and their ability to self-advocate because of the devastating impact of this law and the way it is being interpreted by the social media platforms we all use." Bailey Decl. ¶ 7.

### B. FOSTA fails to accomplish its purported goals

A damning report from the Government Accountability Office (GAO) on FOSTA shows that FOSTA hasn't advanced trafficking prosecutions; in fact, it has obstructed law enforcement efforts to investigate trafficking cases. The GAO report demonstrated how infrequently FOSTA was used in prosecuting trafficking cases, with only one case brought by the DOJ, "…under the criminal provision established in Section 3 of FOSTA."[10] The GAO report also emphasized the challenges FOSTA created for law enforcement investigating trafficking cases observing that, "…gathering tips and evidence to investigate and prosecute those who control or use online platforms has become more difficult due to the relocation of platforms overseas, platforms' use of complex payment systems, and the increased use of social media platforms."[11] Meanwhile, as addressed above, the removal of online safety nets actually makes sex workers *more* vulnerable to

---

[10] *See Government Accountability Office, Sex Trafficking - Online Platforms and Federal Prosecutions*, GAO-21-385, (June 2021).
[11] *Id.*

exploitation. Some sex workers have self-reported experiencing force, fraud, and/or coercion in their work since FOSTA's passage.[12]

## IV. Legislators Recognize FOSTA's Shortcomings

The harms created by FOSTA became evident nearly immediately. Those affected by the legislation organized quickly and effectively and brought their concerns to legislators, many of whom realized that Congress has a duty to examine the actual impacts of FOSTA. Though the law has barely been utilized in courts since its enactment, the effects of its passage are innumerable, widespread, and well-documented.

In 2019, due much to the advocacy of sex workers and sex workers' rights organizations, House Representative Ro Khanna - one of the few members to heed the warnings from sex workers and vote against FOSTA - introduced a bill that would require Congress to study the effects of FOSTA on people who trade sex. In the 2019 version of the "SESTA and FOSTA Examination of Secondary Effects for Sex Workers Study Act" or the SAFE SEX Workers Study Act [hereinafter referred to as the SSWSA], the Secretary of Health and Human Services would be directed "to conduct a study to assess the unintended impacts on the health and safety of people engaged in transactional sex, in connection with the enactment of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (Public

---

[12] See amicus brief filed by COYOTE-RI for data from sex workers self-reporting about increased vulnerability to exploitation, especially for survivors, caused by FOSTA in Sections I(A)(1)-(3).

Law 115–164) and the loss of interactive computer services that host information related to sexual exchange, and for other purposes." *SAFE SEX Workers Study Act*, S.3165, 116th Cong. (2019).

### A. Some legislators who supported FOSTA now co-sponsor the SSWSA

The harms caused by FOSTA are so visible and substantial that many legislators who voted for its passage in 2018 have since recognized the need to study its disproportionate impact, highlighting the law's failure to live up to Congressional intent. Senator Elizabeth Warren, who originally voted for SESTA, was convinced that further analysis of the law was necessary and sponsored the 2019 Senate version of the SSWSA; Senator Bernie Sanders also voted for SESTA but ultimately became a co-sponsor of the SSWSA. On the House side, SSWSA's co-sponsors included 11 Representatives who originally voted for FOSTA, five of whom co-sponsored that bill.

Other legislators recognized FOSTA's dangerous shortcomings long before it was passed: Representative Bonnie Watson Coleman had co-sponsored FOSTA but later voted against it and became a co-sponsor of the SWSSA. Senator Ron Wyden was one of two Senators who voted against SESTA, basing his vote on his experience helping craft Section 230 of the Communications Decency Act and his seemingly unique knowledge within the Senate of the pitfalls of SESTA.

The SAFE SEX Workers Study Act did not pass during the 116th Congress, so sex workers and advocates worked to get it reintroduced in the 117th, with Rep. Khanna and Senator Warren's continued leadership as the bills' sponsors. Importantly, the bill was also revised based in part on the abovementioned GAO report showing that FOSTA had only been used in one case and that it in fact creates additional challenges to trafficking investigations. *Supra.*

Due to these concerns related to FOSTA's impact on trafficking investigations and prosecutions, SSWSA was updated to include not only a study from the Secretary of Health and Human Services on the health and safety effects of FOSTA on people who trade sex, but also directed "…the Attorney General to submit a report on human trafficking investigations and prosecutions in connection with the same, and for other purposes." S.3165. This addition also reflected the input and advisement of digital rights, anti-trafficking, and sex worker rights advocates who supported the bill's reintroduction. On March 3, 2022— International Sex Worker Rights Day—Senators Warren and Wyden and Representatives Khanna and Lee reintroduced the SSWSA. The bill is historic in its centering of the experiences of people who trade sex, with specific focus on the populations disproportionately represented among sex workers and survivors of trafficking, including LGBTQIA+ individuals, particularly transgender women of color. Among the bill's current sponsors, there is the addition of Senators Cory

Booker and Ed Markey and Representatives Carolyn Maloney and Lucille Roybal-Allard, all of whom previously voted for SESTA and FOSTA, respectively.

