**ORAL ARGUMENT NOT YET SCHEDULED**
**No. 22-5105**

———————————————

**In the United States Court of Appeals for the D.C. Circuit**
———————————————

**WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH, ERIC KOSZYK, JESSE MALEY a/k/a ALEX ANDREWS and THE INTERNET ARCHIVE,**
*Appellants*,

v.

**THE UNITED STATES OF AMERICA AND MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY**
*Appellees*.

———————————————

From an Order by the U.S. District Court for the District of Columbia
The Honorable Richard J. Leon, Judge Presiding (Case No. 1:18-cv-1552-RJL)

———————————————

BRIEF OF COYOTE-RI, BLACK AND PINK MA, THE COMMUNITY UNITED FOR SAFETY AND PROTECTION (CUSP), DECRIM PA, THE EROTIC SERVICE PROVIDERS LEGAL, EDUCATION AND RESEARCH PROJECT, HELP INDIVIDUAL PROSTITUTES SURVIVE (HIPS), INTERNATIONAL SEX WORKER FOUNDATION FOR ART, CULTURE, AND EDUCATION, THE ISHTAR COLLECTIVE, THE NATIONAL COUNCIL FOR INCARCERATED AND FORMERLY INCARCERATED WOMEN AND GIRLS, THE SEX WORKERS OUTREACH PROJECT (SWOP) BEHIND BARS, SWOP-SACRAMENTO, SWOP-TUCSON, and VALUED EXISTENCE OF NORTHEASTERN AND UBIQUITOUS SEX WORKERS IN SUPPORT OF APPELLANTS

———————————————

Catherine Sevcenko
National Council for Incarcerated &
Formerly Incarcerated Women and Girls
300 New Jersey Ave, NW #900
Washington DC 20001
Email: csevcenko@thecouncil.us
Phone: 617-299-2604 x703
*Attorney for Amici Curiae*

**CERTIFICATES AS TO PARTIES, RULINGS, RELATED CASES, CORPORATE DISCLOSURE, AUTHORITY TO FILE, AUTHORSHIP, AND FINANCIAL CONTRIBUTION**

Under Circuit Rule 28(a)(1), *amici curiae* COYOTE-RI, Black and Pink MA, The Community United for Safety and Protection (CUSP), DeCrim PA, The Erotic Service Providers Legal, Education and Research Project, Help Individual Prostitutes Survive (HIPS), International Sex Worker Foundation for Art, Culture, and Education, The Ishtar Collective, The National Council for Incarcerated and Formerly Incarcerated Women and Girls, The Sex Workers Outreach Project (SWOP) Behind Bars, SWOP-Sacramento, SWOP-Tucson and Valued Existence of Northeastern and Ubiquitous Sex Workers (VENUS) certify the following:

**Parties and *Amici***: Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley, a/k/a Alex Andrews, and The Internet Archive, Plaintiffs below, Appellants here, filed suit challenging the constitutionality of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA"), naming as Defendants, the Appellees here, the United States, and the Attorney General of the United States in his official capacity, currently Merrick Garland. The *amici* here anticipate that five other *amicus curiae* briefs will be filed, as noted in the Appellants' opening brief.

**Ruling Under Review**: The ruling under review is *Woodhull Freedom Found. v. United States*, No. CV 18-1552 (RJL), 2022 WL 910600, (D.D.C. Mar.

i

29, 2022) and its accompanying Order, by which the District Court granted summary judgment to the Appellees, dismissing Appellants' challenge to the constitutionality of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ("FOSTA").

**Related Cases**: There are no related cases.

**Corporate Disclosure Statement**: *Amici* represent that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation. Fed. R. App. P. 26.1

**Statutes and Regulations:** Applicable statutes are contained in the Brief for Appellants.

**Source of Authority to File**: *Amici* submit that both Appellants and Appellees have consented to the filing of this *amicus* brief and thus it is permitted under Fed. R. App. P. 29(a)(2).

**Authorship:** No party's counsel wrote any part of this brief.

**Need for Separate Briefs**: A single joint *amicus* brief is not practicable in this case because the other planned submissions do not address the unique perspectives of the COYOTE-RI and its affiliated organizations. COYOTE-RI and joining *amici* monitor the welfare of people in the sex industry and advocate for the acceptance of sex work as an occupation. They have direct experience with the negative impact of FOSTA on the well-being of sex workers and their families.

COYOTE-RI conducted a survey in July – August 2022 to pinpoint the effects of FOSTA on this community. The *amicus* brief led by Decriminalize Sex Work focuses on FOSTA's context, including the history of sex work regulation. It emphasizes the devastating conflation of sex trafficking with other forms of sex work, many of which are legal. Covering these perspectives in one brief would have been impossible due to word count limits, as COYOTE-RI's brief rests on survey results and DSW's submission rests on declarations of experts providing narrative accounts of FOSTA's impact. Both approaches are needed to give the Court a full understanding of FOSTA's impact on First Amendment rights. Other submissions focus on First Amendment issues.

**Financial Contributions**: No party or party's counsel paid any sum to prepare or submit this brief. *Amici* paid for the brief's preparation and submission.

# TABLE OF CONTENTS

**CERTIFICATES AS TO PARTIES, RULINGS, RELATED CASES, CORPORATE DISCLOSURE, AUTHORITY TO FILE, AUTHORSHIP, AND FINANCIAL CONTRIBUTION** ..................................................... i

**TABLE OF CONTENTS** ........................................................... iv

**TABLE OF AUTHORITIES** ..................................................... v

**INTEREST OF *AMICI*** ........................................................... 1

**SUMMARY OF THE ARGUMENT** ..................................... 5

**ARGUMENT** ........................................................................... 6

   I.   FOSTA HAS CAUSED SIGNIFICANT HARM WHILE MAKING SEX TRAFFICKING HARDER TO CONTROL, AS DEMONSTRATED BY A COMPREHENSIVE INDUSTRY SURVEY ........................................ 6

      A.   *FOSTA Has Made Sex Trafficking More Prevalent and Harder To Combat* ................................................................. 7

         1.   Sex workers are harmed by not being able to communicate with clients ................................................................. 8

         2.   Sex workers are harmed by not being able to screen clients .............. 10

         3.   Those who were trafficked suffer more ............................................ 12

         4.   FOSTA impedes law enforcement ..................................................... 14

   II.   FOSTA'S OVERBROAD LANGUAGE HAS HAD A CHILLING EFFECT ON THE FIRST AMENDMENT RIGHTS OF SEX WORKERS ...... 15

      A.   *FOSTA Is Overbroad Because It Has Stopped Online Discourse Protected by the First Amendment* ................................................. 16

      B.   *FOSTA has made it difficult for sex workers to exchange important information about health and safety* ............................................. 18

      C.   *FOSTA Chills Expression at the Core of the First Amendment* ............. 20

      D.   *FOSTA Impedes Freedom of Association* ................................................ 22

   III.   FOSTA IS VOID FOR VAGUENESS BECAUSE IT DOES NOT GIVE CLEAR NOTICE OF PROHIBITED BEHAVIOR ......................................................... 23

**CONCLUSION** ..................................................................... 26

**CERTIFICATE OF COMPLIANCE** ............................... 27

**CERTIFICATE OF SERVICE** ......................................... 28

iv

# TABLE OF AUTHORITIES

**Cases**

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) ........................................................ 16

*City of Chicago v. Morales*, 527 U.S. 41 (1999) .................................................... 26

