ORAL ARGUMENT SCHEDULED: JANUARY 11, 2023

## No. 22-5105

_____

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

**WOODHULL FREEDOM FOUNDATION, HUMAN RIGHTS WATCH,
ERIC KOSZYK, JESSE MALEY a/k/a ALEX ANDREWS and
THE INTERNET ARCHIVE,**

*Appellants,*

v.

**THE UNITED STATES OF AMERICA
AND MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE UNITED STATES,**

*Appellees.*

_____

From an Order by the U.S. District Court for the District of Columbia
The Honorable Richard J. Leon, Judge Presiding (Case No. 1:18-cv-1552-RJL)

---

## APPELLANTS' REPLY BRIEF

---

Lawrence G. Walters
WALTERS LAW GROUP
195 W. Pine Ave.
Longwood, FL 32750-4104
Phone:  407-975-9150

Robert Corn-Revere
Adam S. Sieff
Caesar Kalinowski IV
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Phone:  202-973-4200

*Attorneys for Appellants*

*additional counsel inside cover*

David Greene
Aaron Mackey
Corynne McSherry
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Phone:  415-436-9333

Daphne Keller
STANFORD CYBER POLICY
CENTER
Encina Hall
616 Jane Stanford Way #E016
Stanford, CA 94305
Phone:  650-725-0325

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................iv

I.   THE GOVERNMENT ABANDONED ITS PREMISE THAT
     FOSTA DOES NOT DIRECTLY REGULATE SPEECH............................1

II.  THE GOVERNMENT BEGS THE QUESTION WHETHER FOSTA
     VIOLATES THE FIRST AMENDMENT ......................................................2

     A.    FOSTA Is Overbroad ...........................................................................2

           1.    FOSTA Is Not Susceptible to the Government's
                 Reconstruction ............................................................3

           2.    The Government's Analysis of Other Statutes
                 Undermines its Reading of FOSTA.............................9

           3.    FOSTA's Speech Restrictions Exceed its Legitimate
                 Scope .........................................................................16

     B.    FOSTA is Unconstitutionally Vague ..................................................18

     C.    FOSTA Fails Strict Scrutiny ..............................................................21

     D.    Selective Modification of Section 230 Violates the First
           Amendment ........................................................................................24

III. FOSTA IS AN *EX POST FACTO* LAW ......................................................26

CONCLUSION ......................................................................................................27

CERTIFICATE OF COMPLIANCE......................................................................1

CERTIFICATE OF SERVICE ..............................................................................2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abuelhawa v. United States*,
  556 U.S. 816 (2009)....................................................................12

*Al Bahlul v. United States*,
  767 F.3d 1 (D.C. Cir. 2014)........................................................26

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)....................................................................23

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002)......................................................................1

*Backpage.com, LLC v. Cooper*,
  939 F. Supp. 2d 805 (M.D. Tenn. 2013) ....................................17

*Backpage.com, LLC v. Hoffman*,
  2013 WL 4502097 (D.N.J. Aug. 20, 2013) ................................17

*Backpage.com, LLC v. Lynch*,
  216 F. Supp. 3d 96 (D.D.C. 2016)........................................19, 20

*Backpage.com, LLC v. McKenna*,
  881 F. Supp. 2d 1262 (W.D. Wash. 2012) ................................17

*Balliet v. Kottamasu*,
  76 Misc. 3d 906 (N.Y. Civ. Ct. 2022) ........................................25

*Bernardo v. Planned Parenthood Fed'n of Am.*,
  115 Cal. App. 4th 322 (2004) ....................................................25

*Brown v. EMA*,
  564 U.S. 786 (2011)....................................................................19

*Cohen v. California*,
  403 U.S. 15 (1971)......................................................................22

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)....................................................................12

*Ex parte Garland*,
    71 U.S. 333 (1866) ...........................................................................26

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ...........................................................................20

*Green v. Miss United States of Am., LLC*,
    2022 WL 16628387 (9th Cir. Nov. 2, 2022) ......................................24

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................19, 21, 22

*Iancu v. Brunetti*,
    139 S. Ct. 2294 (2019) .........................................................................2

*Lomax v. Ortiz-Marquez*,
    140 S. Ct. 1721 (2020) .........................................................................7

*Marbury v. Madison*,
    5 U.S. 137 (1803) ...............................................................................26

*Marquez-Reyes v. Garland*,
    36 F.4th 1195 (9th Cir. 2022) ..............................................................8

*Marshall v. United States*,
    355 F.2d 999 (9th Cir. 1966) ...............................................................7

*McBride v. Merrell Dow & Pharms. Inc.*,
    717 F.2d 1460 (D.C. Cir. 1983) .........................................................24

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ...........................................................................18

*N.Y. Republican State Comm. v. SEC*,
    799 F.3d 1126 (D.C. Cir. 2015) .........................................................27

*NAACP v. Button*,
    371 U.S. 415 (1963) .............................................................................1

*Packingham v. N. Carolina*,
    137 S. Ct. 1730 (2017) .........................................................................1

*Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*,
  692 F.3d 343 (5th Cir. 2012) ................................................................5

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015).............................................................................22

*Reno v. ACLU*,
  521 U.S. 844 (1997).......................................................................1, 3, 4

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989).............................................................................22

*Rosemond v. United States*,
  572 U.S. 65 (2014)...............................................................................10

*Sec'y of State v. Joseph H. Munson Co.*,
  467 U.S. 947 (1984).............................................................................26

*Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*,
  502 U.S. 105 (1991).............................................................................25

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011).............................................................................26

*United States v. Baker*,
  611 F.2d 961 (4th Cir. 1979) .................................................................7

*United States v. Bennett*,
  95 F.3d 1158 (9th Cir. 1996) .................................................................7

*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017)..............................................................7

*United States v. Desposito*,
  704 F.3d 221 (2d Cir. 2013) ..................................................................5

*United States v. Hansen*,
  25 F.4th 1103 (9th Cir. 2022) .................................................14, 15, 18

*United States v. Hernandez-Calvillo*,
  39 F.4th 1297 (10th Cir. 2022) ......................................5, 8, 14, 15, 18