### B. FOSTA has impeded legislative advocacy efforts

The legislative response to the negative effects of FOSTA - specifically the work by advocates and legislators introducing the SSWSA and working towards its passage - has inadvertently become a striking example of the chilling effect FOSTA has created on First Amendment-protected freedom of speech. Due to overactive moderation of social media to avoid liability under the amended Communications Decency Act, the harm caused by FOSTA isn't limited to that described in Section III(A) - it affects the legislative process *itself.* Advocates seeking to organize around and share information about the SSWSA may feel the need to self-censor for fear of losing their platform entirely, they may have content hidden or removed enitrely for mention of sex work, and they may be precluded from speaking about the legislation at all due to strict content guidelines that did not exist pre-FOSTA.

Amici have had to alter their social media strategies for policy campaigns in the wake of FOSTA. The Sex Workers Project of the Urban Justice Center has been spearheading a campaign to advance the SSWSA and has faced significant challenges to their efforts due to the constraints created by FOSTA. They have reported that, in order to maintain engagement with their social media postings

22

about the SSWSA, they can no longer "engag[e] directly with sex workers on social media sites…[nor] coordinate and organize with the individuals and communities directly impacted by SESTA/FOSTA and most likely to benefit from the knowledge gained if the SAFE SEX Workers Study Act were passed." Grant Decl. ¶ 9. They've also had to limit reposting directly from sex workers' accounts and unfollow some of those accounts, instead only engaging with other nonprofit organizations rather than directly affected communities.[13]

## CONCLUSION

FOSTA is impermissibly overbroad and vague, creating a demonstrable chilling effect on free speech. It also restricts expression based on content and viewpoint and fails to survive any level of judicial scrutiny. These constitutional weaknesses have created immeasurable harm for sex workers and trafficking survivors without effectively aiding anti-trafficking efforts. FOSTA is the shining example of what happens when policymakers conflate sex work and human trafficking: trafficking numbers remain the same, victims get left behind, and those facing the greatest consequences are not traffickers but already marginalized communities.

---

[13] "In the last two years, to minimize censorship and shadow banning, our Communications team has had to categorize our social media accounts as a "nonprofit" and create nonprofit networks. On Twitter, we had to unfollow sex workers who conduct their work in-person to lift bans previously imposed on our account. To avoid having our account banned or having posts censored, we have had to stop engaging with sex workers on this site and only engage with nonprofit organizations advocating for issues related to labor and sex worker rights." Grant Decl. ¶ 10.

Dated: September 13, 2022

Respectfully submitted,


/s/Rebecca Cleary

*Attorney for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached brief is proportionally spaced, has a typeface of 14 points or more and contains 5,148 words.

Counsel relies on the computer program used to create this brief for the word count.

DATED: September 13, 2022

Respectfully Submitted,

/s/Rebecca Cleary

*Attorney for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 14, 2022

Respectfully Submitted,

/s/Rebecca Cleary

*Attorney for Amici Curiae*

**ADDENDUM**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

WOODHULL FREEDOM FOUNDATION, )
HUMAN RIGHTS WATCH, ERIC KOSZYK, )
JESSE MALEY A/K/A ALEX ANDREWS, AND )
THE INTERNET ARCHIVE, )
        )
              Appellants, )
        )
        v. )      No. 22-5105
        )
THE UNITED STATES OF AMERICA AND )
MERRICK B. GARLAND, IN HIS OFFICIAL )
CAPACITY AS ATTORNEY GENERAL OF )
THE UNITED STATES, )
        )
              Appellees. )

### DECLARATION OF MARIAH GRANT

Pursuant to 28 U.S.C. § 1746, I, Mariah Grant, hereby declare as follows:

1.  I am the Director of Research and Advocacy for the Sex Workers Project of the Urban Justice Center (SWP).

2.  SWP is a national organization that defends the human rights of sex workers by destigmatizing and decriminalizing people in the sex trades through free legal services, education, research, and policy advocacy. SWP staff is made up of current and former sex workers as well as allies. The expertise and experience of doing sex work, represented by some SWP staff is crucial to our understanding of the issues that impact people in the sex trades.