*Dombrowski v. Pfister*, 380 U. S. 479 (1965) .................................................. 27, 28

*Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543 (11th Cir. 1997) ................... 23

*Gooding v. Wilson*, 405 U.S. 518 (1974) ............................................................... 25

*Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967) ............................................... 25

*Lanzetta* v. *New Jersey,* 306 U. S. 451  (1939) .................................................... 27

*NAACP v. Button*, 371 U.S. 415 (1963) ................................................................ 26

*Reno v. ACLU*, 521 U.S. 844 (1997) ...................................................................... 25

*Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004) .............. 23

*United States v. Stevens*, 559 U.S. 460 (2010) ...................................................... 18

*Virginia v. Hicks*, 539 U.S. 113 (2003) ................................................................. 17

*Woodhull Freedom Found. v. United States*, No. CV 18-1552 (RJL), 2022 WL
    910600, (D.D.C. Mar. 29, 2022) ................................ ii, 16, 18, 19, 20, 21, 22, 26

**Statutes**

22 U.S.C. § 7102(9) .................................................................................................. 9

Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No.
    115-164, 132 Stat. 1253 (2018) ...................................................... i, ii, 6

**Other Authorities**

COYOTE-RI, *Four Years of FOSTA: The Survey,* (Sept. 12, 2022) ...................... 7

Government Accountability Office, *Sex Trafficking—Online Platforms and Federal Prosecutions*, GAO-21-385 (June 2021) ............................................ 15

LaLa B Holston-Zannell, *Paypal and Venmo are Shutting Out Sex Workers Putting Lives and Livelihoods at Risk*, ACLU (June 23, 2021) ...................................... 20

Liz Tung, *FOSTA-SESTA was supposed to thwart sex trafficking. Instead, it's sparked a movement*, thepulse (July 10, 2020).................................................. 10

Lura Chamberlain, *FOSTA: A Hostile Law with a Human Cost*, 87 Fordham L. Rev. 2171, 2204 (2019) ...................................................................... 9

Quinta Jurecic, *The politics of Section 230 reform: Learning from FOSTA's mistakes*, The Brookings Institution (Mar. 1, 2022)........................................... 18

*Senators Introduce Bipartisan Legislation to Hold Backpage Accountable, Ensure Justice for Victims of Sex Trafficking*, Rob Portman United States Senator for Ohio (August 1, 2017)......................................................................... 7

Tom Porter, *Backpage Website Shut Down, Founder Charged with 93 Counts by FBI in Sealed Indictment*, Newsweek (Apr. 7, 2018)........................................... 8

## INTEREST OF *AMICI*

**Call Off Your Old Tired Ethics of Rhode Island ("COYOTE-RI")** is a grassroots community organization that represents the interests of current and former sex workers, sex trafficking survivors, and allies. It advocates for policies that promote the health and safety of people involved in the sex industry: escorts, dancers, online content providers, and webcam models. The organization provides sex workers and sex trafficking survivors in crisis with mutual aid, including temporary housing and assistance in reporting violent crimes, such as sex trafficking, to the police. COYOTE-RI vehemently opposes all forms of human trafficking and forced labor. FOSTA has profoundly affected COYOTE-RI's members, resulting in increased vulnerability to violence, lower incomes, chilled speech. FOSTA has made it difficult for sex workers to alert each other about abusive and dangerous clients. Its members also fear to advocate for decriminalization of sex work.

**Black and Pink MA** is a non-profit organization that supports LGBTQ+ people and people living with HIV who are impacted by the criminal legal system. Many Black and Pink members are current or former sex workers and sex workers are disproportionately LGBTQ+ and living with HIV. Laws that criminalize sex work make that community, and the public, less free and less safe. FOSTA has an immediate chilling effect on the organization's ability to publish harm reduction resources related to sex work online and to advocate for policy change.

1

**The Community United for Safety and Protection (CUSP)** is a group of current and former sex workers, sex trafficking survivors, and allies working to protect people in Alaska's sex industry. The censorship resulting from the new liability created by FOSTA has greatly increased sex trafficking, exploitation, assault, and homelessness for members of CUSP's community.

**Decrim PA** is a grassroots organization of current and former sex workers who support each other through legislation and mutual aid. FOSTA has taken the lives of several Decrim PA's members and increased violence in its community. It has also caused online safe spaces to be shut down, making it a struggle for members survive.

**The Erotic Service Providers Legal, Education and Research Project (ESPLERP)** is a diverse community-based erotic service provider led group which seeks to empower the erotic community and advance sexual privacy rights through legal advocacy, education, and research. FOSTA has negatively affected the group's work by chilling speech and curtailing privacy rights.

**Helping Individual Prostitutes Survive (HIPS)** works to advance the health rights and dignity of people and communities impacted by sex work and drug use. It provides non-judgmental harm reduction services, advocacy, and community engagement led by those with lived experience. Since the passage of FOSTA, HIPS has seen a significant increase in violence against marginalized sex workers,

2

especially Black/Brown transgender sex workers. HIPS has also witnessed the economic hardships imposed by FOSTA significantly worsen during the COVID pandemic, including increased demand for food, financial assistance, and mutual aid.

**International Sex Worker Foundation for Art, Culture, and Education (ISWFACE)** is dedicated to the collection, display, and preservation of the art, culture, and information by and about sex workers, past and present, from around the world. It supports the artistic growth of current, ex and transitioning sex workers, and stimulates academic research. ISWFACE opposes FOSTA because it undermines sex workers' self-determination and ability to support themselves as they see fit.

**The Ishtar Collective** is a nonprofit organization in Vermont comprised of sex workers and survivors of labor exploitation and violence who engage in direct services, education, and policy advocacy. Ishtar members have suffered many ill-effects from FOSTS: lost income, food and housing instability, discrimination in banking and loss of PayPal, and closure of social media accounts. Advocates for decriminalization have been accused of perpetuating trafficking narratives because of FOSTA's conflation of human trafficking and prostitution.

**The National Council for Incarcerated and Formerly Incarcerated Women and Girls** is a non-profit organization committed to ending the incarceration of women and girls. The National Council advocates for decriminalizing sex work. Its members are negatively affected by FOSTA's chilling effect on speech, which impedes the organization's efforts to advocate for change to end mass incarceration and over-policing of poor and minority communities.

**The Sex Workers Outreach Project (SWOP) Behind Bars** is a national grassroots social justice network dedicated to the fundamental human rights of sex workers, victims of trafficking and their communities, with a focus on those currently incarcerated and seeking re-entry. FOSTA has made its clients more vulnerable to exploitation, violence, and poverty. The law has impeded SWOP Behind Bar's ability to provide emergency assistance and general harm reduction services.

**The Sex Workers Outreach Project (SWOP) Sacramento** is a nonprofit dedicated to upholding the human, civil, and labor rights of sex workers, survival sex workers, and trafficking victims. Since the passage of FOSTA, SWOP Sacramento has seen a large increase in trafficking, rape, battery, and other forms of violence that have been catastrophic for the organization's most marginalized members.

4

**The Sex Workers Outreach Project (SWOP) Tucson** is a coalition of current and former sex workers, trafficking survivors, many of whom are BIPOC and LGBTQ+, and allies. It works to support, protect, and uplift community members. FOSTA has created unprecedented hardship for the most marginalized members of the community and undermines their ability to survive economically and to work safely. SWOP members have experienced enormous violence, exploitation, and loss of basic human rights since this legislation passed.