*United States v. Lacey, et al.*,
   No. 18-cr-0422-PHX-SMB (D. Ariz.) ..........................................................16, 23

*United States v. McGraw*,
   351 F.3d 443 (10th Cir. 2003) ........................................................................5

*United States v. Miselis*,
   972 F.3d 518 (4th Cir. 2020), *cert. denied*,
   141 S. Ct. 2756 (2021) ...............................................................5, 14, 15, 16, 18

*United States v. Nat'l Treasury Emps. Union*,
   513 U.S. 454 (1995) ........................................................................................4

*United States v. O'Brien*,
   391 U.S. 367 (1968) ......................................................................................13

*United States v. Owens*,
   641 F. App'x 949 (11th Cir. 2016) ..................................................................5

*United States v. Phillips*,
   664 F.2d 971 (5th Cir. 1981) ..........................................................................5

*United States v. Playboy Entm't*,
   529 U.S. 803 (2000)......................................................................................23

*United States v. Rivera*,
   775 F.2d 1559 (11th Cir. 1985) ......................................................................5

*United States v. Rundo*,
   990 F.3d 709 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 865 (2022) ...................14

*United States v. Salerno*,
   481 U.S. 739 (1987).......................................................................................27

*United States v. Sineneng-Smith*,
   910 F.3d 461 (9th Cir. 2018), *vacated on other grounds*,
   140 S. Ct. 1575 (2020).............................................................................3, 8, 14

*United States v. Stevens*,
   559 U.S. 460 (2010)...............................................................................4, 21, 27

*United States v. Welch*,
   327 F.3d 1081 (10th Cir. 2003) .......................................................................7

*United States v. Williams,*
  553 U.S. 285 (2008)....................................................................................4, 6, 14

*Waddington v. Sarausad,*
  555 U.S. 179 (2009)........................................................................................10, 11

*Wash. Post Co. v. Keogh,*
  365 F.2d 965 (D.C. Cir. 1966)...........................................................................24

*Wash. Post v. McManus,*
  944 F.3d (4th Cir. 2019) ...................................................................................26

*Whole Woman's Health v. Jackson,*
  142 S. Ct. 522 (2021)........................................................................................26

*\*Woodhull Freedom Found. v. United States,*
  948 F.3d 363 (D.C. Cir. 2020).......................................................6, 8, 9, 17, 26

*Zuber v. Allen,*
  396 U.S. 168 (1969)...........................................................................................13

**Constitutional Provisions**

U.S. Const.
  amend. I................................................. 1, 2, 7, 13, 14, 18, 21, 23, 24, 25, 26, 27
  amend. V ...........................................................................................................3, 18
  art. I, § 9 ..............................................................................................................26

**Statutes**

18 U.S.C.
  § 2(a) ...................................................................................................................15
  § 982(a)(8)(A)......................................................................................................11
  § 1591.................................................................................. 3, 4, 13, 19, 20, 21, 23
  § 1591(a) ..............................................................................................................13
  § 1595...................................................................................................................21
  § 1595(d)..............................................................................................................21
  § 1952 (Travel Act).............................................................................6, 7, 19, 23
  § 1952(a)(3) .........................................................................................................23
  § 1952(b)..............................................................................................................23
  § 2102 (Anti-Riot Act).................................................................................14, 15
  § 2412A..................................................................................................................3

§ 2421A ........................................................................... 2, 4, 7

§ 2421A(a) ............................................................................ 10

§ 2422(a) ................................................................................ 7

§ 2422(b) ................................................................................ 7

§ 2423(d) ................................................................................ 7

19 U.S.C.

§ 1401(k) .............................................................................. 11

§ 1709(d) .............................................................................. 11

21 U.S.C. § 843(b) (Controlled Substances Act) ........................ 12

47 U.S.C. § 230 ......................................................... 16, 23, 24, 26

Ariz. Rev. Stat. Ann. § 13-301 ................................................ 10

Minn. Stat. Ann. § 609.321(7) ................................................ 10

Wash. Rev. Code § 9A.08.020(3) ............................................ 10

Model Penal Code

§ 2.06(3) ................................................................................ 9

§ 2.06(3)(a) .......................................................................... 10

## Other Authorities

Black's Law Dictionary .............................................................. 5

*Britannica.com* (https://www.britannica.com/topic/fallacy) ....................... 5

Elizabeth Nolan Brown, *Biased Testimony in Backpage Case Triggers Mistrial*, REASON.COM (Sept. 14, 2021) (https://reason.com/2021/09/14/biased-testimony-in-backpage-trial-triggers-more-calls-for-a-mistrial/) ...................... 16

H.R. Rep. No. 115-572, pt. 1 .................................................... 13

Letter from Assistant Attorney General Stephen E. Boyd to Robert W. Goodlatte, Feb. 27, 2018, https://www.eff.org/ files/2018/03/19/doj-sesta.pdf ................. 20

S. Rep. No. 115-199 ................................................................ 13

* Authorities chiefly relied upon marked with an asterisk.

The government does not attempt to defend FOSTA as written, but as it *wishes* it had been written.  It ignores rules of statutory interpretation and fails to analyze the law as a regulation of speech that requires precise draftsmanship.

## I.    THE GOVERNMENT ABANDONED ITS PREMISE THAT FOSTA DOES NOT DIRECTLY REGULATE SPEECH

The government drops its central premise—stressed repeatedly before the district court—that no facial First Amendment analysis of FOSTA is necessary because, as the lower court erroneously concluded, "FOSTA, on its face, is not a direct regulation of speech."  JA0738.  This concession has profound implications for how the Court should interpret FOSTA, which created multiple vectors of criminal and civil liability for online services that host user-generated speech and the speakers who rely on them.  Appellants' Opening Brief ("Br.") 23-25.  "Precision of regulation must be the touchstone" for any regulation of speech; the "government may regulate in the area only with narrow specificity."  *NAACP v. Button*, 371 U.S. 415, 433, 438 (1963).  This is especially true for statutes that regulate the "vast democratic forums of the Internet," *Reno v. ACLU*, 521 U.S. 844, 868 (1997), where courts "must exercise extreme caution" and review with special scrutiny any law that regulates speech, *Packingham v. N. Carolina*, 137 S. Ct. 1730, 1735-36 (2017).  This requirement is particularly pertinent to FOSTA's loose language because "[t]he mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002).