3.  SWP is an organization that works at the intersection of defending and protecting the human rights of consensual adult sex workers while preventing exploitation, including human trafficking in the sex trades. We conduct this work at the individual level through

free immigration legal services to people involved in the sex trades, including sex

workers and trafficking survivors, and by influencing the public and lawmakers through

media and policy campaigns to destigmatize sex work and improve or change laws that

affect people in the sex trades. As both a direct service provider and advocacy

organization, SWP has a unique vantage point on the effects of SESTA/FOSTA.

4. Because SWP clients and staff accurately represent the racial, gender, sexual orientation,

   nationality, religious, and income diversity of sex workers, we understand how

   SESTA/FOSTA has impacted individuals and communities differently based on varying

   systemic and societal privileges or marginalization.

5. In my role at SWP, I regularly seek insights from our legal providers on how

   SESTA/FOSTA has affected our clients and conduct calls with clients to hear directly

   from them about their experiences. I use these insights to inform our policy advocacy and

   to demonstrate to the public and lawmakers the harms of this law.

6. As co-chair of a working group of sex worker and LGBTQIA+ rights advocates, I

   successfully coordinated efforts to get the "SESTA and FOSTA Examination of

   Secondary Effects for Sex Workers Study Act" or the SAFE SEX Workers Study Act

   reintroduced in US Congress. This bill was reintroduced in the Senate by lead sponsor

   Senator Elizabeth Warren and in the House by lead sponsor Representative Ro Khanna

   on March 3, 2022. If passed, the SAFE SEX Workers Study Act would require the

   Secretary of Health and Human Services to study the consequences of losing access to

   online spaces because of SESTA/FOSTA for people who trade sex. The bill would also

   require the Attorney General to report on SESTA/FOSTA's effects on investigations and

   prosecutions of human trafficking.

7.  The successful passage of the SAFE SEX Workers Study Act will rely on my and other advocates ability to organize a robust national campaign to both encourage individuals to call their representatives in Congress to express their support for the bill and for advocates to gain access to legislative staff via online communications, such as email, to arrange meetings to discuss the bill, encourage new sponsors, and seek reintroduction in the next Congress if necessary.

8.  Online spaces, including social media sites, are crucial to such a campaign, but due to SESTA/FOSTA, organizing on the internet is much more challenging on issues related to the sex trades. I work closely with our Communications team at SWP and have learned from them the new challenges we are experiencing due to account bans and censorship when posting content related to sex or sexuality.

9.  To circumvent censorship of content related to sex or sexuality, including details related to the SAFE SEX Workers Study Act, the SWP Communications team has had to distance SWP from engaging directly with sex workers on social media sites. We are no longer able to coordinate and organize with the individuals and communities directly impacted by SESTA/FOSTA and most likely to benefit from the knowledge gained if the SAFE SEX Workers Study Act were passed. Instead SWP engages with institutions or organizations that represent sex worker rights but may or may not be sex worker led. On occasion SWP will do direct retweets from sex workers but we have found that this tends to affect the reach of our subsequent posts.

10. In the last two years, to minimize censorship and shadow banning, our Communications team has had to categorize our social media accounts as a "nonprofit" and create nonprofit networks. On Twitter, we had to unfollow sex workers who conduct their work

in-person to lift bans previously imposed on our account. To avoid having our account banned or having posts censored, we have had to stop engaging with sex workers on this site and only engage with nonprofit organizations advocating for issues related to labor and sex worker rights.

11. There is a great deal lost by not being able to organize online directly with the individuals who are most affected by SESTA/FOSTA. When we do share content directly from these individuals, we find there is lower engagement on those posts.

12. We have also seen an increase both from sex workers and sex worker rights organizations in using alternative spellings for terms such as "sex" or "sex worker" to avoid censorship. However, this means to communicate has its limitations, as it prevents people unaware of these tactics who may support sex worker rights from learning about organizing efforts or campaigns.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of September, 2022 in Washington, D.C.