**Valued Existence of Northeastern and Ubiquitous Sex Workers (VENUS)** is a sex worker mutual aid group run for and by sex workers in New England. Venus members have experienced violence, harassment, erasure, trafficking, and serious mental and physical harm as a result of FOSTA.

## SUMMARY OF THE ARGUMENT

FOSTA has had a profound chilling effect on the First Amendment rights of sex workers, as demonstrated by a recent survey of over 200 sex workers who were in the industry before FOSTA was passed and are still practicing after four years under the FOSTA regime. Although FOSTA imposes liability on internet providers for hosting content that "promotes or facilitates sex trafficking," the effect has been to stifle the speech of sex workers both online and in the real world. Sex workers self-censor in very high numbers, believing that FOSTA reaches any speech favorable to sex work. The survey demonstrates that sex workers are afraid of

5

attending in-person conferences or sharing information about abusive clients for fear of running afoul of FOSTA. Given the marginalization of sex workers in society at large, it is not surprising that they are risk-adverse and assume that any enforcement will be directed toward them. Nor are they incorrect. Internet providers will shut down individual accounts for any discussion of sex work, not distinguishing between general commentary and a specific sex for hire "transaction." Reality contradicts the District Court's confidence that such a differentiation can be easily made. Sex work encompasses a wide range of activities, e.g. escorts, strippers, webcam models, phone sex providers, and porn performers. The results of the survey leave no doubt that FOSTA's overbroad and vague language have done serious damage to the First Amendment rights of all these people, a large segment of the population engaged in legal activity.

## ARGUMENT

## I.  FOSTA HAS CAUSED SIGNIFICANT HARM WHILE MAKING SEX TRAFFICKING HARDER TO CONTROL, AS DEMONSTRATED BY A COMPREHENSIVE INDUSTRY SURVEY

Senator Rob Portman (R-Ohio) introduced the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA") by declaring that "the trafficking of young girls and women is an unconscionable crime," and that should be stopped.[1] Pub. L. No. 115-164, 132 Stat. 1253 (2018). A recent survey shows,

---

[1] *Senators Introduce Bipartisan Legislation to Hold Backpage Accountable, Ensure Justice for Victims of Sex Trafficking*, Rob Portman United States Senator for Ohio

however, that FOSTA has had the opposite effect. In July 2022, COYOTE-RI distributed a survey to sex workers, including sex trafficking survivors, to assess the effects of FOSTA on this community, following up on the survey that the group did immediately after FOSTA passed.[2] Participants were limited to those who had worked before and after FOSTA's enactment, as verified by a qualifying question.[3] In total, 260 were qualified and their responses are included in the analysis that follows.[4] For some questions, the answers of those who self-identified as victims of sex trafficking are broken out to highlight the extent to which FOSTA is harming those whom it was intended to help.[5]

### A.    FOSTA Has Made Sex Trafficking More Prevalent and Harder To Combat

---

(August 1, 2017). https://www.portman.senate.gov/newsroom/press-releases/senators-introduce-bipartisan-legislation-hold-backpage-accountable-ensure

[2] COYOTE-RI, *Four Years of FOSTA: The Survey,* (Sept. 12, 2022) https://coyoteri.org/wp/wp-content/uploads/2022/09/FourYearsOfFosta.pdf includes the findings of the full survey. The questions and quotations relied upon in this brief are included in the Appendix. The original 2018 survey is available at www.antitraffickingreview.org/index.php/atrjournal/article/view/385/327.

[3] Qualifying question: "Did you work in the adult industry as an in-person sex worker before FOSTA, in the six months after FOSTA, and this year?" The questions were beta tested on a small sample before being distributed starting on July 11, 2022; it closed on August 21, 2022. The organizers solicited survey participants by posting on social media and emailing and tweeting escorts.

[4] Results and percentages reported below are calculated on a per question basis to account for participants that skipped questions.

[5] For the purposes of the survey, victims of sex trafficking are defined as those who entered the sex industry as minors or because of force, fraud, or coercion.

*1. Sex workers are harmed by not being able to communicate with clients*

FOSTA promised to reduce sex trafficking by imposing criminal liability on internet operators who allowed content on their sites that "promoted" or "facilitated" sex trafficking. Its passage led to the removal of online sex work advertising sites, most notably Backpage.com. It was the most affordable advertising website for sex workers and the FBI seized it on April 6, 2018.[6] Denying direct access to potential customers has had significant repercussions. The internet revolutionized sex work, allowing sex workers to screen clients and negotiate terms from the safety of their computer. During the 8 years (2002-2010) when Craigslist's erotic-services site was active, the female homicide rate fell by seventeen percent.[7]

The broad language in FOSTA that has been imposed on sex workers of all types has had a devastating effect on the well-being of people engaged in legal activities, as well as prostitution. Sex workers include cam models, strippers, exotic dancers, phone sex providers, pornography performers, fetish providers, and online

---

[6] FBI Notice, *Backpage.com and affiliated websites have been seized*, http://backpage.com/ (last visited Aug. 30, 2022); Tom Porter, *Backpage Website Shut Down, Founder Charged with 93 Counts by FBI in Sealed Indictment*, Newsweek (Apr. 7, 2018), https://www.newsweek.com/sex-ads-website-backpagecom-co-founder-charged-after-fbi-raid-876333 (last visited Aug. 30, 2022)

[7] Lura Chamberlain, *FOSTA: A Hostile Law with a Human Cost*, 87 Fordham L. Rev. 2171, 2204 (2019). Available at: https://ir.lawnet.fordham.edu/flr/vol87/iss5/13 (last visited Sept. 8, 2022)

content providers. These activities are legal and have no relation to sex trafficking, which the Department of Justice defines as "a commercial sex act [that] is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age[.]"[8] The majority of people who engage in prostitution are consenting adults who have decided to earn money in this manner. Although most states do not allow prostitution, one state and many countries do, and there is a robust debate on the benefits of decriminalizing prostitution.

A small subset of sex workers are also victims of sex trafficking. All *amici* are committed to making that number zero, but FOSTA is counterproductive to achieving that goal. Every kind of sex worker, including trafficking survivors, have been impacted by FOSTA precisely because its broad terms fail to distinguish between different types of sex work and trafficking.[9]

FOSTA has been particularly hard on consensual adult sex workers providing sexual encounters for compensation. Unable to advertise, they have lost income, with more than 70% in a 2020 survey reporting that FOSTA has negatively affected their financial stability,[10] leading to greater reliance on public assistance. In the

---

[8] Department of Justice, Human Trafficking Defined, www. Justice.gov/human trafficking (citing 22 U.S.C. § 7102(9)).

[9] For a more robust discussion of the harms caused by conflating sex work and sex trafficking, see Decriminalize Sex Work's Brief, Section I.

[10] Liz Tung, *FOSTA-SESTA was supposed to thwart sex trafficking. Instead, it's sparked a movement*, thepulse (July 10, 2020), https://whyy.org/segments/fosta-sesta-was-supposed-to-thwart-sex-trafficking-instead-its-sparked-a-movement/

COYOTE-RI survey, conducted within the last months, 32% of respondents (N=215) applied for and received new public assistance such as food stamps or housing assistance after FOSTA resulted in a drop in their income; a further 17% applied for aid but were turned down. (*App.* at A11)[11]. Post-FOSTA, sex workers are also more vulnerable to pimps and traffickers who can provide an established clientele, alternative advertising strategies, or housing. Sex workers are exposed to violence and exploitation because they cannot not reach potential customers directly to negotiate encounters that are fair and safe. Forty-five percent of participants (N=209) reported an increase in recruitment by pimps. (*App.* at A2). Some have had to work the streets which is much more dangerous. In addition, 55% (N=231) reported feeling pressured to agree to acts with which they were not comfortable (*App.* at A3), and 42% began offering services they were not comfortable with (N=237) after FOSTA (*App.* at A4) because they needed the income and had no ready way to find different clients.