## II.   THE GOVERNMENT BEGS THE QUESTION WHETHER FOSTA VIOLATES THE FIRST AMENDMENT

The government seeks to defend FOSTA by rewriting it, asserting repeatedly that "*[i]f* [FOSTA] covers only conduct or speech so integral to criminal conduct that it falls within traditional principles of accomplice liability, it does not violate the First Amendment."  Opposition Brief ("Opp.") 22 (emphasis added); *see also id*. 48, 50, 55-56, 58, 66.  The Supreme Court rejects such circular argument, observing "even assuming the Government's reading would eliminate First Amendment problems, we may adopt it *only if we can see it in the statutory language*."  *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019) (emphasis added).   Therein lies the government's problem:  it never comes to grips with FOSTA's actual text.

### A.   FOSTA Is Overbroad

FOSTA's plain meaning covers a broad array of constitutionally-protected speech, Br. 28-37, and "the district court's narrowed construction of FOSTA makes sense only if the terms 'promote' and 'facilitate' can be interpreted as aiding and abetting in the criminal law sense and no other way," *id.* 29.  The government gamely tries to dispute this framing, yet concedes it by stating the question presented as "[w]hether FOSTA encompasses only criminal aiding and abetting[.]"  Opp. 3, 29.

But that interpretation cannot be squared with the actual text of the statute.  FOSTA's Section 2421A makes it a crime to "own[], manage[], or operate[] an interactive computer service ... with the intent to promote or facilitate the prostitution

of another person." A-3. Section 1591 proscribes "knowingly assisting, supporting or facilitating a violation" of the underlying statute. A-2. The opposition quotes FOSTA's actual text (as it must) in its Background section, Opp. 11, but in virtually all other references, the government substitutes "aiding and abetting" for "promote or facilitate" as if that were the language of the law. The government opens with the statement that "Plaintiffs bring this pre-enforcement First and Fifth Amendment challenge to a statute that prohibits ***aiding and abetting*** a crime," *id.* 1 (emphasis added), and repeats this formulation throughout its brief, sometimes with creative use of ellipses to make it appear as if this was FOSTA's language. *Id.* 50-51, 52, 57-58, 59, 60, 62. It employs this substitute language both with Section 2412A and 1591 even though the terms "aiding and abetting" appear nowhere in FOSTA.[1]

### 1.    FOSTA Is Not Susceptible to the Government's Reconstruction

Reviewing courts "may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction," and will not "rewrite a…law to conform it to constitutional requirements." *Reno*, 521 U.S. at 884-85 (citation omitted). Rewriting a statute is a "serious invasion of the legislative domain,"

---

[1] Congress knows how to draft "aiding and abetting" provisions when that is what it means. Br. 39 n.9 (listing examples). *See United States v. Sineneng-Smith*, 910 F.3d 461, 482 (9th Cir. 2018) ("[I]f Congress wanted [the law] to be an aiding and abetting statute, it would have included the words aiding and abetting."), *vacated on other grounds*, 140 S. Ct. 1575 (2020).

*United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 n.26 (1995), and "sharply diminish[es] Congress's incentive to draft a narrowly tailored law in the first place," *United States v. Stevens*, 559 U.S. 460, 481 (2010) (citation omitted).

Although courts may excise an overbroad law's unconstitutional terms and leave its remaining terms in force, that approach is not available here. "A severability clause requires textual provisions that can be severed," *Reno*, 521 U.S. at 882, and deleting the overbroad provisions in Section 2421A would drain the provision of any meaning ("with intent to…~~promote~~ or ~~facilitate~~ the prostitution of another person"). Likewise, corrective redrafting would require the additions to Section 1591 to be struck ("knowingly assisting, ~~supporting~~ or ~~facilitating~~ a violation"). The other way to narrow a statute is by applying interpretive canons, beginning with the words Congress used. *United States v. Williams*, 553 U.S. 285, 293 (2008). But while the government refers to "normal tools of statutory construction," *e.g.*, Opp. 40, it steadfastly ignores them.

*First*, the government bypasses FOSTA's text and analyzes the law as if it used the terms "aiding and abetting." It purports to rely on "canonical formulations" from legal dictionaries and other authoritative sources, yet defines *none* of FOSTA's key terms ("facilitate," "promote," "support," or "contribute to"). Instead, it reasons backwards by defining terms outside FOSTA's text: "aid and abet," *id.* 24, 44, and "pandering," *id.* 31. This is the converse fallacy, which appears throughout the

opposition.  *See Britannica.com* (https://www.britannica.com/topic/fallacy).   Just because aiding and abetting may *include* the concepts of promotion or facilitation does not mean the concepts of promotion or facilitation mean *only* aiding and abetting.  *E.g.*, *United States v. Hernandez-Calvillo*, 39 F.4th 1297, 1304 n.11 (10th Cir. 2022) ("the mere fact that 'abet' can be defined as 'encourage' does not mean that 'encourage' *only* means 'abet'").

The government falsely asserts that Appellants rely on "everyday speech" and "non-legal dictionaries" to define FOSTA's terms.  Opp. 29, 41, 57.  To the contrary, Appellants and the panel majority cited Black's Law Dictionary and numerous cases as interpretive guides, not "everyday language."  Br. 26; *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 372 (D.C. Cir. 2020) ("*Woodhull I*").  These authorities define "facilitate" as "[t]o make the occurrence of (something) easier; to render less difficult."  *See United States v. Desposito*, 704 F.3d 221, 228 & n.8 (2d Cir. 2013); *United States v. Owens*, 641 F. App'x 949, 952 (11th Cir. 2016); *see also United States v. McGraw*, 351 F.3d 443, 446 (10th Cir. 2003); *United States v. Rivera*, 775 F.2d 1559, 1562 (11th Cir. 1985); *United States v. Phillips*, 664 F.2d 971, 1032 (5th Cir. 1981).  And "promote" means to "[a]dvocate[] or popularize[] … by, for example, advertising or publicity."  *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 349 (5th Cir. 2012); *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020) ("The verb 'promote' occupies a similarly

overinclusive position on the continuum of relation between advocacy and action."),
*cert. denied*, 141 S. Ct. 2756 (2021).