Mariah Grant
Director of Research and Advocacy
Sex Workers Project
Urban Justice Center

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

WOODHULL FREEDOM FOUNDATION,   )
HUMAN RIGHTS WATCH, ERIC KOSZYK,   )
JESSE MALEY A/K/A ALEX ANDREWS, AND   )
THE INTERNET ARCHIVE,   )
   )
          Appellants,   )
   )
        v.   )    No. 22-5105
   )
THE UNITED STATES OF AMERICA AND   )
MERRICK B. GARLAND, IN HIS OFFICIAL   )
CAPACITY AS ATTORNEY GENERAL OF   )
THE UNITED STATES,   )
   )
          Appellees.   )
_____)

### DECLARATION OF KAYTLIN BAILEY

Pursuant to 28 U.S.C. § 1746, I, Kaytlin Bailey, hereby declare as follows:

1. I am the founder and Executive Director of Old Pros.

2. Old Pros is a nonprofit media organization focused on creating the conditions to change the status of sex workers in society through storytelling. We produce a podcast about sex worker history and a newsletter about sex worker rights-related news. Our mission is to change cultural narratives around sex work, setting the stage for policy reforms that will destigmatize sex work and ensure sex workers have access to all the tools they need to thrive.

3. Our community continues to be impacted by the devastating consequences of SESTA/FOSTA, as does our work.

4. Legislators' longstanding conflation of erotic expression and exploitation has harmed victims of labor exploitation and sexual violence, as well as adult consensual sex

workers, content creators, and sexual health educators. FOSTA has effectively removed the ability for people belonging to any and all of these groups to communicate and post content online.

5. FOSTA has made our work at Old Pros much more complicated. Our content creators have to constantly self-censor to ensure we don't lose our platform by getting content flagged, removed, or shadowbanned. Creators have been forced to avoid putting their message across directly, instead using coded language in order to navigate an ever-changing landscape of algorithms created by platforms in their overabundance of caution as they attempt to abide by these vague policies.

6. Our content creators have to navigate a dizzying array of constantly evolving coded terms for "sex work" and "prostitution" while trying to educate our audience on these very issues.

7. As sex worker storytellers, we hear the stories of people driven back into poverty, back into exploitative relationships, who are losing their livelihoods and their ability to self-advocate because of the devastating impact of this law and the way it is being interpreted by the social media platforms we all use.

8. The nature of our work at Old Pros gives us a multifaceted understanding of the harms created by FOSTA. As storytellers, we hear and share the many ways FOSTA has hurt members of our communities; we also face challenges in our efforts to share these stories. FOSTA has inhibited our ability to share information and stories important to sex workers, undermining our ultimate goal of moving toward a society that is safer, more accessible, and more supportive to the millions of people who engage in sex work.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of September, 2022 in New York, New York.

Kaytlin Bailey
Executive Director
Old Pros

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA

WOODHULL FREEDOM FOUNDATION,  )
HUMAN RIGHTS WATCH, ERIC KOSZYK,  )
JESSE MALEY A/K/A ALEX ANDREWS, AND  )
THE INTERNET ARCHIVE,  )
  )
              Appellants,  )
  )
        v.  )    No. 22-5105
  )
THE UNITED STATES OF AMERICA AND  )
MERRICK B. GARLAND, IN HIS OFFICIAL  )
CAPACITY AS ATTORNEY GENERAL OF  )
THE UNITED STATES,  )
  )
              Appellees.  )
_____)

### DECLARATION OF JOAQUIN REMORA-GUERRERO

Pursuant to 28 U.S.C. § 1746, I, Joaquin Remora-Guerrero, hereby declare as follows:

1. I am the Director of Housing for St. James Infirmary's Our Trans Home SF.

2. St. James Infirmary is a peer-based non-profit organization serving sex workers
   throughout the San Francisco Bay Area. We are the first occupational health and safety
   clinic in the U.S. run by sex workers, for sex workers. St. James Infirmary provides free,
   compassionate, and nonjudgmental healthcare, social services, and community support
   for current or former sex workers of all genders and sexual orientations while preventing
   occupational illnesses and injuries through a comprehensive continuum of services.

3. In March 2018, FOSTA/SESTA was passed and immediately came the shutdown of
   many online sites that sex workers used to advertise and vet clients in order to stay safer.
   Without a safer way for sex workers to advertise and vet clients online, many of the most
   already marginalized were forced out onto the streets.

4. In our work providing social support to sex workers, we at St. James Infirmary immediately witnessed and recorded an approximately three-fold increase in the number of sex workers working out on the streets of San Francisco.

5. This legislation harms both sex workers and sex trafficking victims by cutting off access to community, safer vetting strategies, and access to and evidence of perpetrators of violence and harm including human traffickers.

6. We at St. James Infirmary stand against FOSTA/SESTA and in support of sex workers and sex trafficking victims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of September, 2022 in Brooklyn, New York.

Joaquin Remora-Guerrero
Director of Housing – Our Trans Home SF
St. James Infirmary