### 2. *Sex workers are harmed by not being able to screen clients*

The data in the COYOTE-RI survey show that, rather than stopping sex trafficking, FOSTA has made sex work more dangerous by curtailing the ability to screen clients on trusted online databases, also known as blacklists. These databases

---

[11] *App.* refers to Appendix which contains summary statistics for all survey questions used in this brief.

warn sex workers about "unconscionable customers," namely the "fakers, deadbeats, time wasters, cheaters who pay for the meeting with false money, the robbers, perverts and other persons who may cause you moral, material or physical harm."[12] Before FOSTA, 82% of the respondents used blacklists (N=219); immediately after FOSTA was passed, that number dropped to 62% (N=220). (*App.* at A5). Twenty-nine percent say that they currently do not use any blacklists (N=221). (*App.* at A6). Before FOSTA, 69% used more than two blacklists (N=219) (*App.* at A5); that number is now 44% (N=221) (*App.* at A6). As one respondent put it: "FOSTA made safety screening impossible and illegal. It's terrifying how lawmakers don't care about our safety even though the effects of FOSTA were clearly predicted by those in the industry." (*App.* at A3).

Survey participants attribute the increase in violence to advertising sites and blacklists going dark because of FOSTA. Sex workers use blacklists to report bad clients and predators posing as clients. By checking a potential client's phone number, a sex worker could learn that the person trying to book with them had threatened, assaulted, robbed, stalked, or been inappropriate with another sex worker. A blacklist could also reveal that a prospective client is actually a pimp trying to gain access to a sex worker to rob, or even kidnap, them. Seventy-nine percent of survey participants (N=222) report that FOSTA prevented them from

---

[12] https://www.checkpunter.com/en (last visited Sept. 9, 2022).

using screening procedures that made them feel safe. (*App.* at A6). One survey participant summarized by explaining, "my access to blacklists disappeared so a lot of predators got a fresh slate." (*App.* at A3). Blacklists also identified people with a past of inflicting violence sex workers, something that is likely to go unreported elsewhere because victims are generally reluctant to report crimes to the police. One of FOSTA's main consequences is to make sex workers more vulnerable to violence, exploitation, and trafficking.

The inability to screen clients has had serious repercussions. Forty percent (N=223) experienced increased physical or sexual violence (including stealth condom removal) from clients or those posing as clients. (*App.* at A3). Because they are not able to screen with the same thoroughness as before, survey participants reported getting robbed, beaten, raped, and engaging in risky behavior in order to make money post-FOSTA.

### 3. Those who were trafficked suffer more

The survey provides compelling evidence that FOSTA has harmed those it was intended to help. Overall, 40% of respondents (N=220) reported an *increase* in force, fraud, and coercion within the industry – the definition of sex trafficking – after FOSTA went into effect. (*App.* at A2). That percentage rose to 59% (N=70) among

those who said they had been trafficked.[13] (*App.* at A1-A2). Traffickers typically target vulnerable people with multiple intersecting marginalized identities, the same people who are at high risk of being victims of violence and who often fall through social safety nets. Forty-six percent of the trafficking survivors (N=70) reported an increase in recruitment by pimps after FOSTA. (*App.* at A1-A2). Trafficking survivors were also more likely to be offered housing by a pimp or someone exploiting them for free sex when they became homeless or unstably housed (26%, N=70, for trafficking survivors vs. 12%, N=186, for non-trafficked individuals). (*App.* at A1, A11). Fifty-four percent (N=24) of those who entered the industry as minors reported more abuse after FOSTA went into effect. (*App.* at A1, A3). Over a quarter (26%, N=23) of those that entered the industry as minors turned to street-

---

[13] For the purposes of this survey trafficked individuals were defined as those that answered question 16 "It is important for policy makers to understand how policy affects people who have been victimized within the sex industry or worked as minors. This question does not refer to abuse by clients or those posing as clients. Please check ALL statements that are true for you:" with a checkmark in one or more of the following responses:

- I was forced, coerced, or threatened into entering the industry.
- I was tricked or manipulated into the industry.
- I entered the industry as a minor.
- I have been a victim of force, coercion, or threats within the industry by someone who profited from my work.
- Someone who profited from my work has used lies to make me work more, or less, or in a different way than I preferred.

Statistics for those that had affirmed that they were trafficked (N=70) were calculated based on the answers of only those in this subgroup for subsequent questions.

based work after FOSTA compared to only 10% of the larger group of survey
participants (N=198). (*App.* at A1, A4).

### 4. *FOSTA impedes law enforcement*

Although FOSTA creates liability for internet operators, sex workers interpret
it as evidence of increasing hostility towards them by the federal government and
law enforcement community. Seventy percent (N=220) said they were less likely to
report an assault to police (*App.* at A9), with one explaining, "I no longer have as
much info on who I see or ability to give contact points. The cops won't care, and it
will open me to targets." (*App.* at A10). Fifty percent of participants (N=214) said
that they were less likely to report to police if a client brought child pornography to
a session. (*App*. at A10). Participants left comments like, "I'm so sorry, really wish
it were different and I would find a way to do something but walking into the police
department myself wouldn't be it!" (*App.* at A10). It is crucial for public safety that
sex workers be encouraged to report crimes and not punished for doing so. After
FOSTA, the sex worker community is not sharing valuable information that could
enhance public safety.

In addition, law enforcement lost the ability to stop individual sex traffickers
because US-based sites shut down, leading traffickers to advertise on foreign sites
that are beyond the subpoena power of American courts. A GAO study reported that
"gathering tips and evidence to investigate and prosecute those who control or use

14

online platforms has become more difficult due to the relocation of platforms overseas . . . ."[14] Similarly, sex workers report having had a much more difficult time having their reports of crime investigated fully because law enforcement is unable to subpoena information from websites hosted overseas.

## II.    FOSTA'S OVERBROAD LANGUAGE HAS HAD A CHILLING EFFECT ON THE FIRST AMENDMENT RIGHTS OF SEX WORKERS

COYOTE-RI's survey shows that the District Court incorrectly concluded that "FOSTA's 'plainly legitimate sweep'—the range of its hypothetical applications covering only unprotected activity—comprises all, or at worst the vast majority, of potential applications of the statute." *Woodhull Freedom Found. v. United States*, No. CV 18-1552 (RJL), 2022 WL 910600, at *5 (D.D.C. Mar. 29, 2022). The overbreadth doctrine allows courts to strike down statutes that inhibit the exercise of First Amendment rights if the law stifles protected speech in a substantial way when "judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973). FOSTA has stifled a wide range of First Amendment activity, including client screening, exchange of information about safety practices among sex workers, advocacy for decriminalization of sex work, and association among those in the industry.

---

[14] Government Accountability Office, *Sex Trafficking—Online Platforms and Federal Prosecutions*, GAO-21-385, at 20-21 (June 2021), https://www.gao.gov/assets/gao-21-385.pdf (last visited Sept. 12, 2022).