***Second***, the government *completely ignores* the *noscitur a sociis* canon of statutory interpretation, which was key to the decision in *Woodhull I*, 948 F.3d at 372. The omission is jarring, as this canon lies at the heart of *Williams*, the case on which the government most relies. It cites *Williams **ten times***, Opp. 39, 40, 47, 49, 50, 56, 57, 58, 59, 61, yet never once mentions this rule. *Williams* applied the canon to interpret the PROTECT Act as applying only to illegal transactions, observing "the statute's string of operative verbs—'advertises, promotes, presents, distributes, or solicits'—is reasonably read to have a transactional connotation" directly involving unprotected speech (child pornography). 553 U.S. at 294. The Court observed that without the additional terms ("advertises," "distributes," or "solicits"), "the two remaining verbs—'promotes' and 'presents'—are susceptible of multiple and wide-ranging meanings." *Id*. at 294-95. In this case, the FOSTA *lacks* precisely what *saved* the PROTECT ACT: its operative verbs "promotes," "facilitates," or "contributes to" lack any surrounding terms to narrow their meaning. This principal lesson from *Williams* is utterly lost on the government.

This error is exemplified by the government's discussion of the Travel Act, where it asserts "courts often compress the litany of words to 'promote or facilitate' the commission of an unlawful act." Opp. 28. But it is precisely "the litany of

words" that permit courts to construe the statute more precisely.  If, like FOSTA, the Travel Act lacked what the government dismissively calls "the litany of words," and provided "[w]hoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to...promote, ~~manage, establish, carry on,~~ or facilitate the promotion, ~~management, establishment, or carrying on,~~ of any unlawful activity," the statutory analysis would be very different.[2]

The omission of narrowing, transactional elements also makes Section 2421A unique among offenses in Chapter 117 of the Criminal Code governing Transportation for Illegal Sexual Activity and Related Crimes, *all* of which contain numerous verbs specifying participatory actions.  *See* 18 U.S.C. §§2422(a), (b), 2423(d).  If statutory language may be understood by "the company it keeps," *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (citation omitted), it also must be interpreted according to the company it excludes, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) ("[T]his Court may not narrow a provision's reach by

---

[2] The government cites ten Travel Act cases to illustrate its point, Opp. 28-29, but none involve First Amendment issues or application of the *noscitur a sociis* canon.  The cases merely confirm the Travel Act has been applied to conduct amounting to direct participation in criminal enterprises.  *E.g.*, *United States v. Welch*, 327 F.3d 1081, 1085 (10th Cir. 2003) (payment of bribes); *United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996) (ownership of prostitution ring); *United States v. Baker*, 611 F.2d 961, 963 (4th Cir. 1979) (transportation of prostitutes); *Marshall v. United States*, 355 F.2d 999, 1002 (9th Cir. 1966) (violent extortion).

inserting words Congress chose to omit.").  And, as this Court pointed out, FOSTA's terms are not "limited by a string of adjacent verbs."  *Woodhull I*, 948 F.3d at 372.

**Third**, the government's avoidance of the *noscitur a sociis* canon also undermines its argument that FOSTA is limited by background criminal law concepts.  The interpretation of statutory terms "begins with their ordinary meaning, not their specialized meaning in criminal law," *Hernandez-Calvillo*, 39 F.4th at 1304, and a court may deviate from the ordinary meaning rule in interpreting a statute to apply the "narrower, criminal-law sense of solicitation or aiding and abetting," only when that interpretation "is supported by the *noscitur a sociis* canon," *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1202-03 (9th Cir. 2022).  Here, however, the government never discusses this canon, let alone respond to Appellants' analysis.  *See* Br. 29-32.  It simply falls back on the *ipse dixit* that FOSTA's terms mean only aiding and abetting—because the government says so.

**Fourth**, the only other statutory language on which the government relies, referring to "the prostitution of another person," does not imply a "transactional connotation" or limit FOSTA's scope.  The Ninth Circuit rejected the same approach to statutory construction in *Sineneng-Smith*, holding that "implying a *mens rea* requirement into the statute, and applying it only to speech to a particular person does not cure the statute's impermissible scope," or limit it to speech integral to criminal conduct.  910 F.3d at 480-84.  FOSTA's plain terms reach constitutionally-

protected speech, such as answering health questions or providing safety-related information like "bad date" lists, even when communications relate to "the prostitution of another person."   Br. 31-33.   And they reach constitutionally-protected operations of online platforms that distribute such speech.

*Fifth*, the government does not persuasively analyze the other rules of construction, such as the surplusage canon.  As the panel majority pointed out, in FOSTA "the verbs 'promote' or 'facilitate' are disjunctive."  *Woodhull I*, 948 F.3d at 372.  The government calls the conjunctive "promote and facilitate" a "legal term of art," Opp. 41, arguing FOSTA's use of the disjunctive form "promote *or* facilitate" is no problem, because, after all, the district court decided to overlook FOSTA's actual text (specifically, the word "or").  *Id.* 43.  This is a confession of error, not a defense.  And the suggestion that even the term "aid and abet" sometimes is considered "unnecessarily verbose" is no response.  *Id.* 43-44.

## 2.     The Government's Analysis of Other Statutes Undermines its Reading of FOSTA

The government's citation to the Model Penal Code §2.06(3) repeats the converse fallacy, and confuses *mens rea* and *actus reus*.  Opp. 25.  It states that under the Model Penal Code, a person who "takes certain actions" (the *actus reus*) with the purpose of promoting or facilitating a crime (the *mens rea*) aids or abets that crime, *id.*, but *omits mentioning* any of the *actus reus* elements of accomplice liability set forth in the Code.  These elements include soliciting another person to

commit a crime, aiding or attempting to aid in planning or committing the crime, or having a legal duty to prevent the crime but failing to make an effort so to do. MPC § 2.06(3)(a). *All* of the state laws the government cites to support its argument make clear that accomplice liability is contingent on the completion of another crime and the furtherance of that crime by some additional act as specified in the law.[3] Such requirements are conspicuously absent from FOSTA, where the *actus reus* is "own[ing], manag[ing], or operat[ing] an interactive computer service," 18 U.S.C. §2421A(a), and the law provides no guidance on what behavior (that is, speech) constitutes "promoting or facilitating" illegal activity.