15

A.    **FOSTA Is Overbroad Because It Has Stopped Online Discourse Protected by the First Amendment**

FOSTA has chilled a wide range of protected speech because internet providers have assumed that "facilitate" and "promote" have their dictionary definitions. The Merriam-Webster dictionary defines promote as "to help bring (something, such as an enterprise) into being" and facilitate as "to make easier: help bring about."[15] These definitions would lead any prudent internet provider to conclude that FOSTA essentially prohibits any online speech that could conceivably be tied to sex work. Accordingly, internet operators have taken down entire sites and suspended individual accounts that provided a wide range of general information about sex work.

The behavior of the ISPs demonstrates FOSTA's flaws under the First Amendment. A law is overbroad if threat of enforcement deters protected speech, "especially when an overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). For instance, Adultwork.com suspended members' accounts based on the "legal advice" to end all advertisements "regardless of what services are actually being advertised." (*App*. at A14). Craigslist explained its decision to take down all personal ads on the grounds that it could not risk "jeopardizing all our other services" because online ads could be "misused." (*App*.

---

[15] Merriam-Webster Dictionary, https://www.merriam-webster.com/ (accessed Sept. 13, 2022)

at A13). Pounced.org was blunt in its take-down notice: "If you read FOSTA carefully the bill says "or facilitate" – the problem is that "or facilitate is ill-defined."[16] (*App.* at A15).

The District Court found the dictionary meanings of "promote" and "facilitate" were not applicable, construing them instead as legal terms of art. Relying on Judge Katsas's concurrence, the District Court determined that promote could mean "pander" or that the phrase "promote and facilitate" is synonymous with "aid and abet." *Woodhull*, 2022 WL 910600, at *6. This interpretation has not gained traction among lawyers who counsel internet providers, who rather advise their clients to sacrifice the protected speech of sex workers to avoid legal problems.

FOSTA is similar to the anti-animal cruelty statute that the Supreme Court held was unconstitutionally overbroad because it also penalized depictions of any animal death, including hunting videos, that were protected by the First Amendment. *United States v. Stevens*, 559 U.S. 460 (2010). Similarly, consensual adult sex workers cannot advocate for decriminalization of their trade or exchange safety information because FOSTA's broad language has deterred internet providers from hosting online forums for sex workers regardless of the topic. Instead, they shy away

---

[16] *See also*, Quinta Jurecic, *The politics of Section 230 reform: Learning from FOSTA's mistakes*, The Brookings Institution (Mar. 1, 2022), https://www.brookings.edu/research/the-politics-of-section-230-reform-learning-from-fostas-mistakes/

from potential liability by shutting down any speech conceivably related to sex work. As the District Court recognized, it is "not a crime" to promote sex work "as a general matter." *Woodhull*, 2202 WL 910600, at *6. Just as the majority of sex work is legal, the majority of speech related to sex work is protected by the First Amendment. But internet providers are not willing to risk being liable under FOSTA, so they err on the side of caution and censor protected speech. Four years of the FOSTA regime have shown that the District Court erred in finding that "FOSTA's scope is limited to legitimately criminal activity." *Woodhull,* 2202 WL 910600, at *6.

### B.    FOSTA has made it difficult for sex workers to exchange important information about health and safety

FOSTA has made it much more difficult for sex workers to exchange information online about dangerous practices or abusive clients, speech that is not only protected but potentially lifesaving. Blacklist sites that sex workers use to warn each other of predators quickly shut down after FOSTA went into effect. These drastic actions had a ripple effect on sex workers' personal expression, leading to the belief that virtually any communication falls into the prohibited territory of "facilitation." Fifty-eight percent of respondents (N=219) noted FOSTA stopped them from participating in online forums. (*App.* at A7). Nor is that an overreaction. Several respondents described negative consequences due to their online identity: "I used to share helpful information about sex work and sex worker issues before

18

FOSTA. Doing so after FOSTA resulted in social media accounts being disabled and shadow banned." (*App*. at A7). Another comment explained "Just talking about sex work can get you suspended from social media, financial institutions like PayPal or Bank of America can close your account, landlords can put you on the street."[17] (*App.* at A8).

The reaction of internet providers has led to the belief that FOSTA is an all-encompassing ban on anything to do with sex work. It has severed the connection to individual instances of prostitution – "transactions" – which the District Court found saved FOSTA from constitutional weakness. The District Court is alone in its judgment that "FOSTA contains textual indications that make it quite clear that the Act targets the promotion and facilitation only of specific instances of prostitution." *Woodhull,* 2202 WL 910600, at *6. In reality, 42% of survey respondents (N=219) said they are less likely to respond to new sex workers who ask them for safety information. (*App.* at A9). One commented that "the law can prosecute under FOSTA/SESTA for helping other full service sex workers." (*App.* at A9). Another explained "I cannot help other sex workers or do outreach publicly without the danger of being labeled a pimp." (*App.* at A8). One even removed the friends page

---

[17] *See also* LaLa B Holston-Zannell, *Paypal and Venmo are Shutting Out Sex Workers, Putting Lives and Livelihoods at Risk*, ACLU (June 23, 2021), https://www.aclu.org/news/lgbtq-rights/paypal-and-venmo-are-shutting-out-sex-workers-putting-lives-and-livelihoods-at-risk

on her website profiling colleagues because "It could be perceived as (now felony-level) trafficking." (*App.* at A12).

After FOSTA, sex workers cannot reliably warn each other about hotels where it is dangerous to work, or how to avoid hazards such as clients who want sex workers to do drugs with them, drugs that are laced with fentanyl, clients who overdose and require lifesaving assistance, clients who stealthily try to remove the condom, strategies for evaluating the safety of prospective clients, and practices that prevent the spread of infections. One survey participant described the importance of sticking together, attributing her vulnerability to an abusive pimp to being "new and isolated." (*App.* at A2). FOSTA precludes exchange of critical safety information that is not tied to any particular transaction and is anything but "tailored toward specific instances of illegal prostitution." *Woodhull*, 2022 WL 910600, at *6.

### C.     FOSTA Chills Expression at the Core of the First Amendment

There is ample evidence that the district court erred in concluding that FOSTA does not "target advocacy, debate, or discussion[.]" *Woodhull,* 2022 WL 910600, at *6. Respondents noted that the influence of FOSTA expanded beyond conducting sex work into other areas of speech. Seventy-one percent of the survey participants (N=220) said that FOSTA prevented them from organizing with other sex workers for their safety at least to some extent. (*App.* at A7). As one explained "It feels more dangerous to self-identify even in academic or organizer spaces because of what's

20

going on online." (*App*. at A8). Fifty-four percent of participants (N=221) said that post-FOSTA they know fewer of their colleagues. (*App*. at A8). The disappearance of online forums has been detrimental: "Having a connected community keeps us together and safe and we need to connect with like-minded adults because like LGBQ we hold a stigma with people who don't understand our life choices. It can get very lonely." (*App*. at A8).

The ability to advocate for political change is crucial for sex workers. Police and politicians in essence set their work conditions, which will only improve with advocacy for reform. Petitioning the government for redress of grievances is a core First Amendment right. "It is well-established that the First Amendment protects advocacy to violate a law." *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543, 1547 (11th Cir. 1997); *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 89 (1st Cir. 2004) (stating that advocating for marijuana decriminalization "does not remove the ad from the realm of political speech").