The government repeats this error in discussing *Rosemond v. United States*, 572 U.S. 65 (2014), and *Waddington v. Sarausad*, 555 U.S. 179 (2009). Opp. 26. In *Rosemond*, the Court held that liability for aiding and abetting a firearms offense must include an a*ffirmative act in furtherance* of the offense *and* the knowledge and intent of facilitating the offense's commission. 572 U.S. at 71-76. Likewise, *Waddington* affirmed a jury instruction for accomplice liability that required the

---

[3] *See, e.g.*, Ariz. Rev. Stat. Ann. §13-301 (requiring individual to have intent to promote or facilitate crime *and* solicit, command, aid, counsel, or provides means or opportunity to another person to commit the offense); Wash. Rev. Code §9A.08.020(3) (requiring individual to solicit, command, encourage, request, or aid another person's crime *and* have "knowledge that it will promote or facilitate the commission of the crime"); Minn. Stat. Ann. §609.321, subd. 7 (definition of "Promotes the prostitution of an individual" requires soliciting or procuring patrons or other affirmative acts "to aid the prostitution of an individual").

individual had "knowledge that it will promote or facilitate the commission of the crime" *and* that they solicited, commanded, encouraged, requested, or aided another person to commit a particular crime. 555 U.S. at 185. These cases have no relevance to FOSTA, nor do they explain what actions might constitute "promoting or facilitating" any crimes referenced in FOSTA.

Likewise, the citation of federal customs statutes and forfeiture laws is irrelevant. Opp. 25-26. The government cites 19 U.S.C. §§1709(d) and §1401(k) that define a "hovering vessel" subject to penalties as any "vessel" that is "used to introduce, or promote or facilitate the introduction or attempted introduction of, merchandise into the United States in violation of the laws." As a textual matter, "promote or facilitate" is used to address the "introduction" and "attempted introduction" of physical contraband in violation of other laws with their own prescribed elements. Unlike FOSTA, these laws regulate non-expressive conduct (how one may use a boat) not an interactive computer service which by definition only functions to host and publish speech. Similarly, 18 U.S.C. §982(a)(8)(A), a forfeiture statute that empowers the seizure of property used "to commit, to facilitate, or to promote" certain offenses, is far afield from FOSTA. It defines property used in committing a crime and does not define the terms "facilitate" or "promote" in any context, much less to how those terms apply to an *actus reus* involving speech.

11

The government's reliance on *Abuelhawa v. United States*, 556 U.S. 816 (2009), is also misplaced.  Opp. 27.  There, the Supreme Court reviewed the Controlled Substances Act, 21 U.S.C. § 843(b) ("CSA") to consider whether one could "facilitate" one's own wrongdoing, and held that the language, structure, and history of the CSA indicated Congress intended to be more lenient on misdemeanors, so that a purchaser's use of a phone did not transform a misdemeanor purchase into a felony by qualifying as "facilitating" the distribution.  556 U.S. at 822-23.  This approach tracked in construing §843(b), because the government's claim that one could facilitate one's own criminal action contradicted Congress's clear intention to make small drug purchases misdemeanors, rather than felonies like distribution.  *Id.* at 821-22.

FOSTA's purpose and background compels the opposite conclusion, where Congress acted to expand restrictions on online speakers, heighten penalties, and dilute statutory immunities.  The government cites a few floor statements by members (speaking to oppose clarifying amendments) to suggest that FOSTA's scope is "narrow," *see* Opp. 35-37, but such statements cannot override the words enacted as law.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material.").  A law's validity must be judged by "the inevitable effect of a statute on its face [that] may render it unconstitutional" and not selected

12

floor statements. *United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.").

To whatever extent legislative history helps interpret FOSTA, the committee reports make clear the statutory purpose was to lower barriers to prosecution.[4] House and Senate reports indicate that Congress passed FOSTA to (1) diminish the *scienter* standard that applied in the prior version of section 1591 and (2) broaden liability to a range of online services beyond bad actor classified websites.[5]

---

[4] *See Zuber v. Allen*, 396 U.S. 168, 186 (1969) ("A committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation. Floor debates reflect at best the understanding of individual Congressmen.").

[5] FOSTA amended section 1591 to reduce the required level of *scienter* for "participation in a venture" that may include sex trafficking. Except where "the act constituting the violation…is advertising," liability may be established based on a showing of "reckless disregard." 18 U.S.C. §1591(a). The House Report explained that by lowering section 1591's *scienter* standard, Congress created a workaround to the specific knowledge requirement for advertising in the prior version of section 1591: "Though under 18 U.S.C. §1591, a website may be held criminally liable for knowingly advertising sex trafficking, this knowledge standard is difficult to prove beyond a reasonable doubt." H.R. Rep. No. 115-572, pt. 1, at 5. The Report added that "federal prosecutors usually cannot demonstrate beyond a reasonable doubt that the website operators knew the ad[s] involved sex trafficking." *Id*. The Senate Report concurred, stating that lowering section 1591's *scienter* would "eliminate legal obstacles to the successful prosecution of people or entities that violate federal laws against sex trafficking. As a result, the government might be able to pursue cases that it otherwise would not be able to prosecute." S. Rep. No. 115-199, at 2-3.

It is telling that with the exception of *Williams*—which it misinterprets—the government cites no cases regarding statutory interpretation that involve the regulation of speech.  Cases that directly address First Amendment overbreadth issues consistently reject the government's approach to statutory interpretation. Courts that found the Immigration and Nationality Act ("INA") unconstitutional addressed and rejected the government's attempt to transform the language used to a "more limited and specialized criminal law sense."[6]  Likewise, courts that struck down portions of the Anti-Riot Act rejected the government's attempt to construe terms such as "encourage," "promote" and "urge" as being confined to speech integral to criminal conduct.[7]

The government's attempt to distinguish these cases falls short.  It does not dispute the analytic steps required in overbreadth analysis, *see, e.g.*, *Miselis*, 972 F.3d at 531-32, and instead quibbles with some of the details.  It asserts the that the term "expansively" as used in the INA was construed broadly "for reasons that do not apply here," Opp. 45, but never explains why FOSTA's terms, including "promote" and "facilitate," should not also be construed according to their plain

---

[6] *Hernandez-Calvillo*, 39 F.4th at 1304-08; *United States v. Hansen*, 25 F.4th 1103, 1106-09 (9th Cir. 2022); *Sineneng-Smith*, 910 F.3d at 472-82.