There is widespread fear that political speech will run afoul of FOSTA. More than half of the survey participants (58%, N=219) stated that they were scared to self-identify as sex workers when advocating for political change due to FOSTA. (*App.* at A7). Thirty-two percent (N=219) would not publish their views in a letter to the editor, article, or essay because of FOSTA. (*App.* at A7). As one person explained, "I used to be a lot more outspoken about sex worker's rights online, but

21

ever since FOSTA, I've been wary about referencing the work so explicitly. I tiptoe around topics I would much prefer to just speak openly about." (*App.* at A12). The District Court's conclusion that FOSTA cannot "possibly prohibit any . . . protected speech" is simply wishful thinking.

### D.    FOSTA Impedes Freedom of Association

FOSTA has chilled First Amendment rights in the real world, not just online, having a detrimental effect on sex workers' right to association. Organizing and peer support are critical to maintaining safety and mental health for sex workers. Seventy-one percent of respondents (N=220) noted that FOSTA has made them less likely to organize with other sex workers for activities like outreach events or holding brunches with 12% blaming FOSTA for completely stopping such activities. (*App.* at A7).

FOSTA has caused respondents to cease a number of expressive activities. Before FOSTA, the Desiree Alliance organized a biennial conference "to advocate for human, labor and civil rights for all workers in the sex industry --" all topics well outside of the statute's purview.[18] Cris Sardina, the director of the Desiree Alliance released the following statement in 2019 after the passage of FOSTA, however:

> "It is with great sadness and much consideration that Desiree Alliance announces the cancellation of any future conferences until it is safe for us to do so.  Due to FOSTA/SESTA enactments, our

---

[18] Desiree Alliance, http://desireealliance.org/conference/ (last visited Aug. 16, 2022).

leadership made the decision that we cannot put our attendees and our organization at risk. We hope you understand our grave concerns as we continue to resist every law that exists to harm sex workers! Keep fighting!"

The Desiree Alliance has not held a conference since, fearing that conference organizing, discussion of workshop topics, recruitment of speakers, and conference attendees crossing state lines to attend the conference, would constitute "promoting and facilitating" sex trafficking. Perhaps because of the Desiree Alliance's overabundance of caution, 42% of survey participants (N=219) would not attend a conference because of FOSTA. (*App*. at A7).

The overbreadth doctrine exists to dispel this kind of fear to come together, namely, to prevent this situation in which "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 521 (1974).

## III.   FOSTA IS VOID FOR VAGUENESS BECAUSE IT DOES NOT GIVE CLEAR NOTICE OF PROHIBITED BEHAVIOR

The District Court erred in finding that FOSTA was not vague. As outlined above, FOSTA has chilled a significant amount of protected speech both online and in the real world because sex workers have no clear idea of what the statute prohibits. When statutes are vague, "'the hazard or loss or substantial impairment of those precious [First Amendment] rights may be critical,' since those covered by the

23

statute are bound to limit their behavior to that which is unquestionably safe." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 609 (1967) (quotation omitted). Because FOSTA is a criminal statute, the vagueness inquiry must be rigorous. *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997). The vagueness problem is also acute here because the "The objectionable quality of vagueness and overbreadth [depends] . . . upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *NAACP v. Button*, 371 U.S. 415, 433 (1963).

The District Court interpreted the statute finding that "promote and facilitate" are "not necessarily to be read as coterminous with their dictionary definitions" but rather are code for "aid and abet." *Woodhull*, 2022 WL 910600, at *6. But a criminal law is not valid if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits[.]" *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Several internet providers were very candid when taking down sites, stating that they were not sure what FOSTA prohibited and wanted to err on the side of caution. The operators feared exactly the what the vagueness doctrine is supposed to prevent: arbitrary enforcement that leads to self-censorship.

If the definitions were as narrow as the district court decided they were, then blacklists should be readily available. Publishing lists of abusive clients "facilitate[s]" sex work in a general way by increasing confidence that the

24

consensual adult encounters will be safe. In fact, a blacklist is as likely to prevent acts of prostitution because a sex worker will not to agree to meet a client who is known to be abusive. The disappearance of blacklists stems from the uncertainty about what the words in the statute mean and thus what speech they might reach. This uncertainty renders the statute unconstitutional. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453 (1939). The statute's vagueness has had a demonstrable chilling effect on free speech about sex work. The severity of FOSTA's criminal sanctions have silenced speakers and have prevented the exchange of lawful political views, ideas, and images. *See, e. g., Dombrowski v. Pfister*, 380 U. S. 479, 494 (1965). ("This overly broad statute also creates a 'danger zone' within which protected expression may be inhibited.").

To the contrary, people in the sex industry trying to avoid problems have shied away from fundamental expressive activity at the core of the First Amendment, such as organizing and attending conferences and advocating for decriminalization of sex work. Therefore, the district court's gloss on "promote and facilitate" tying these words to precise legal terms fails as an "apparent construction" that could be a "vehicle for rehabilitating" the statute. *See Dombrowski*, 380 U.S. at 491. Instead FOSTA causes people to "refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression."

25

*Gooding*, 405 U.S. at 521. Or, in plain terms: "everything feels much more precarious than before FOSTA and that is very, very unfortunate. And to think that so many work[er]s are much worse off than me, have died [or] been left homeless or forced to return to street work and be exploited by pimps, directly as a result of FOSTA, is just devastating." (*App*. at A12).

## CONCLUSION

For the reasons listed above, *amici* believe that the Appellants are correct that FOSTA is unconstitutional.

Respectfully submitted,

/s/*Catherine Sevcenko*

Catherine Sevcenko
National Council for Incarcerated &
Formerly Incarcerated Women and Girls
300 New Jersey Ave, NW #900
Washington DC 20001
Email: csevcenko@thecouncil.us
Phone: 617-299-2604 x703
*Attorney for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached brief is proportionally spaced, has a typeface of 14 points or more and contains 6,032 words.

Counsel relies on the computer program used to create this brief for the word count.

Dated: September 13, 2022

Respectfully Submitted,

*/s/Catherine Sevcenko*

Attorney for *Amici Curiae*

27

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 13, 2022

Respectfully Submitted,

/s/*Catherine Sevcenko*

Attorney for *Amici Curiae*

# APPENDIX

## COYOTE Survey questions

**Qualifying question\*:**

**Q2.** Did you work in the adult industry as an in person sex worker before FOSTA, in the six months after FOSTA, and this year?

| Answer Choices | # Responses | Percentage |
|---|---|---|
| **Yes** | 260 | 93.9% |
| **No** | 17 | 6.1% |
| | | |
| **Total respondents (N)** | 277 | |
| **Skipped** | 54 | |

\* Only those that answered "Yes" to this question (N=260) were included in subsequent analyses.