[7] *Miselis*, 972 F.3d at 534-43; *United States v. Rundo*, 990 F.3d 709 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 865 (2022).

meanings, where, as here, they lack "surrounding verbs." *Hernandez-Calvillo*, 39 F. 4th at 1307 ("especially the absence of any accompanying verbs…make[s] clear that Congress used the broader, ordinary meaning of those terms").  Contrary to the Opposition, the INA's separate aiding and abetting provision was only a secondary factor that aided the court's construction, *Hansen*, 25 F.4th at 1108, and the court held the plain meaning of the law's terms alone "does not permit the application of the constitutional avoidance canon." *Id*. at 1110.[8]

The government's discussion of the Anti-Riot Act cases similarly focuses on a secondary clause that only confirmed the Fourth and Ninth Circuits' conclusions. Opp. 46.  It ignores both courts' detailed review of the plain language, as well as the Fourth Circuit's statement that "the central overbreadth question" is whether "any of the purposes included in the statute's specific-intent element implicate protected advocacy." *Miselis*, 972 F.3d at 535.  If so, "those purposes can't form the basis of an attempt to engage in unlawful speech." *Id.*  This analysis applies directly to FOSTA.  Br. 28-33.

---

[8] Reference to an aiding and abetting provision does not help the government distinguish FOSTA in any event, as the Opposition notes the U.S. Code already contains a general prohibition on aiding and abetting violations of law.  Opp. 43 (citing 18 U.S.C. §2(a)).

### 3.    FOSTA's Speech Restrictions Exceed its Legitimate Scope

The government's near-obsessive focus on Backpage.com (mentioned 34 times in its opposition) illustrates FOSTA's overbreadth.[9]    According to the opposition, FOSTA narrowly targets "commercial sex advertising" and amended Section 230 to avoid preempting civil claims and state criminal laws targeting such advertising.  Opp. 7-10 (stating Section 230 preempted "state laws in Washington, Tennessee, and New Jersey criminalizing the advertisement of minors for sex").  It illustrates what it means by "facilitation" as "editing ads for sex with children," going beyond "merely hosting advertisements," and operating as "storefronts for the facilitation of sex trafficking."  *Id*. 35 (cleaned up and citations omitted).  While this characterization of FOSTA's purpose "delineat[es] the scope of unprotected speech that the statute aims to regulate," *Miselis*, 972 F.3d at 532, and thus defines its "legitimate sweep," it also highlights why FOSTA's broad language extends much further than Backpage.com's alleged misdeeds.

---

[9] Although the government's brief is filled with allegations regarding Backpage.com as if they were established fact, it fails to mention that the website's former owners were not charged with trafficking and that the court declared a mistrial after prosecutors repeatedly and improperly conflated trafficking, prostitution, and legal sex work, contrary to the judge's instructions.  *United States v. Lacey, et al.*, No. 18-cr-0422-PHX-SMB (D. Ariz. Sept. 14, 2021) (transcript of proceedings granting mistrial).  *See* Elizabeth Nolan Brown, *Biased Testimony in Backpage Case Triggers Mistrial*, REASON.COM (Sept. 14, 2021) (https://reason.com/2021/09/14/biased-testimony-in-backpage-trial-triggers-more-calls-for-a-mistrial/).

As this Court observed, "FOSTA's text does not limit its scope to 'bad actor websites,' or even to classified advertising." *Woodhull I*, 948 F.3d at 372.  And even if it did, the statutory text still must survive overbreadth analysis.  It is notable that the three state statutes the government says helped prompt FOSTA's passage *specifically* targeted classified advertising websites and each state claimed to regulate *only* unprotected speech, yet all were found unconstitutionally vague, overbroad, and lacking adequate *mens rea* requirements.  *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1280-84 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 831-33 (M.D. Tenn. 2013); and *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, *9-11 (D.N.J. Aug. 20, 2013).  The problem in those cases (as here) was that Congress used "a butcher knife on a problem that requires a scalpel to fix."  *Cooper*, 939 F. Supp. 2d at 813; *McKenna*, 881 F. Supp. 2d at 1280, 1282 (statutory language "encompasse[d] more than offers to engage in illegal transactions").

The point is not that FOSTA's overbreadth problems are identical to those of the state statutes; it is that the government's insistence that it intends to restrict only unprotected speech is not enough.  The government is constitutionally compelled to show that the language enacted is strictly limited to that purpose, or as the government described its own burden, to show that FOSTA does not reach protected speech.  Opp. 3, 29.  But Congress chose not to limit FOSTA to advertisements or

17

commercial transactions, and instead adopted broad terms (without any modifiers) whose plain meanings extend a wide range of activities that threaten education and harm reduction efforts for sex workers, and the operation of interactive computer services used for such speech. Br. 28-37. The broad language pervades all FOSTA's operative provisions, and there is no possibility of severing "'the unconstitutional portion'…from the remainder." *Miselis*, 972 F.3d at 531 (citation omitted).

Finally, the government undermines its claim of FOSTA's "legitimate sweep" when it insists that "[a]ll of the conduct prohibited by FOSTA was already unlawful before FOSTA." Opp. 57; *see also id*. 3-4, 52-53. It has no response to the numerous overbreadth cases that find availability of "alternative prosecutorial tools dilutes the force of [a law's] legitimate applications." *Hernandez-Calvillo*, 39 F.4th at 1310; *Hansen*, 25 F.4th at 1109 (the law's "plainly legitimate sweep [has] little independent work to do"). "[T]he government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014). *See* Br. 36-37.