**Survey questions and responses used in the brief:**

**Q16.** It is important for policy makers to understand how policy affects people who have been victimized within the sex industry or worked as minors. This question does not refer to abuse by clients or those posing as clients. Please check ALL statements that are true for you:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| **I entered the industry willingly.** | 239 | 93.4% |
| **I have worked independently without being victimized.** | 199 | 77.7% |
| **I have worked with others without being victimized.** | 173 | 67.6% |
| **I was forced, coerced, or threatened into entering the industry.** | 6 | 2.3% |
| **I was tricked or manipulated into the industry.** | 12 | 4.7% |
| **I entered the industry as a minor.** | 24 | 9.4% |
| **I have been a victim of force, coercion, or threats within the industry by someone who profited from my work.** | 36 | 14.1% |
| **Someone who profited from my work has used lies to make me work more, or less, or in a different way than I preferred.** | 43 | 16.8% |
| | | |
| **Total respondents (N)** | 256 | |
| **Skipped** | 4 | |

A1

**Q18.** After FOSTA, were you a victim of force, coercion, or threats within the industry by people who profited from your labor or attempted to profit from your labor:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Less than before FOSTA | 18 | 8.2% |
| The same as before FOSTA | 113 | 51.4% |
| Slightly more than before FOSTA | 34 | 15.5% |
| More than before FOSTA | 37 | 16.8% |
| A lot more than before FOSTA | 18 | 8.2% |
| Details if you would like to provide them: | 52 | |
| | | |
| Total respondents (N) | 220 | |
| Skipped | 40 | |

Details if you would like to provide them – responses cited in brief:

- I was the victim of a pimp in my first year of sex work. There was no correlation with FOSTA. The only factor in my vulnerability to this kind of abuse was that I was new and isolated. Since getting out of that situation I have been able to find community & safety in the industry. I would not consider myself in danger of experiencing anything like that again.

**Q21.** As a result of FOSTA, were you recruited by pimps:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Less than before | 18 | 8.6% |
| The same as before | 97 | 46.4% |
| Slightly more than before | 32 | 15.3% |
| More than before | 23 | 11.0% |
| Much more than before | 39 | 18.7% |
| Other (please specify) | 61 | |
| | | |
| Total respondents (N) | 209 | |
| Skipped | 51 | |

A2

**Q23.** Since FOSTA, have you experienced physical or sexual violence (including stealth condom removal) from clients or those posing as clients:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Less than before | 18 | 8.1% |
| The same as before | 116 | 52.0% |
| Slightly more than before | 33 | 14.8% |
| More than before | 30 | 13.5% |
| Much more than before | 26 | 11.7% |
| Please provide details if you would like: | 34 | |
| | | |
| Total respondents (N) | 223 | |
| Skipped | 37 | |

Please provide details if you would like – responses cited in brief:

- FOSTA made safety screening impossible and illegal. It's terrifying how lawmakers don't care about our safety even though the effects of FOSTA were clearly predicted by those in the industry
- My access to blacklists disappeared so a lot of predators got a fresh slate.

**Q25.** After FOSTA, did you feel pressured by clients who you met in person to provide services that were outside of your boundaries:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Less than before | 10 | 4.3% |
| The same as before | 93 | 40.3% |
| Slightly more than before | 45 | 19.5% |
| More than before | 43 | 18.6% |
| Much more than before | 40 | 17.3% |
| Details, if you would like to provide them: | 31 | |
| | | |
| Total respondents (N) | 231 | |
| Skipped | 29 | |

A3

**Q26.** As a result of FOSTA did you: (Please check all that apply)

| Answer Choices | # Responses | Percentage |
|---|---|---|
| **Lower your rates (including starting offering QV)** | 85 | 35.9% |
| **Start offering new services that were outside your comfort level** | 99 | 41.8% |
| **None of the above** | 107 | 45.1% |
| | | |
| **Total respondents (N)** | 237 | |
| **Skipped** | 23 | |

**Q27. After FOSTA, did you do street based sex work:**

| Answer Choices | # Responses | Percentage |
|---|---|---|
| **No** | 185 | 83.7% |
| **Yes and it was my first time** | 17 | 7.7% |
| **Yes and I had done street based work before but transitioned out of it** | 6 | 2.7% |
| **Yes, I did street based work infrequently before FOSTA and much more after it** | 3 | 1.4% |
| **I did the same amount of street based work before and after FOSTA** | 10 | 4.5% |
| | | |
| **Total respondents (N)** | 221 | |
| **Skipped** | 39 | |

**Q29.** Before FOSTA, did you make use of any sort of blacklist? Please check all that apply

| Answer Choices | # Responses | Percentage |
|---|---|---|
| **No** | 40 | 18.3% |
| **Yes I made reports to keep other workers safe** | 149 | 68.0% |
| **Yes I checked blacklists before seeing new clients for my own safety** | 155 | 70.8% |
| | | |
| **Total respondents (N)** | 219 | |
| **Skipped** | 41 | |

A4

**Q30.** A blacklist can be national, international, or local. It can be a website, an app, email list, or chat group. Before FOSTA how many blacklists did you participate in:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| 0 | 42 | 19.1% |
| 1 | 27 | 12.3% |
| 2 | 46 | 20.9% |
| 3 | 52 | 23.6% |
| 4 | 24 | 10.9% |
| 5 | 11 | 5.0% |
| 6 | 10 | 4.5% |
| 7 | 3 | 1.4% |
| 8 | 0 | 0.0% |
| 9 | 5 | 2.3% |
| | | |
| Total respondents (N) | 220 | |
| Skipped | 40 | |

**Q31.** In the months immediately after FOSTA, how many blacklists did you participate in?

| Answer Choices | # Responses | Percentage |
|---|---|---|
| 0 | 83 | 37.7% |
| 1 | 48 | 21.8% |
| 2 | 44 | 20.0% |
| 3 | 23 | 10.5% |
| 4 | 9 | 4.1% |
| 5 | 5 | 2.3% |
| 6 | 3 | 1.4% |
| 7 | 0 | 0.0% |
| 8 | 1 | 0.5% |
| 9 | 4 | 1.8% |
| | | |
| Total respondents (N) | 220 | |
| Skipped | 40 | |

A5

**Q32.** Currently how many blacklists do you participate in?

| Answer Choices | # Responses | Percentage |
|---|---|---|
| 0 | 63 | 28.6% |
| 1 | 60 | 27.3% |
| 2 | 48 | 21.8% |
| 3 | 24 | 10.9% |
| 4 | 14 | 6.4% |
| 5 | 4 | 1.8% |
| 6 | 3 | 1.4% |
| 7 | 1 | 0.5% |
| 8 | 1 | 0.5% |
| 9 | 3 | 1.4% |
| | | |
| Total respondents (N) | 221 | |
| Skipped | 39 | |

**Q34.** Did FOSTA prevent you from engaging in screening procedures that make you feel safe?

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Always | 33 | 14.9% |
| Usually | 47 | 21.2% |
| Sometimes | 75 | 33.8% |
| Rarely | 20 | 9.0% |
| Never | 47 | 21.2% |
| | | |
| Total respondents (N) | 222 | |
| Skipped | 38 | |

A6

**Q36.** Not including blacklists, did FOSTA stop you from organizing with other local sex workers for safety (for example, brunches, outreach activities, etc)?

| Answer Choices | # Responses | Percentage |
|---|---|---|
| No | 63 | 28.6% |
| A little | 38 | 17.3% |
| Somewhat | 43 | 19.5% |
| A lot | 49 | 22.3% |
| Completely | 27 | 12.3% |
| | | |
| Total respondents (N) | 220 | |
| Skipped | 40 | |

**Q37.** Did FOSTA stop you from engaging in any of these activities? Check all that apply

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Organizing or attending a conference | 93 | 42.5% |
| Participating in online forums | 128 | 58.4% |
| Identifying as a sex worker in public advocacy for reform or legislative change | 128 | 58.4% |
| Publishing letters to the editor, articles, essays, etc | 70 | 32.0% |
| None | 46 | 21.0% |
| Please explain | 40 | |
| | | |
| Total respondents (N) | 219 | |
| Skipped | 41 | |

Please explain – responses cited in brief:

- As a result of FOSTA my income decreased dramatically. I have not been able to attend networking conferences in the way I used to pre FOSTA. I used to share helpful information about sex work and sex worker issues before FOSTA. Doing so after FOSTA resulted in social media accounts being disabled and shadow banned.