## B.    FOSTA is Unconstitutionally Vague

The government tries to reframe the vagueness issue solely under the rubric of the Fifth Amendment, Opp. 56-63, but fails to acknowledge that vagueness in laws regulating expression "raise special First Amendment concerns because of its

obvious chilling effect on free speech," *Brown v. EMA*, 564 U.S. 786, 807 (2011) (citation omitted), and "a more stringent vagueness test should apply," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (citation omitted).  This requires that laws be drafted with "narrow specificity," and especially so for laws regulating the Internet.  *See supra* 1.

The government tries to defend FOSTA by pointing to the Travel Act and Section 1591 that it says already prohibited the same conduct, Opp. 57, but fails to note FOSTA's *differences*.  Unlike the Travel Act, FOSTA specifically targets a medium of communication and lacks the "string of verbs" that narrow prohibited conduct to direct participation in criminal activity.  The government claims it is not "a constitutional defect" that FOSTA "does not set out exhaustively all the specific conduct" that would violate the law, Opp. 58, but this just reveals a gift for understatement:  FOSTA includes *no terms* that define or delimit what constitutes "promoting" or "facilitating" prostitution.  *See supra* 6.

Likewise, the *alterations* to section 1591 make FOSTA unconstitutionally vague.  Congress amended Section 1591 to broaden the meaning of "participation in a venture" specifically to undo the stricter *mens rea* standard articulated in *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 109 (D.D.C. 2016).  *See supra* n.5.  The term "or facilitating" was added to the definition of "participating in a venture" which is subject not to a "knowing" standard, but to "reckless disregard."

Weirdly, the government now gets this backwards, contradicting *Lynch* to state that FOSTA "prohibits *'advertis[ing]'* a person for a commercial sex act 'in reckless disregard of the fact' that force, fraud, or coercion will be used or that the person is a minor." Opp. 4 (emphasis added).

This gaffe is striking for two reasons: First, it confirms the *mens rea* requirements in FOSTA are so convoluted that even the Justice Department cannot keep them straight. It seems to come up with a different interpretation each time it puts pen to paper.[10] Certainly if the government has a hard time figuring out the law, those who must comply with it cannot be expected to understand, causing speakers to "steer far wider of the unlawful zone...than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). Second, under FOSTA's actual language, the so-called "bad actor" classified ad websites the government cites as FOSTA's *raison d'être* inexplicably benefit from a *stricter scienter* standard than everyone else. Thus, the government's claim that *mens rea* requirements clarify FOSTA falls flat. Opp. 60-62.

---

[10] *See* Letter from Assistant Attorney General Stephen E. Boyd to Robert W. Goodlatte, Feb. 27, 2018 ("DOJ Letter" citing *Lynch* and opposing modification of Section 1591) ("Under current law, prosecutors must prove that the defendant knowingly benefitted from participating in a sex trafficking venture, knew that the advertisement related to commercial sex, and knew that the advertisement involved a minor or the use of force, fraud, or coercion."), https://www.eff.org/files/2018/03/19/doj-sesta.pdf.

And it gets worse:  FOSTA also permits states to bring criminal and civil actions "for conduct equivalent to Section 1591" (including *parens patriae* actions under section 1595), which could employ differing standards of *mens rea*.  18 U.S.C. §1595(d).    However, as the Justice Department cautioned Congress prior to FOSTA's passage, "we are also mindful that this language could have unintended consequences as applied by the states."  DOJ Letter, *supra* n.10.  This presents a significant First Amendment problem where "[t]hose seeking to comply with the law thus face a bewildering maze of regulations" under different state laws, and, in this case, differing *mens rea* requirements.  *Stevens*, 559 U.S. at 476.  The Justice Department's confusion mirrors that of courts that have been tasked with construing FOSTA in myriad civil suits.  Br. 42.

## C.    FOSTA Fails Strict Scrutiny

The government has no serious response to the argument that FOSTA is a content-based regulation that must survive strict scrutiny.  This is the only place it resurrects a faint echo of its previous central premise that FOSTA "is not a direct regulation of speech," Opp. 50, and its argument boils down to this:  Congress rendered a "course of conduct" a criminal act, and it does not matter that it may be carried out "by means of language," *id.* 51.  This is the exact argument the Justice Department made in *Holder*, which the Supreme Court rejected for "running

headlong into a number of our precedents."  561 U.S. at 27-28 (citing *Cohen v. California*, 403 U.S. 15 (1971)).

The law at issue in *Holder* prohibited providing "material support" to terrorist organizations, which all parties agreed could take the form of speech.  The Court rejected the government's argument the law prohibited only a criminal "course of conduct," and held that whether the plaintiffs' speech was proscribed "depends on what they say."  *Id*. at 27.  Likewise, the breach of the peace statute at issue in *Cohen* was a generally applicable law but was "directed at Cohen because of what his speech communicated."  *Id*. at 28.  Here, the connection to speech is even more direct, because the *actus reus* in FOSTA is "own[ing], manag[ing], or operat[ing] an interactive computer service," and potential liability depends *entirely* on "what they say."  *Holder*, 561 U.S. at 27.  Such a law must satisfy strict scrutiny.  *Id*. at 28.[11]

Here, the government makes no attempt to meet this burden, and instead repeatedly insists FOSTA is *not* the least restrictive means of achieving its asserted objectives.  It identifies "several" more narrowly focused and content-neutral "federal criminal statutes" that exist "to prosecute sex trafficking and prostitution."

---

[11] The government cites *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), to assert FOSTA's "purpose" is content-neutral, Opp. 52, but this approach to analyzing content-based laws was overturned in *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015) (explaining that "neutral" justifications cannot save content-based laws).

Opp. 3-4, 53.  It further admits that even before FOSTA "the federal government *could ... already prosecute* anyone who used a facility in interstate commerce, such as the Internet, with intent to promote or facilitate the unlawful activity of prostitution in violation of the Travel Act, 18 U.S.C. §1952(a)(3), (b)."  *Id.* 53 (emphasis added; quotation omitted).[12]   And it also acknowledges that Congress likewise "created a more specific crime" for "the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion" in 18 U.S.C. §1591 that reaches bad actor websites.  *Id.* 4.