A7

- Just talking about sexwork can get you suspended from social media, financial institutions like PayPal or Bank of America can close your account, landlords can put you on the street.
- I cannot help other sex workers or do outreach publicly without the danger of being labeled a pimp. I can't even watch over my friends.
- Not being able to keep platforms keeps you behind in not only organizing but also groups to get involved in. It feels more dangerous to self identify even in academic or organizer spaces because of whats going on online.

**Q38.** Compared to before FOSTA, do you know your local colleagues:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| More | 39 | 17.6% |
| The same | 62 | 28.1% |
| Slightly less | 25 | 11.3% |
| Less | 39 | 17.6% |
| Much less | 56 | 25.3% |
| Other (please specify) | 26 | |
| | | |
| Total respondents (N) | 221 | |
| Skipped | 39 | |

Other (please specify) – responses cited in brief:

- There's not many forums where you can connect with other sexworkers. Having a connected community keeps us together and safe and we need to connect with likeminded adults because like LGBQ we hold a stigma with people who don't understand our life choices. It can get very lonely.

A8

**Q39.** Has FOSTA made you more or less likely to help a new worker who reached out to you for safety information:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| More likely to help now | 55 | 25.1% |
| The same | 71 | 32.4% |
| Slightly less likely to help now | 30 | 13.7% |
| Less likely to help now | 20 | 9.1% |
| Much less likely to help now | 43 | 19.6% |
| Other (please specify) | 35 | |
| | | |
| Total respondents (N) | 219 | |
| Skipped | 41 | |

Other (please specify) – responses cited in brief:

- The law can prosecute under FOSTA/SESTA for helping other full service sex workers. If they remove our ability to stay safe they will eliminate us quicker...and by eliminate I mean remove our resources until we die = genocide.

**Q40.** Has FOSTA made you more or less likely to go to police if you were assaulted at work:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| More likely | 8 | 3.6% |
| The same | 59 | 26.8% |
| Slightly less likely | 12 | 5.5% |
| Less likely | 27 | 12.3% |
| Much less likely | 114 | 51.8% |
| Other (please specify) | 35 | |
| | | |
| Total respondents (N) | 220 | |
| Skipped | 40 | |

Other (please specify) – responses cited in brief:

A9

- I no longer have as much info on who I see or ability to give contact points. The cops won't care, and it will open me to targets.

**Q41.** Has FOSTA made you more or less likely to go to police if a client showed you child pornography:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| More likely | 19 | 8.9% |
| The same | 87 | 40.7% |
| Slightly less likely | 12 | 5.6% |
| Less likely | 34 | 15.9% |
| Much less likely | 62 | 29.0% |
| Other (please specify) | 34 | |
| | | |
| Total respondents (N) | 214 | |
| Skipped | 46 | |

Other (please specify) – responses cited in brief:

- I'm so sorry, really wish it were different and I would find a way to do something but walking into the police department myself wouldn't be it!

A10

**Q44.** IF you became homeless or unstably housed because of FOSTA, please check all that apply:

| Answer Choices | # Responses | Percentage |
|---|---|---|
| I have children who were living with me at the time | 17 | 18.5% |
| I was offered housing by a pimp | 19 | 20.7% |
| I was offered housing by someone who was trying to exploit me for free sex | 39 | 42.4% |
| I received help from a client who was not trying to exploit me for free sex | 32 | 34.8% |
| I was able to make use of shelters or other programs and navigate through homelessness | 9 | 9.8% |
| Shelters or other programs treated me differently or turned me away because I'm a sex worker | 20 | 21.7% |
| I got through it with help from friends, family, long stay hotels, etc. | 60 | 65.2% |
| I had to rely on someone who was trying to exploit me for help | 27 | 29.3% |
| After becoming homeless everything spiraled and I still have not gotten through it | 17 | 18.5% |
| Other (please specify) | 29 | |
| | | |
| Total respondents (N) | 92 | |
| Skipped | 168 | |

**Q45.** As a result of FOSTA did your income drop, leading you to receive or apply for: food stamps, housing assistance, TANF, or any kind of public assistance that you did not receive before FOSTA?

| Answer Choices | # Responses | Percentage |
|---|---|---|
| Yes, I receive/d new public assistance | 68 | 31.6% |
| I applied but was turned away | 36 | 16.7% |
| No | 111 | 51.6% |
| Other (please specify) | 28 | |
| | | |
| Total respondents (N) | 215 | |
| Skipped | 45 | |

A11

**Q50.** If you have a story of how you or someone you personally know was impacted by FOSTA, and you would like policy makers to hear it, please share it here.

Responses cited in brief:

- … "I used to be a lot more outspoken about sex worker's rights online, but ever since FOSTA, I've been wary about referencing the work so explicitly. I tiptoe around topics I would much prefer to just speak openly about. … Like many of my colleagues, I took down my duo / friends page (a page on my website that profiled friends I enjoy working with) because it could be perceived as (now felony-level) trafficking. … … everything feels much more precarious than before FOSTA and that is very, very unfortunate. And to think that so many works are much worse off than me, have died to been left homeless or forced to return to street work and be exploited by pimps, directly as a result of FOSTA, is just devastating."

A12

## Screenshot of notice about FOSTA on Craigslist



**Screenshot of notice about FOSTA on AdultWork.com**

Dear Member

It is with regret that we have to inform you that we will no longer be able to support your membership of AdultWork.com.  No doubt you will be up to speed with the news regarding SESTA and FOSTA.

The legal advice we have received is that until such time as the position is clearer, we are to suspend all advertisements on AdultWork.com, regardless of what services are actually being advertised.

Clearly this situation has wide reaching implications and is far from ideal for all concerned.  We are sorry we cannot take a more robust stance in this matter as is usually 'our way'.

We would like to thank you for your custom and loyalty and wish you every success with your endeavours henceforth.

Regards

The AdultWork.com Team

A14

**Screenshot of notice about FOSTA on pounced.org**

## What happened to pounced.org?

Pounced is a furry personals site which operates a free service on behalf of the community. We are staffed by volunteers and cover our own costs as a benefit to the community. (We apologize we have been a little too hasty on taking action on FOSTA, the bill has yet to be signed by President Trump, but has passed both the House and Senate, and will soon likely be signed into law by the president. Our action was prompted by Craigslist response to FOSTA, which was to shut down their personals section.)

FOSTA attempts to make Internet sites such as pounced.org liable for the way users use the site in an effort to address sex trafficking and prostitution.

FOSTA increases our liability significantly and chips away at one of the primary reasons we as a small organization can provide services to the community - the protection that had previously been offered to us by Section 230 of the Communications Decency act:

**"No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"**

We didn't have to worry about what our users said using our platform, as we weren't liable for what they said.

FOSTA changes that in a way that makes sites operated by small organizations like pounced.org much riskier to operate. FOSTA essentially says that if we facilitate the prostitution of another person we're liable. If you read FOSTA carefully the bill says "or facilitate" - the problem is that "or facilitate" is ill-defined.

**"(Sec. 3) The bill amends the federal criminal code to add a new section that imposes penalties-a fine, a prison term of up to 10 years, or both-on a person who, using a facility or means of interstate or foreign commerce, owns, manages, or operates an interactive computer service (or attempts or conspires to do so) to promote or facilitate the prostitution of another person."**

A15