These laws provide obvious less restrictive means to prosecute sex trafficking and prostitution without facially criminalizing protected speech.  "When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals."  *United States v. Playboy Entm't*, 529 U.S. 803, 816 (2000).  The failure to make that showing here is dispositive.  *See Ashcroft v. ACLU*, 542 U.S. 656, 666-70 (2004).

---

[12] Despite the government's obsession with Backpage.com, it fails to mention that no charges were brought against its former owners under FOSTA.  *See United States v. Lacey et al.*, No. 2:18-cr-00422 (D. Ariz.).

**D.      Selective Modification of Section 230 Violates the First Amendment**

The government does not dispute that FOSTA's amendments to Section 230 broaden potential sources of liability while encouraging online platforms to take down content.  In short, FOSTA empowered more prosecutors and private litigants to bring claims under less precise standards, while preserving protection solely for the removal of information.  Appellants demonstrated the widespread censorial impact that flowed from this, Br. 8-14, and the district court agreed Appellants accurately described the incentives created by the amendment.  JA0737.

The government asserts these changes did not alter Section 230 "in any way relevant to the First Amendment" because "Congress was not compelled by the First Amendment to enact Section 230 in the first place," and is "not forbidden by the First Amendment from carving out certain things" while "maintaining protections for service providers who, in good faith, establish and police their own standards of decency."  Opp. 53-54.  This ignores that Section 230 codified pre-existing First Amendment protections for intermediaries because of their heightened relevance to the Internet.  Br. 48-52.  The government does not question this background, but fails to grasp the constitutional significance of FOSTA's selective modifications.

This Court has long recognized that "summary procedures" are essential to protect First Amendment freedoms.  "Unless persons … desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they

24

will tend to become self-censors." *McBride v. Merrell Dow & Pharms. Inc.*, 717 F.2d 1460, 1467 (D.C. Cir. 1983) (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)). *See Green v. Miss United States of Am., LLC*, 2022 WL 16628387, *21-22 (9th Cir. Nov. 2, 2022) ("[T]he First Amendment's protections extend to not only unconstitutional laws, but also to unnecessary *litigation* that chills speech.").

The government is wrong to suggest no First Amendment implications flow from undoing a law that protects freedom of expression by reducing burdens of litigation. Anti-SLAPP laws, which likewise support First Amendment values, illustrate the point. *E.g.*, *Balliet v. Kottamasu*, 76 Misc. 3d 906, 916 (N.Y. Civ. Ct. 2022) ("Anti-SLAPP laws…further bolster First Amendment free speech procedural litigation protective procedures to enforce *Sullivan*'s principles[.]"); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 340 (2004) (anti-SLAPP law is "designed to protect citizens in the exercise of their First Amendment constitutional rights of free speech and petition" by "provid[ing] a procedural remedy to resolve such a suit expeditiously").

As with FOSTA, the First Amendment did not compel state legislatures to adopt anti-SLAPP laws in the first place. However, once adopted, selectively withdrawing summary procedures from disfavored speakers or topics obviously would implicate the First Amendment, particularly through a statute that defines

disfavored speech so vaguely. Canceling statutory immunity for "specified content," such as criticism of the government or accounts of past crime, certainly would violate the First Amendment, *Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991), as would viewpoint or speaker-based withdrawals, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011).

That is precisely how FOSTA's amendments to Section 230 operate, and the district court agreed that widespread chilling of Internet speech naturally followed. JA0737. By adopting overbroad and vague prohibitions, relaxing scienter requirements, and multiplying potential sources of liability while removing statutory immunity and encouraging self-censorship, FOSTA places the onus on platforms and violates the First Amendment. *Wash. Post v. McManus*, 944 F.3d at 512, 517 (4th Cir. 2019).

## III.  FOSTA IS AN *EX POST FACTO* LAW

The government tries to avoid the plain language of (a) the Constitution's mandate that "[n]o…ex post facto Law ***shall be passed***," U.S. Const. art. I, § 9 (emphasis added), (b) FOSTA's retroactive authorization of civil *and* criminal actions, FOSTA §4(b), and (c) well-established jurisprudence rescinding such laws where the party cannot obtain any other form of injunctive relief. *See* Br. 56 (citing *Marbury v. Madison*, 5 U.S. 137 (1803); *Ex parte Garland*, 71 U.S. 333, 381 (1866); *Al Bahlul v. United States*, 767 F.3d 1, 30-31 (D.C. Cir. 2014) (*en banc*)).

26

It does not try to defend the lower court's application of *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), or similar arguments based on claims about standing—which have already been addressed. *Woodhull I*, 948 F.3d at 374. *See also Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984); *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1135-36 (D.C. Cir. 2015).

The government's invocation of *United States v. Salerno*, 481 U.S. 739 (1987), under which a plaintiff would have to show no set of circumstances under which the act would be valid, is plainly inappropriate. As an initial matter, an *ex post facto* law like FOSTA that criminalizes previously legal conduct is always invalid on its face and thus meets the "no set of circumstances" test. But where, as here, the *ex post facto* restrictions apply to speech, basic First Amendment principles render that test inapplicable. *Stevens*, 559 U.S. at 473 (*Salerno* test is unsuitable "[i]n the First Amendment context").

## CONCLUSION

This Court should vacate the District Court's order dismissing this action.

*/s/ Robert Corn-Revere*
Robert Corn-Revere
bobcornrevere@dwt.com
Adam S. Sieff
adamsieff@dwt.com
Caesar Kalinowski IV
caesarkalinowski@dwt.com
DAVIS WRIGHT TREMAINE LLP

1301 K Street NW, Suite 500 East
Washington, DC 20005
Telephone:  202-973-4200

David Greene
Aaron Mackey
Corynne McSherry
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:  415-436-9333

Lawrence G. Walters
WALTERS LAW GROUP
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone:  407-975-9150

Daphne Keller
STANFORD CYBER POLICY CENTER
Encina Hall
616 Jane Stanford Way #E016
Stanford, CA 94305
Phone:  650-725-0325

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 6,498 words.

Counsel relies on the computer program used to create this brief for the word count.

By:  _/s/ Robert Corn-Revere_
Robert Corn-Revere

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on November 22, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


By:   */s/ Robert Corn-Revere*
          Robert Corn-Revere