**ORAL ARGUMENT NOT SCHEDULED**

**No. 22-5105**

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

WOODHULL FREEDOM FOUNDATION, et al,

Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA and MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

Defendants-Appellees.

—————————————

On Appeal from the United States District Court
for the District of Columbia

—————————————

**BRIEF FOR APPELLEES**

—————————————

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

MARK B. STERN
JOSEPH F. BUSA
*Attorneys, Appellate Staff*
*Civil Division, Room 7537*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Plaintiffs in district court, and appellants here, are the Woodhull Freedom Foundation, Human Rights Watch, Eric Koszyk, Jesse Maley (also known as Alex Andrews), and the Internet Archive.

Defendants in district court, and appellees here, are the United States of America and Merrick B. Garland, in his official capacity as Attorney General of the United States. (William P. Barr and Jefferson B. Sessions, III, were formerly defendants in district court in their then-official capacities as Attorneys General of the United States. When they left office, their successors were automatically substituted under Federal Rule of Civil Procedure 25(d) and Federal Rule of Appellate Procedure 43(c)(2).)

There were no amici or intervenors in district court. At the time of filing, amici supporting plaintiffs-appellants included: Call Off Your Old Tired Ethics of Rhode Island (COYOTE-RI); Black and Pink MA; The Community United for Safety and Protection; DeCrim PA; The Erotic

Service Providers Legal, Education and Research Project; Helping

Individual Prostitutes Survive (HIPS); International Sex Worker

Foundation for Art, Culture, and Education; The Ishtar Collective; The

National Council for Incarcerated and Formerly Incarcerated Women

and Girls; The Sex Workers Outreach Project (SWOP) Behind Bars;

SWOP Sacramento; SWOP Tucson; Valued Existence of Northeastern

and Ubiquitous Sex Workers (VENUS); Transgender Law Center;

Center for Democracy & Technology; Decriminalize Sex Work; The Sex

Workers Project (SWP) of the Urban Justice Center; Freedom Network;

Brooklyn Defender Services; Erotic Laborers Alliance Of New England

(ELA-ONE); Old Pros; National Coalition for Sexual Freedom (NCSF);

New York Transgender Advocacy Group (NYTAG); Free Speech

Coalition; SWOP Brooklyn; Gays and Lesbians Living in a Transgender

Society (GLITS); and St. James Infirmary.

## B.    Rulings Under Review

Plaintiffs-Appellants seek review of the March 29, 2022, Order

and Memorandum Opinion in *Woodhull Freedom Foundation v. United*

*States*, No. 1:18-cv-01552, 2022 WL 910600 (D.D.C.) (Leon, J.). The

order is reproduced at page 745 of the Joint Appendix (JA), and the

memorandum opinion is reproduced at pages 717 to 744.

## C.    Related Cases

This case has previously been before this Court. *See* No. 18-5298.

There are no related cases involving substantially the same parties and

the same or similar issues currently pending in this Court, any other

United States court of appeals, or any other court (whether federal or

local) in the District of Columbia.

*/s/ Joseph F. Busa*
JOSEPH F. BUSA
Counsel for Defendants-Appellees

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................vi

GLOSSARY ...............................................................................xiv

INTRODUCTION..........................................................................1

STATEMENT OF JURISDICTION ......................................................2

STATEMENT OF THE ISSUES .........................................................3

PERTINENT STATUTES AND REGULATIONS ....................................3

STATEMENT OF THE CASE ...........................................................3

    A.    Statutory Background.........................................................3

        1.    Federal criminal statutes addressing sex
               trafficking and prostitution ...........................................3

        2.    The Communications Decency Act of 1996 and
               the protections of Section 230.......................................5

        3.    Section 230 thwarts state criminal prosecutions
               of, and victims' civil suits against, Backpage.com ........6

        4.    The Allow States and Victims to Fight Online Sex
               Trafficking Act of 2017 (FOSTA) .................................10

    B.    Plaintiffs' First Amendment, Fifth Amendment, and Ex
        Post Facto Challenges.........................................................13

    C.    Prior Proceedings .............................................................15

        1.    Dismissal for lack of standing; first appeal.................15

        2.    Summary judgment in the government's favor on
               remand ......................................................................18

SUMMARY OF ARGUMENT .................................................20

STANDARD OF REVIEW..................................................23

ARGUMENT ...................................................................23

I.    FOSTA Is Consistent With The First Amendment. ......................23

      A.    To Act With The "Intent To Promote Or Facilitate The
            Prostitution Of Another Person" Is To Aid Or Abet A
            Crime. ..........................................................23

            1.    The phrase "promote or facilitate" as used in
                  criminal statutes is equivalent to "aid or abet.".........24

            2.    FOSTA uses that term of art. .....................................29

            3.    Plaintiffs' arguments to the contrary are
                  unavailing....................................................37

      B.    The First Amendment Does Not Provide Immunity For
            Those Who Intentionally Aid And Abet The Crimes At
            Issue Here Under Traditional Principles Of Criminal
            Law. ............................................................48

II.   FOSTA Is Consistent With The Fifth Amendment In
      Providing Adequate Notice Of What Is Unlawful. .........................56

III.  Plaintiffs' Pre-Enforcement Ex Post Facto Challenge Also
      Fails. .....................................................................64

CONCLUSION ...................................................................67

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

v

## TABLE OF AUTHORITIES

**Cases:**                                                                **Page(s)**

*Abuelhawa v. United States,*
    556 U.S. 816 (2009) ...................................................... 27, 40

*Ashcroft v. Free Speech Coal.,*
    535 U.S. 234 (2002) ........................................................ 40

*Azar v. Allina Health Servs.,*
    139 S. Ct. 1804 (2019) ..................................................... 34

*Bennett v. Google, LLC,*
    882 F.3d 1163 (D.C. Cir. 2018) ..................................... 6, 55

*California v. Texas,*
    141 S. Ct. 2104 (2021) ..................................................... 65

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    142 S. Ct. 1464 (2022) ..................................................... 51

*Doe ex rel. Roe v. Backpage.com, LLC,*
    104 F. Supp. 3d 149 (D. Mass. 2015) .................................. 9

*Elonis v. United States,*
    575 U.S. 723 (2015) ........................................................ 62

*FAA v. Cooper,*
    566 U.S. 284 (2012) ........................................................ 41

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ........................................................ 62

*Garrison v. Louisiana,*
    379 U.S. 64 (1964) .......................................................... 63

*Geiss v. Weinstein Co. Holdings LLC,*
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ................................ 34

*George v. McDonough,*
    142 S. Ct. 1953 (2022) ..................................................... 29

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ............................................................. 48, 49, 51

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ............................................................. 59

*Grimes v. District of Columbia*,
794 F.3d 83 (D.C. Cir. 2015) ............................................. 23

*Hall v. Hall*,
138 S. Ct. 1118 (2018) ....................................................... 29

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ............................................................... 58

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) ............................................... 9, 10

*Johnson v. United States*,
576 U.S. 591 (2015) ........................................................... 61

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011) ............................... 9

*Marshall v. United States*,
355 F.2d 999 (9th Cir. 1966) ............................................. 28

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
559 U.S. 229 (2010) ........................................................... 32

*National Ass'n of Mfrs. v. Taylor*,
582 F.3d 1 (D.C. Cir. 2009) ............................................... 59, 60

*New York v. Ferber*,
458 U.S. 747 (1982) ........................................................... 38

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
413 U.S. 376 (1973) ........................................................... 49

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........................................................... 51

*Reno v. Koray*,

515 U.S. 50 (1995) .............................................................................. 61

*Rice v. Paladin Enters.,*
128 F.3d 233 (4th Cir. 1997) ........................................................ 48

*Rosemond v. United States,*
572 U.S. 65 (2014) ........................................................................ 26

*State v. White,*
484 A.2d 691 (N.J. 1984) .............................................................. 24

*Stogner v. California,*
539 U.S. 607 (2003) ...................................................................... 66

*Stokeling v. United States,*
139 S. Ct. 544 (2019) .................................................................... 41

*Sturgeon v. Frost,*
577 U.S. 424 (2016) ...................................................................... 41

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ...................................................................... 16

*United States v. Baker,*
611 F.2d 961 (4th Cir. 1979) ........................................................ 28

*United States v. Bennett,*
95 F.3d 1158 (9th Cir. 1996) ........................................................ 28

*United States v. Bronstein,*
849 F.3d 1101 (D.C. Cir. 2017) ............................................. 56, 57

*United States v. Hansen,*
25 F.4th 1103 (9th Cir. 2022) ...................................................... 45

*United States v. Heilmann,*
235 F.3d 1146 (8th Cir. 2001) ...................................................... 28

*United States v. Hernandez-Calvillo,*
39 F.4th 1297 (10th Cir. 2022) .................................................... 45

*United States v. Manzo,*
712 F.3d 805 (3d Cir. 2013) ......................................................... 28

*United States v. Miselis*,
   972 F.3d 518 (4th Cir. 2020) ..................................................... 46, 47

*United States v. Nino*,
   967 F.2d 1508 (11th Cir. 1992) ........................................ 28

*United States v. Riquelmy*,
   572 F.2d 947 (2d Cir. 1978) ............................................ 28

*United States v. Ruiz*,
   386 F. App'x 530 (6th Cir. 2010) ..................................... 28

*United States v. Rundo*,
   990 F.3d 709 (9th Cir. 2021) ...................................... 46, 47

*United States v. Salerno*,
   481 U.S. 739 (1987) ........................................................ 65

*United States v. Sineneng-Smith*,
   910 F.3d 461 (9th Cir. 2018), *vacated on other grounds*,
   140 S. Ct. 1575 (2020) .................................................... 45

*United States v. Stevens*,
   559 U.S. 460 (2010) ........................................................ 49

*United States v. Taylor*,
   44 F.4th 779 (8th Cir. 2022) ........................................... 34

*United States v. Wahl*,
   290 F.3d 370 (D.C. Cir. 2002) ........................................ 27

*United States v. Welch*,
   327 F.3d 1081 (10th Cir. 2003) ...................................... 28

*United States v. Williams*,
   553 U.S. 285 (2008).........................39, 40, 47, 49, 50, 56, 57, 58, 59, 61

*Urena-Ramirez v. Ashcroft*,
   341 F.3d 51 (1st Cir. 2003) ....................................... 28, 29

*Virginia v. Black*,
   538 U.S. 343 (2003) ........................................................ 52

*Waddington v. Sarausad*,
   555 U.S. 179 (2009) .......................................................... 26

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ..................................................... 51, 57

*Woodhull Freedom Found. v. United States*:
   334 F. Supp. 3d 185 (D.D.C. 2018) ................................. 15
   948 F.3d 363 (D.C. Cir. 2020) .................................. 15, 16, 17, 18, 23,
                                24, 30, 31, 38, 39, 43

**U.S. Constitution:**

Art. I, § 9, cl. 3 ......................................................... 63

**Federal Statutes:**

Allow States and Victims to Fight Online Sex Trafficking Act of 2017,
   Pub. L. No. 115-164, 132 Stat. 1253 (2018).......................................10
     § 2, 132 Stat. at 1253......................................................10
     § 3(a), 132 Stat. at 1253-54 .......................................... 10-11
     § 4(a), 132 Stat. at 1254 (codified at 47 U.S.C. § 230(e)(5))............11
     § 4(b), 132 Stat. at 1254-55 ........................................ 12, 63
     § 5, 132 Stat. at 1255 (codified at 18 U.S.C. § 1591(e)(4) .............. 13,

Communications Decency Act of 1996:
   47 U.S.C. § 230 .......................................................... 1, 5
   47 U.S.C. § 230(c)(1) ....................................................... 5
   47 U.S.C. § 230(c)(2) ................................................ 6, 53, 55
   47 U.S.C. § 230(e)(1) .................................................. 6, 52
   47 U.S.C. § 230(e)(3) .................................................... 6
   47 U.S.C. § 230(e)(5) ............................................ 12, 53, 63, 64
   47 U.S.C. § 230(e)(5)(A) ................................................ 60
   47 U.S.C. § 230(f)(2) .................................................... 11

Travel Act:
   18 U.S.C. § 1952 ........................................................ 3-4
   18 U.S.C. § 1952(a) ...................................................... 28
   18 U.S.C. § 1952(a)(3) ............................................... 4, 53
   18 U.S.C. § 1952(b) .................................................. 4, 53

Model Penal Code § 2.02(c) ..................................................... 63

Model Penal Code § 2.06(3)(a) ................................................ 25

8 U.S.C. § 1324 (a)(1)(A)(iv) ................................................. 44

8 U.S.C. § 1324 (a)(1)(A)(v)(II) .............................................. 45

18 U.S.C. § 2 (a) .................................................................... 43

18 U.S.C. § 924(c)(1) ............................................................. 27

18 U.S.C. § 982(a)(8)(A) ........................................................ 26

18 U.S.C. § 1591 ................................................ 4, 5, 9, 12, 33, 52

18 U.S.C. § 1591(a) ................................................................ 11

18 U.S.C. § 1591(a)(1) ............................................................. 4

18 U.S.C. § 1591(a)(2) .................................................. 5, 13, 33, 34

18 U.S.C. § 1591(e)(4) ..................................................... 33, 60

18 U.S.C. § 1595 .......................................................... 5, 9, 11

18 U.S.C. § 2101(a) ................................................................ 46

18 U.S.C. § 2252A ................................................................. 47

18 U.S.C. § 2421A ............................................................ 10, 12

18 U.S.C. § 2421A(a) ............................................... 1, 11, 14, 17, 19, 20,
                                                              23, 30, 31, 50, 59

18 U.S.C. § 2421A(b) ........................................................ 11, 59

18 U.S.C. § 2421A(b)(1) ........................................................ 31

18 U.S.C. § 2421A(b)(2) ................................................ 59, 61-62, 6

18 U.S.C. § 2421A(c) ........................................................ 11, 32

18 U.S.C. § 2421A(e) ................................................................. 11, 30, 32

19 U.S.C. § 1401(k)(1) ................................................................ 26

19 U.S.C. § 1586 ......................................................................... 25

19 U.S.C. § 1587(a) ..................................................................... 25

19 U.S.C. § 1703 ......................................................................... 25

19 U.S.C. § 1709 ......................................................................... 26

21 U.S.C. § 843(b) ....................................................................... 27

28 U.S.C. § 1291 ........................................................................... 3

28 U.S.C. § 1331 ........................................................................... 2

**State Statutes:**

Alaska Stat. § 11.16.110(2)(B) ................................................... 25

Ariz. Rev. Stat. Ann. § 13-1002 ................................................ 25

Colo. Rev. Stat. § 18-1-603 ....................................................... 25

Del. Code Ann. tit. 11, § 271 .................................................... 25

720 Ill. Comp. Stat. 5/5-2 ......................................................... 25

N.J. Stat. Ann. § 2C:2-6 (West) ................................................ 25

18 Pa. Cons. Stat. § 306 ............................................................. 25

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ............................................................ 2

**Legislative Materials:**

164 Cong. Rec. H1293 (daily ed. Feb. 27, 2018)
(statement of Rep. Wagner) ............................................... 9, 12, 36, 37

164 Cong. Rec. H1302 (daily ed. Feb. 27, 2018)
(statement of Rep. Walters) .......................................................... 35, 36

164 Cong. Rec. S1851 (daily ed. Mar. 21, 2018) ........................ 12, 36, 37

164 Cong. Rec. S1860 (daily ed. Mar. 21, 2018)
(statement of Sen. Durbin) ............................................................ 35, 37

H. Rep. No. 115-572, pt. 1 (2018) ..................................................... 35, 36

Staff of S. Permanent Subcomm. on Investigations,
Comm. on Homeland Sec. & Governmental Affairs,
114th Cong., *Backpage.com's Knowing Facilitation
of Online Sex Trafficking* (2017),
https://perma.cc/XQ44-C52V ............................................................ 7, 8

**Other Authorities:**

*Aid and Abet*, Black's Law Dictionary (11th ed. 2019).................... 24, 44

Richard Burn, *A New Law Dictionary* 4 (1792) ..................................... 24

Felix Frankfurter, *Some Reflections on the Reading of Statutes*,
47 Colum. L. Rev. 527 (1947)................................................................ 41

Wayne R. LaFave, 2 *Substantive Criminal Law* § 13.2
(3d ed.), Westlaw (database updated Oct. 2022) ......................... 25, 26

*Pandering*, Black's Law Dictionary (11th ed. 2019)............................... 31

Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3d ed. 1982)...... 44

Antonin Scalia & Bryan A. Garner, *Reading Law:
The Interpretation of Legal Texts* (2012) ........................................... 42

U.S. Dep't of Justice, *The National Strategy for Child
Exploitation Prevention and Interdiction* (Apr. 2016),
https://perma.cc/RN5J-3WT2 ............................................................. 6, 7

# GLOSSARY

| | |
|---|---|
| JA | Joint Appendix |
| FOSTA | The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 |

## INTRODUCTION

Plaintiffs bring this pre-enforcement First and Fifth Amendment challenge to a statute that prohibits aiding and abetting a crime. The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA) proscribes managing certain computer services "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a). FOSTA also removes any impediment under 47 U.S.C. § 230 to state criminal prosecutions of such crimes and the related crime of aiding and abetting sex trafficking. The district court correctly interpreted the statute to encompass only conduct in aid of a criminal transaction and granted the government summary judgment on that basis.

Plaintiffs contend that the statute sweeps beyond traditional principles of aiding and abetting a crime and impermissibly prohibits protected speech, such as advocacy for the decriminalization of prostitution, or efforts to provide sex workers with information about housing or avoiding abusive clients. That interpretation is at odds with the text of the statute, which invokes a canonical formulation of aiding-and-abetting liability—acting with the "intent to promote or facilitate" a

crime—and prohibits certain actions taken with the specific intent to bring about a specific type of crime.

Rejecting plaintiffs' statutory interpretation makes quick work of their constitutional claims. There is no First Amendment right to engage in a course of criminal conduct that, under traditional principles of accomplice liability, intentionally aids and abets the commission of the crimes at issue here, even if that conduct involves speech. The statute's invocation of aiding-and-abetting liability draws on settled legal concepts that provide adequate notice of what the statute prohibits, consistent with the Fifth Amendment. And plaintiffs cannot bring a facial Ex Post Facto challenge to a statute that is plainly capable of being applied prospectively. The judgment should be affirmed.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's federal-question jurisdiction under 28 U.S.C. § 1331. JA20 (complaint). The district court granted the government's motion for summary judgment on March 29, 2022. JA745 (order); JA717-44 (opinion). Plaintiffs filed a timely notice of appeal on April 25, 2022. JA746; *see* Fed. R. App. P. 4(a)(1)(B). This

2

Court has jurisdiction over this appeal from a final decision of the district court under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

The questions presented are:

1. Whether FOSTA encompasses only criminal aiding and abetting and is thus consistent with the First Amendment.

2. Whether FOSTA provides adequate notice of what is unlawful and is thus consistent with the Fifth Amendment.

3. Whether plaintiffs have standing to bring their Ex Post Facto challenge to FOSTA and whether FOSTA, on its face, violates the Ex Post Facto clause.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

**A.    Statutory Background**

**1.    Federal criminal statutes addressing sex trafficking and prostitution**

Several federal criminal statutes can be used to prosecute sex trafficking and prostitution in certain circumstances. The Travel Act, 18

3

U.S.C. § 1952, for example, makes it a federal crime to use a "facility in interstate or foreign commerce"—including the mail and, today, the internet—"with intent to," among other things, "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." *Id.* § 1952(a)(3). The "unlawful activity" included within the Travel Act's prohibition includes "prostitution offenses in violation of the laws of the State in which they are committed or of the United States." *Id.* § 1952(b).

Congress has also created a more specific crime of the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. That provision of the federal criminal code, 18 U.S.C. § 1591, proscribes "knowingly" performing certain actions, such as "provid[ing], obtain[ing], … or solicit[ing] by any means a person," "knowing" that force, fraud, or coercion "will be used to cause the person to engage in a commercial sex act" or that the person was a minor "and will be caused to engage in a commercial sex act." *Id.* § 1591(a)(1). The statute also prohibits "advertis[ing]" a person for a commercial sex act "in reckless disregard of the fact" that force, fraud, or coercion will be used or that the person is a minor. *Id.* And the statute prohibits

4

"knowingly" benefitting financially from "participation in a venture" that engages in such prohibited acts. *Id.* § 1591(a)(2).

A related provision, 18 U.S.C. § 1595, allows victims to bring civil actions against, and recover damages from, perpetrators for violations of, among other things, 18 U.S.C. § 1591, the criminal prohibition on sex trafficking of children and sex trafficking of adults by force, fraud, or coercion.

### 2. The Communications Decency Act of 1996 and the protections of Section 230

In a portion of the Communications Decency Act of 1996 codified at 47 U.S.C. § 230, and commonly known as Section 230, Congress provided for certain limitations on the liability of interactive computer services, such as certain websites, that allow other people to post information online. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Congress further provided that liability may also not be based on "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be

5

obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2). That provision allows service providers "to establish standards of decency without risking liability for doing so." *Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) (quotation marks omitted).

Congress also provided that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). And Congress provided that Section 230 does not "impair the enforcement" of any "Federal criminal statute." *Id.* § 230(e)(1).

### 3. Section 230 thwarts state criminal prosecutions of, and victims' civil suits against, Backpage.com

In the decades since Section 230 was enacted, the internet has grown and changed. One extremely disturbing feature of that growth is that certain "[w]ebsites … emerged as a primary vehicle for the advertisement of children to engage in prostitution." U.S. Dep't of Justice, *The National Strategy for Child Exploitation Prevention and Interdiction* 10, 76 (Apr. 2016), https://perma.cc/RN5J-3WT2.

6

Backpage.com was prominent among those websites, *id*., until it was brought down by federal prosecutors.

As an in-depth Senate investigation found in 2017, Backpage was "the leading online marketplace for commercial sex" and a "hub" for "human trafficking, especially the trafficking of minors." Staff of S. Permanent Subcomm. on Investigations, Comm. on Homeland Sec. & Governmental Affairs, 114th Cong., *Backpage.com's Knowing Facilitation of Online Sex Trafficking* 1 (2017), https://perma.cc/XQ44-C52V (Senate Report) (quotation marks omitted). Indeed, Backpage "reportedly net[ted] more than 80% of all revenue from online commercial sex advertising in the United States" and was "involved in 73% of all child trafficking reports that the National Center for Missing and Exploited Children … receive[d] from the general public." *Id*. at 1, 6.

The Senate's investigation found that Backpage "kn[ew] that it facilitate[d] prostitution and child sex trafficking." Senate Report 3. Indeed, Backpage had taken intentional measures to help sex traffickers avoid detection when posting advertisements online for commercial sex. *See id*. at 23-41. Backpage, for example, would remove

"terms indicative of criminality," such as "lolita" and "little girl," from online ads for commercial sex transactions before publishing them, thus making those ads look "clean[]" without changing "the true nature of the advertised transaction or the real age of the person being sold for sex." *Id.* at 2 (quotation marks omitted). Backpage took such steps to "put[] lipstick on a pig, because when it came down to it, it was what the business was about": "moderating ads for prostitution." *Id.* at 37 (quotation marks omitted).

Nevertheless, when state prosecutors and victims sought to hold Backpage accountable, courts held that Section 230 shielded Backpage from liability. To thwart state criminal prosecution, "Backpage … successfully invoked Section 230 in federal-preemption challenges to state laws in Washington, Tennessee, and New Jersey criminalizing the advertisement of minors for sex." Senate Report 9. A California state court also "dismissed felony pimping and conspiracy charges against Backpage" executives and founders as inconsistent with Section 230. *Id.* In response to these losses in court, in 2017, "50 State attorneys general called on Congress to untie their hands to allow them to bring justice to

8

the websites that sell our children." 164 Cong. Rec. H1293 (daily ed. Feb. 27, 2018) (statement of Rep. Wagner).

Civil suits brought by child sex-trafficking victims against Backpage faced similar hurdles. Victims brought such suits under various state and federal laws, including 18 U.S.C. § 1595, the provision of the criminal code that allows victims to bring civil actions for violating 18 U.S.C. § 1591's prohibition on the sex trafficking of children and the sex trafficking of adults by force, fraud, or coercion. *See, e.g.*, *Doe ex rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149 (D. Mass. 2015); *see also M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053 (E.D. Mo. 2011). Courts dismissed these claims, reasoning that they sought to hold Backpage liable as the publisher of the unlawful advertisements and were thus barred by Section 230. The courts further concluded that civil suits brought under 18 U.S.C. § 1595 for violation of the criminal prohibitions on sex trafficking in Section 1591 did not fall within the exception in Section 230(e)(1) for actions to enforce a federal criminal statute. *See, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18-24 (1st Cir. 2016). In affirming the dismissal of such a suit, the First Circuit explained that,

to the extent that child victims of sex trafficking wished to bring civil suits against internet publishers such as Backpage that "engaged in a course of conduct designed to facilitate sex traffickers' efforts to advertise their victims on the website," their "remedy is through legislation" to amend Section 230, "not through litigation." *Id.* at 16, 29.

### 4.    The Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA)

Congress responded to the obstacles faced by state prosecutors and victims in seeking to hold Backpage and websites like it accountable by enacting the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. No. 115-164, 132 Stat. 1253 (2018) (FOSTA). FOSTA sets forth "the sense of Congress that" Section 230 "was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims" and that "clarification" of Section 230 was "warranted to ensure that such section does not provide such protection to such websites." FOSTA § 2, 132 Stat. at 1253.

FOSTA made two primary statutory changes. First, it added 18 U.S.C. § 2421A to the criminal code. *See* FOSTA § 3(a), 132 Stat. at

1253-54. Section 2421A(a) proscribes "own[ing], manag[ing], or operat[ing] an interactive computer service," as defined in Section 230 (47 U.S.C. § 230(f)(2)), "with the intent to promote or facilitate the prostitution of another person" (or attempting or conspiring to do so). 18 U.S.C. § 2421A(a). Section 2421A(b) provides a longer punishment if someone commits a violation of the base offense and also either (1) "promotes or facilitates the prostitution of 5 or more persons"; or (2) "acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of [18 U.S.C. §] 1591(a)." *Id.* § 2421A(b). A person injured by an aggravated violation may recover civilly. *Id.* § 2421A(c). Section 2421A(e) sets forth an affirmative defense: a person is not criminally or civilly liable under the statute if "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." *Id.* § 2421A(e).

Second, FOSTA established that Section 230 does not bar certain cases involving conduct that violates certain federal criminal laws. *See* FOSTA § 4(a), 132 Stat. at 1254 (codified at 47 U.S.C. § 230(e)(5)). It clarified that Section 230 does not bar: (1) "any claim in a civil action brought under" 18 U.S.C. § 1595, "if the conduct underlying the claim

11

constitutes a violation of section 1591," the federal criminal prohibition on sex trafficking a child or sex trafficking an adult by force, fraud, or coercion; (2) "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of" the federal criminal prohibition on sex trafficking in 18 U.S.C. § 1591; or (3) "any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of" 18 U.S.C. § 2421A, the new criminal prohibition added by FOSTA. 47 U.S.C. § 230(e)(5).

FOSTA provided that these amendments to Section 230 "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment." FOSTA § 4(b), 132 Stat. at 1254-55. While FOSTA was being considered by Congress, the Department of Justice sent a letter to Congress stating that this provision "raises a serious constitutional concern" under "the Constitution's Ex Post Facto Clause." 164 Cong. Rec. H1297. *But see* 164 Cong. Rec. S1856-57 (daily ed. Mar. 21, 2018) (providing analysis by the American Law Division of the Congressional Research Service concluding the bill would not violate the Ex Post Facto Clause).

The statute also added a new definition to the federal criminal prohibition on sex trafficking. That pre-existing statute, among other things, made it a crime to knowingly benefit from "participation in a venture" that violates the prohibition on sex trafficking in Section 1591(a)(1). 18 U.S.C. § 1591(a)(2). FOSTA defined the phrase "participation in a venture" to mean "knowingly assisting, supporting, or facilitating a violation" of Section 1591(a)(1). FOSTA § 5, 132 Stat. at 1255 (codified at 18 U.S.C. § 1591(e)(4)).

## B.    Plaintiffs' First Amendment, Fifth Amendment, and Ex Post Facto Challenges

Plaintiffs are the Woodhull Freedom Foundation, an organization that advocates for sexual freedom; Human Rights Watch, an organization that advocates for human rights; and the Internet Archive, an organization that archives webpages. JA18-19 (complaint). Plaintiffs also include two individuals. Eric Koszyk is a massage therapist who allegedly lost business when Craigslist, subsequent to FOSTA's enactment, stopped allowing a certain type of classified ad that he had previously used to find clients. JA19. Alex Andrews runs a website dedicated to advocating for sex workers' health, safety, and human rights. JA19. Their suit against the Attorney General and the United

13

States seeks a declaratory judgment and injunction preventing the government from enforcing FOSTA against them or anyone else in any circumstances. JA19, 62.

Plaintiffs contend that they "advocate for the legalization of sex work, both domestically and internationally, provide education, health and safety resources, and more broadly work to support sex workers." JA13. They are "concerned that continuing their advocacy and assistance efforts will be considered 'promoting or facilitating' prostitution" within the meaning of the new criminal prohibition created by FOSTA, 18 U.S.C. § 2421A(a). JA13. Plaintiffs contend that FOSTA's criminal prohibition is a content-based restriction on protected speech that fails strict scrutiny and is facially overbroad in violation of the First Amendment. JA47-54. They also contend that the First Amendment prohibits Congress from modifying Section 230 to allow state prosecution and victims' suits against those who violate certain federal criminal statutes. They contend that the scope of FOSTA's restrictions is impermissibly vague in violation of the Fifth Amendment. JA54-56. And they argue that FOSTA is impermissibly retroactive under the Ex Post Facto Clause. JA60-62.

14

C.    **Prior Proceedings**

1.    **Dismissal for lack of standing; first appeal**

The district court initially dismissed the complaint, concluding that plaintiffs lacked Article III standing because FOSTA did not reach the advocacy and archival activities in which some plaintiffs engage. The court also concluded that the massage therapist's loss of the ability to post on an online classified ad service was not remediable by a court order insofar as it depended on the actions of third parties not before the Court. *See Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 198-204 (D.D.C. 2018).

On appeal, this Court reversed and remanded, concluding that at least the two individual plaintiffs had standing. *See Woodhull Freedom Found. v. United States*, 948 F.3d 363 (D.C. Cir. 2020). Judge Rogers, joined by Judge Griffith, explained that, to separate the standing inquiry from the merits, "in a pre-enforcement challenge," such as this one, a plaintiff can establish the injury requirement for Article III standing by demonstrating, among other things, an "'imminent threat' that a statute will be enforced against the plaintiff" where the plaintiff's conduct is "'*arguably* … proscribed by a statute.'" *Id.* at 371

15

(alteration in original) (emphasis added) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

The majority concluded that FOSTA "arguably" proscribed some of plaintiff Alex Andrews' conduct in running a website on which sex workers can rate and review rescue and harm-reduction resources for sex workers. 948 F.3d at 372-74. The majority noted that the statutory terms "promote" and "facilitate" were "susceptible of multiple and wide-ranging meanings," including "to make easier," in general, or "as a synonym for terms like 'aid,' 'abet,' and 'assist,' in which case the term's meaning would be limited by the background law of aiding and abetting." *Id.* at 372 (quotation marks omitted). The majority concluded that it "need not read FOSTA to encompass advocacy or educational activities to hold that Andrews has standing" because her website "allows sex workers to share information about online payment processors like PayPal," which the majority concluded could arguably be proscribed by FOSTA under at least one of its arguable interpretations. *Id.* at 373. The majority also concluded that plaintiff Eric Koszyk, the masseuse, had injuries that would be redressable if he were to prevail because Craigslist stated publicly that it had removed the relevant

16

section of its website "in response to FOSTA's passage" and that it hoped to "bring [it] back some day." *Id.* at 374.

Judge Katsas concurred in part and in the judgment. *See* 948 F.3d at 374-76. He agreed with the majority's reasoning regarding plaintiff Koszyk's standing. *Id.* at 376. And he agreed with the conclusion that plaintiff Andrews had standing. *Id.* at 375-76. He wrote separately to reject the notion that the statutory phrase "promote or facilitate the prostitution of another," as used in FOSTA, could even arguably cover "advocating for decriminalization; educating prostitutes about rights and risks; helping prostitutes obtain housing, medical attention, child care, or other essential services; and even internet archiving that incidentally sweeps up content related to prostitution." *Id.* at 375 (quoting 18 U.S.C. § 2421A(a)). Judge Katsas noted that his colleagues in the majority, in concluding that this was "at least one possible reading of FOSTA," did not actually "adopt this construction of FOSTA." *Id.* And he explained that he would "reject the plaintiffs' proposed construction." *Id.*

Judge Katsas explained that "FOSTA focuses not on prostitution as an abstract legal or policy matter, but on 'the prostitution of another

17

person'—a widely criminalized act involving the exchange of sex for money." 948 F.3d at 375. In the criminal-law context, he explained, "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution … track[s] almost verbatim the canonical formulation for the offense of aiding and abetting." *Id.* In Judge Katsas' view, FOSTA thus "require[s] that the defendant own, manage, or operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Id.* He agreed with the majority's conclusion that plaintiff Alex Andrews had standing because her website "provides prostitutes with information about online payment processors like PayPal, which directly assists the exchange of sex for money" and which "might support an inference that Andrews has the requisite intent to 'promote or facilitate the prostitution' of someone besides herself." *Id.* at 376 (citation omitted) (quotation marks omitted).

## 2. Summary judgment in the government's favor on remand

On remand, the district court granted the government's motion for summary judgment. JA717-44 (opinion). The court adopted the construction of the statute that Judge Katsas set forth in his

concurrence and which the majority left open in the first appeal. The court concluded that the criminal prohibition on operating an interactive computer service with the intent to "promote or facilitate the prostitution of another person," 18 U.S.C. § 2421A(a), is "narrowly tailored" to cover only such operation "with the intent to aid, abet, or assist specific instances of prostitution," JA731. The court explained that "FOSTA's scope is limited to legitimately criminal activity" and that there was thus no basis for plaintiffs' First Amendment overbreadth argument. JA731. The court rejected plaintiffs' argument that the court's interpretation was precluded by this Court's decision in the first appeal, noting that the panel majority concluded only that a broader construction was "arguably" possible, not that the statute *must* be construed more broadly. JA733.

The court noted that many of plaintiffs' other claims "depend in large part on the same overbroad reading of FOSTA" and rejected those claims on similar grounds. JA735. The court explained that FOSTA is not a content-based regulation of speech and is instead "narrowly targeted at a band of conduct that materially advances specific instances of illegal prostitution." JA739 & n.10. The court held that

19

plaintiffs' Fifth Amendment vagueness claim fails for similar reasons because, "[p]roperly construed," FOSTA "provides clear notice of the type of conduct prohibited." JA735-36. The court observed that "plaintiffs' vagueness concerns are further undercut by the presence of the heightened scienter requirements throughout FOSTA's prohibitions," such as the specific-intent requirement of the new crime codified at Section 2421A. JA736; *see also* JA740-41. The court rejected plaintiffs' Ex Post Facto challenge to the retroactive clarification of Section 230's scope because any state criminal prosecutions based on conduct occurring before FOSTA's passage "would be undertaken by parties not before the Court." JA743.

## SUMMARY OF ARGUMENT

In enacting FOSTA, Congress made it a crime to operate certain computer services "with the intent to promote or facilitate" a criminal transaction: "the prostitution of another person" in a jurisdiction in which such conduct is unlawful. 18 U.S.C. § 2421A(a). Congress sought to hold accountable operators of certain computer services that, like Backpage, knowingly take actions specifically intended to aid in the commission of certain statutory violations, such as the illegal sale of sex

20

for money—a quintessentially transactional crime. The statute's terms "promote or facilitate" are longstanding terms of art in criminal law, often used interchangeably with "aiding or abetting."

Plaintiffs do not dispute that Congress may permissibly draw on traditional notions of accomplice liability and punish those who aid and abet the crimes at issue here, even if that criminal course of conduct involves speech. And their First and Fifth Amendment arguments depend entirely on the assertion that the statute extends far more broadly than aiding or abetting the conduct of a criminal offense. Plaintiffs insist that the terms "facilitate" and "promote" should not be read in accordance with their traditional meaning in criminal law and that they should instead be understood to encompass any activity that endorses the prohibited conduct or in some attenuated way makes that conduct easier. The district court correctly rejected that interpretation, and plaintiffs' arguments to the contrary are at odds with the established meaning of the terms employed by Congress, as well as with the legislative history that confirms that the statute is concerned only with traditional aiding-and-abetting accomplice liability for the

21

criminal transactions at issue here. Plaintiffs' pre-enforcement, facial challenge seeks to create constitutional infirmities that do not exist.

Plaintiffs' arguments depend on their mistaken reading of the statute and collapse when that reading is corrected. If the statute covers only conduct or speech so integral to criminal conduct that it falls within traditional principles of accomplice liability, it does not violate the First Amendment. Nor is there a First Amendment obstacle to removing any preexisting statutory protection from state prosecution or civil liability from anyone, like Backpage, who aids and abets such crimes. Congress's reliance on well-known legal principles governing the scope of aiding-and-abetting liability ensures that the statute gives proper notice of what is prohibited, as required by the Fifth Amendment. And plaintiffs' Ex Post Facto challenge fails as well. Plaintiffs cannot obtain judicial relief against state prosecutors or trafficking victims because those people are not parties to this case. There is no indication that plaintiffs face any imminent prosecution for aiding and abetting prostitution before FOSTA was enacted. And the statute does not violate the Ex Post Facto clause on its face because it can be applied prospectively. The judgment should be affirmed.

22

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's grant of a motion for summary judgment." *Grimes v. District of Columbia*, 794 F.3d 83, 88-89 (D.C. Cir. 2015).

## ARGUMENT

I.    **FOSTA Is Consistent With The First Amendment.**

    A.    **To Act With The "Intent To Promote Or Facilitate The Prostitution Of Another Person" Is To Aid Or Abet A Crime.**

In the key portion of FOSTA at issue here, Congress created a criminal prohibition on "own[ing], manag[ing], or operat[ing] an interactive computer service," such as certain types of websites, "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a). FOSTA thus "focuses not on prostitution as an abstract legal or policy matter, but on 'the prostitution of another person'—a widely criminalized act involving the exchange of sex for money." *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 375 (D.C. Cir. 2020) (Katsas, J., concurring in part and in the judgment). And, in that criminal-law context, "FOSTA's requirement of action with an 'intent to promote or facilitate' prostitution … track[s] almost

23

verbatim the canonical formulation for the offense of aiding and abetting." *Id.*

> ### 1. The phrase "promote or facilitate" as used in criminal statutes is equivalent to "aid or abet."

The terms "aid or abet" and "promote or facilitate" have been understood to have the same meaning since at least the 17th century. *Aid and Abet*, Black's Law Dictionary (11th ed. 2019). To "aid and abet" is "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." *Id.*; *see also* Richard Burn, *A New Law Dictionary* 4 (1792) (defining "abettor" as "one who promotes or procures a crime"). Consistent with that longstanding definition, case law and statutes routinely refer to the "intent to promote or facilitate the commission of a crime" as incorporating the concept of aiding-and-abetting liability. Indeed, that is one of the most common definitions of an accomplice in American law: "By definition an accomplice [is] a person who acts with the purpose of promoting or facilitating the commission of the substantive offense for which he is charged as an accomplice." *State v. White*, 484 A.2d 691, 694 (N.J. 1984) (emphases omitted).

24

The Model Penal Code, for example, defines an accomplice, in relevant part, as a person who takes certain actions "with the purpose of promoting or facilitating the commission of" an offense by another person. Model Penal Code § 2.06(3)(a). Numerous states do the same. *See, e.g.*, Alaska Stat. § 11.16.110(2)(B); Ariz. Rev. Stat. Ann. § 13-1002; Colo. Rev. Stat. § 18-1-603; Del. Code Ann. tit. 11, § 271; 720 Ill. Comp. Stat. 5/5-2; N.J. Stat. Ann. § 2C:2-6 (West); 18 Pa. Cons. Stat. § 306. The influential LaFave treatise similarly defines accomplice liability as "giv[ing] assistance or encouragement … with the intent thereby to promote or facilitate commission of the crime" by another person. Wayne R. LaFave, 2 *Substantive Criminal Law* § 13.2 (3d ed.), Westlaw (database updated Oct. 2022).

Consistent with that understanding, federal statutes also employ the phrase to "promote or facilitate" to denote the aiding or abetting of a criminal act. The federal customs statutes, for example, provide that a "hovering vessel" may be boarded, its cargo seized and forfeited, and its master subjected to penalties, *see* 19 U.S.C. §§ 1586, 1587(a), 1703, where such vessel is used to "introduce or promote or facilitate the introduction … of merchandise into the United States in violation of the

25

laws of the United States," *id.* §§ 1401(k)(1), 1709. A criminal forfeiture statute similarly requires that a court sentencing a defendant for the commission of certain offenses must order forfeiture of any property used "to commit, to facilitate, or to promote the commission of such offense." 18 U.S.C. § 982(a)(8)(A).

The Supreme Court expressly relied on the promote-or-facilitate definition of aiding and abetting in the LaFave treatise to explain the scope of aiding-and-abetting liability at common law and in state statutes in *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (explaining that "an accomplice is liable as a principal when he gives 'assistance or encouragement … with the intent thereby to promote or facilitate commission of the crime'" (alteration in original) (quoting LaFave, *supra* § 13.2)); *see also Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (discussing a jury instruction that "requir[ed] that an accomplice in the commission of the crime take action with knowledge that it will promote or facilitate the commission of the crime" (emphases omitted) (quotation marks omitted)).

The Supreme Court also expressly relied on the promote-or-facilitate definition of aiding and abetting from *Black's Law Dictionary*

26

to reject an expansive reading of "facilitate" in another federal criminal statute in *Abuelhawa v. United States*, 556 U.S. 816 (2009). In that case, the Court interpreted the scope of a federal statute that prohibits the intentional use of a communication facility in committing or "facilitating the commission" of a controlled-substance offense. 21 U.S.C. § 843(b). The Court refused to adopt an interpretation of "facilitate" that would have encompassed any act that would make the offense easier to commit. *Abuelhawa*, 556 U.S. at 819. Instead, relying in part on the same definition of "aid and abet" in *Black's Law Dictionary* quoted above, the Court held that "the term 'facilitate'" as used in that criminal statute had an "equivalent meaning" to specialized "terms like 'aid,' 'abet,' and 'assist'" and thus included some "traditional judicial limitation[s]" on aiding-and-abetting liability that come along with those legal terms of art. *Id.* at 821. And this Court has similarly interpreted the criminal prohibition in 18 U.S.C. § 924(c)(1) on the possession of a firearm "in furtherance of" certain crimes to require proof that the firearm "promote[s] or facilitate[s] the crime." *United States v. Wahl*, 290 F.3d 370, 376 (D.C. Cir. 2002) (quotation marks omitted).

Courts have also frequently had occasion to interpret the terms "promote" or "facilitate" with regard to criminal acts in decisions involving the Travel Act, which makes it a crime for anyone to "travel[]" or use "any facility in interstate or foreign commerce, with intent to … promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity" specified by the statute. 18 U.S.C. § 1952(a). In discussing the statute, courts often compress the litany of words to "promote or facilitate" the commission of an unlawful act. *Marshall v. United States*, 355 F.2d 999, 1002 (9th Cir. 1966); *see also, e.g.*, *United States v. Manzo*, 712 F.3d 805, 808 (3d Cir. 2013); *United States v. Ruiz*, 386 F. App'x 530, 531, 532, 534 (6th Cir. 2010) (unpublished); *United States v. Welch*, 327 F.3d 1081, 1095 (10th Cir. 2003); *United States v. Heilmann*, 235 F.3d 1146, 1147 (8th Cir. 2001); *United States v. Bennett*, 95 F.3d 1158 (9th Cir. 1996) (unpublished); *United States v. Nino*, 967 F.2d 1508, 1509 (11th Cir. 1992); *United States v. Baker*, 611 F.2d 961, 963 (4th Cir. 1979); *United States v. Riquelmy*, 572 F.2d 947, 948 (2d Cir. 1978). The First Circuit observed in *Urena-Ramirez v. Ashcroft*, 341 F.3d 51, 54 (1st Cir. 2003), that the phrase "promote or facilitate," as used in the Travel Act,

28

is equivalent to "aid or abet." Addressing the drug-related offense at issue in that case, the First Circuit explained that "the promotion of" a business enterprise involving cocaine was "tantamount to aiding and abetting the distribution of narcotics." *Id.*

In sum, whatever meaning "promote" or "facilitate" might have in everyday speech, their meaning as terms of art in criminal statutes, invoking traditional principles of accomplice liability, is established.

### 2.    FOSTA uses that term of art.

FOSTA uses the phrase "promote or facilitate" in the same way as the other authorities discussed above: to denote aiding-and-abetting liability under traditional principles of criminal law. By selecting a term of art in criminal law "with a legal lineage stretching back" centuries, *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018), Congress also "adop[ted] the cluster of ideas that were attached to each borrowed word," *George v. McDonough*, 142 S. Ct. 1953, 1963 (2022) (quotation marks omitted). The phrase "promote or facilitate," as used in FOSTA, thus extends no further than the traditional understanding of accomplice liability developed in the criminal law context.

29

As Judge Katsas correctly explained in the first appeal in this case, the offense specified in Section 2421A(a) thus applies only where "the defendant own[s], manage[s], or operate[s] a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute." *Woodhull*, 948 F.3d at 375 (Katsas, J., concurring in part and in the judgment). "This is not to suggest that FOSTA requires proof of a specific, completed act of prostitution, as would the offense of aiding and abetting prostitution." *Id.* But it does limit the sweep of the phrase "promote or facilitate" to the kinds of intentional acts that would make an accomplice criminally liable for the prostitution of another person.

**a.** That is the best reading of Section 2421A's text and structure. FOSTA uses the phrase "promote or facilitate" to describe the specific "intent" the criminal defendant must have with respect to the commission of a specific underlying criminal act: "the prostitution of another person," in a jurisdiction in which such prostitution is "[il]legal." 18 U.S.C. § 2421A(a), (e). FOSTA thus "focuses not on prostitution as an abstract legal or policy matter, but on 'the

30

prostitution of another person'—a widely criminalized act involving the exchange of sex for money," and "promote or facilitate" is properly construed in the context of that criminal transaction. *Woodhull*, 948 F.3d at 375 (Katsas, J.). And, in that context, the statute thus "track[s] almost verbatim the canonical formulation for the offense of aiding and abetting" the commission of a crime by another person, *id.*, paralleling the definition of aiding and abetting in legal dictionaries, treatises, the Model Penal Code, numerous state statutes, and several federal statutes, including the Travel Act. Indeed, the term "promoting prostitution" itself has a longstanding, specific meaning: "[t]he act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute." *Pandering*, Black's Law Dictionary (11th ed. 2019) (noting that "pandering" is "[a]lso termed *promoting prostitution*").

That Congress used "facilitate" and "promote" with their usual meaning in the criminal law context is underscored by the inclusion in Section 2421A not only of the base offense of promoting or facilitating "the prostitution of another person" but of the aggravated offense of promoting or facilitating "the prostitution of 5 or more persons." 18

31

U.S.C. § 2421A(a), (b)(1). The statute distinguishes between aiding and abetting in the prostitution of one and several persons; it is not concerned with generic advocacy or information about housing services or harm-reduction strategies. That is also clear from the statute's provision that individuals "injured" as a result of a violation of the statute may "recover damages." *Id.* § 2421A(c). Plaintiffs identify no theory by which someone could be "injured" by abstract advocacy or the provision of harm-reduction information. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 245 (2010) (interpreting bankruptcy provision that prohibits certain means of causing harm to debtors as not covering "prudent advice" that "should cause no harm").

The anomaly of plaintiffs' position is further underscored by the affirmative defense in Section 2421A(e), which applies where "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." 18 U.S.C. § 2421A(e). Plaintiffs' reading posits that Congress sought to criminalize a spectrum of otherwise legal activities, including advocacy, in Section 2421A(a) and (b), only to then exclude such otherwise legal activities from liability in Section 2421A(e). No canon of construction or exercise

32

of common sense permits reading the statute as pitting one provision against the other.

**b.** Plaintiffs are on no firmer ground in attempting to ascribe a sweeping meaning to FOSTA's amendment to 18 U.S.C. § 1591, the federal criminal prohibition on sex trafficking. Section 1591(a)(1) sets out the principal offense of trafficking a child for a commercial sex act or trafficking an adult for a commercial sex act by means of force, fraud, or coercion. In addition to that principal offense, Section 1591(a)(2) provides for criminal liability for those who "knowingly … benefit[] … from participation in a venture which has engaged in an act described in" the paragraph setting out the principal offense. 18 U.S.C. § 1591(a)(2).

FOSTA defined "participation in a venture" (which was previously undefined) to mean "knowingly assisting, supporting, or facilitating a violation of" the principal offense. 18 U.S.C. § 1591(e)(4). Like the phrase "promote or facilitate" in Section 2421A, the phrase "knowingly assisting, supporting, or facilitating" in Section 1591 has a transactional meaning. It defines the scope of criminal liability for those who financially benefit from their own knowing participation in a

33

venture that makes money by engaging in sex trafficking. In urging that this phrase should encompass abstract advocacy or providing information about social services or harm-reduction, plaintiffs would interpret "participation in a venture" without regard to the proscribed sex-trafficking "venture" in which the defendant "participat[es]" and thereby "knowingly … benefits." *Id.* § 1591(a)(2). Plaintiffs' broad interpretation is thus foreclosed by the statute's transactional text. And it ignores the precept that where "Congress uses a term in multiple places within a single statute," as with the term "facilitate" in Section 2421A(a) and (b) and "facilitating" in Section 1591(e)(4), "the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019).

Courts applying the amended version of Section 1591 have thus correctly recognized that the definition of "participation in a venture" added by FOSTA encompasses conduct that makes criminal defendants "aiders and abettors of sex trafficking." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *see United States v. Taylor*, 44 F.4th 779, 789 (8th Cir. 2022) (affirming conviction of a defendant who "provided lingerie," "drove" the victims "to his house for

34

the purpose of performing 'happy-ending' massages," "set the rates for the massages, and received a portion of the clients' payments").

    **c.** FOSTA's legislative history confirms that the statute was "narrowly crafted" to target "websites like Backpage that knowingly facilitate sex trafficking," to hold them "accountable for their exploitative, criminal actions." 164 Cong. Rec. S1860 (daily ed. Mar. 21, 2018) (statement of Sen. Durbin during floor debates). The purpose of the statute was to enable increased enforcement against "[w]ebsites like Backpage, which are essentially storefronts for the facilitation of sex trafficking." 164 Cong. Rec. H1302 (daily ed. Feb. 27, 2018) (statement of Rep. Walters). Accordingly, FOSTA targets "criminal actor websites" that "have gone beyond merely hosting advertisements" and have "purposely created platforms designed to facilitate prostitution and sex trafficking." H. Rep. No. 115-572, pt. 1, at 3 (2018). That is the type of conduct that falls within the statutory prohibition on "facilitation." The fact that "Backpage had knowingly concealed evidence of criminality by systematically editing" ads for sex with children demonstrated that "Backpage knew it facilitated prostitution and child sex trafficking." *Id.* at 5. Under existing law, Backpage had not faced state criminal

consequences for "actively engag[ing] in content creation and purposely concealing illegality in order to profit off of advertisements." *Id.* FOSTA "aim[ed] to remedy" that situation. *Id.*

That remedy, as the bill's sponsors explained, would permit state prosecution of accomplices to the underlying crimes of prostitution and sex trafficking. Senator Blumenthal noted that FOSTA would make sure that certain websites would not have "a free pass to aid and abet sex trafficking," 164 Cong. Rec. S1851, and Senator Heitkamp similarly observed that the new prohibitions were directed at persons who "were complicit and, in fact, abetted these crimes," *id.* at S1853. Emphasizing that "[a]nyone who aids, assists, facilitates or promotes such behavior must be held accountable," 164 Cong. Rec. H1303, Representative Jackson Lee explained that FOSTA would permit enforcement against "bad actor[s] who participate[] in, facilitate[], contribute[] to, or profit[] from this modern-day form of slavery," *id.* at H1293. Representative Smith likewise stressed that permitting prosecution of the operators of interactive computer services who intend to promote or facilitate the prostitution would bring justice to "traffickers and their accomplices,"

36

*id.* at H1294, including "the middleman who facilitated and profited from their slavery," *id.* at H1295.

The legislative history thus confirms that FOSTA does not criminalize plaintiffs' advocacy**,** harm-reduction, or archival work. Indeed, Senator Blumenthal addressed that point explicitly. He explained that FOSTA "would not criminalize the so-called harm reduction communication—information designed to ensure that women and men wrapped up in commercial sex trade can avoid violence, prevent HIV, and access community and support services." 164 Cong. Rec. S1852. Senator Schumer observed that he had "heard concerns that this legislation could be misused or abused to penalize websites that promote important health and safety information … and provide access to community and peer support services." *Id.* at S1860. He emphasized that these concerns were unfounded: "the use of this legislation to create any liability for this important work would be an impermissible misreading of the statutory language." *Id.*

### 3. Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs urge the Court to adopt a construction of FOSTA that would create constitutional concerns where none exist. Even if

37

plaintiffs' interpretation were plausible, it is axiomatic that "[w]hen a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction." *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982).

**a.** Plaintiffs first invite the Court to conclude that its prior decision in the first appeal established that Section 2421A(a) reaches all actions by interactive computer services that could be said to make prostitution easier in any way or to encourage prostitution as a general concept and that "FOSTA is not susceptible" to a narrower aiding-and-abetting reading. Br. 28-29.

The district court correctly rejected that contention. JA733. The issue before this Court in the first appeal was whether plaintiffs had standing to bring a pre-enforcement challenge to the statute. The Court stated that the relevant inquiry for this purpose was whether plaintiffs' conduct would "arguably" be proscribed by FOSTA. *Woodhull*, 948 F.3d at 371. The panel did not purport to resolve the merits of plaintiffs' arguments, and it did not suggest that FOSTA, as properly construed, would actually proscribe such conduct. Instead, the panel majority

noted that "[t]he terms 'promote' and 'facilitate,' when considered in isolation, 'are susceptible of multiple and wide-ranging meanings.'" *Id.* at 372 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)). *One* such meaning might include generic advocacy and educational activities. *Another* such meaning, "limited by the background law of aiding and abetting," would not. *Id.* And the majority held that it "need not read FOSTA" as broadly as plaintiffs urged. *Id.* at 373.

The majority also concluded that plaintiff Andrews had standing because her conduct was "arguably" proscribed by FOSTA. "Even reading the term 'facilitate' narrowly" to encompass only aiding-and-abetting accomplice liability, 948 F.3d at 372, plaintiff Andrews had alleged facts that could arguably fall within the narrow scope of such liability because she allegedly operated a website that "allows sex workers to share information about online payment processors," *id.* at 373; *accord id.* at 376 (Katsas, J., concurring in part and in the judgment). Here, too, the panel did not purport to determine whether Andrews' conduct actually fell within the statute's prohibition.

In a similar vein, plaintiffs urge that the Court should apply the same standards appropriate to a standing analysis in evaluating the

merits, an argument based on a fundamental misunderstanding of the relevant standards in addressing a facial overbreadth claim. Plaintiffs declare that the relevant question is only what the words in a statute "*could*" mean and not what they *actually* mean in context. Br. 28; *see also* Br. 29 ("[T]he district court's narrowed construction of FOSTA makes sense *only* if the terms 'promote' and 'facilitate' can be interpreted as aiding and abetting in the criminal law sense and no other way.").

Plaintiffs get matters backwards. "The first step in overbreadth analysis is to construe the challenged statute," *Williams*, 553 U.S. at 293, by applying all the normal tools of statutory construction to arrive at the statute's meaning, *see id.* at 293-97. Courts thus decide what a statute "prohibits," *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002)—not what it *could* prohibit.

In engaging in that inquiry, courts adhere to the "rule" that "statutes are not read as a collection of isolated phrases." *Abuelhawa*, 556 U.S. at 819-20. "[A] word in a statute," read in isolation, "may or may not extend to the outer limits of its definitional possibilities." *Id.* at 820 (quotation marks omitted). To decide which meaning Congress

actually used, "the words of a statute must be read in their context,"
*Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation marks omitted),
and with attention to Congress's frequent practice, as here, of
"transplant[ing]" a word with an established legal meaning into a
statute and, thereby, "bring[ing] the old soil with it," *Stokeling v. United
States*, 139 S. Ct. 544, 551 (2019) (quoting Felix Frankfurter, *Some
Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537
(1947)).

**b.** Plaintiffs' attempt to defend their reading of the statute
disregards the pertinent tools of construction. They assert first that
"facilitate" and "promote," as used in FOSTA, must invoke the broadest
possible definitions of those terms found in non-legal dictionaries
because those definitions are assertedly the "ordinary meaning" of those
terms. Br. 29-30. But, as explained above, "promote and facilitate" is a
longstanding and well-established legal term of art in American
criminal law. And "when Congress employs a term of art, it presumably
knows and adopts the cluster of ideas" associated with that term of art,
not the definition offered by "standard general-purpose dictionaries."
*FAA v. Cooper*, 566 U.S. 284, 291-92 (2012) (quotation marks omitted).

41

"[W]hen the law is the subject" of interpretation, "ordinary legal meaning is to be expected, which often differs from common meaning" and includes legal "terms of art." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012).

Plaintiffs also err in suggesting that the scope of FOSTA's criminal prohibitions cannot be read in light of "criminal law concepts" like aiding and abetting because the statute provides for civil remedies for violations of those criminal prohibitions. Br. 30. The scope of conduct that is covered by a criminal provision is not enlarged by the inclusion of a civil remedy, and the decisions on which plaintiffs rely do not suggest otherwise. Those cases did not involve civil remedies for criminal prohibitions. And the courts in those cases did not avoid giving criminal law terms their established criminal law meanings in a criminal provision by, as plaintiffs urge here, merely noting the availability of a civil remedy. Rather, those cases involved conduct that was itself only "*civilly* unlawful." Br. 30 (quotation marks omitted). The underlying conduct at issue here, by contrast—the prostitution of another and sex trafficking—is criminal.

42

Nor does the aiding-and-abetting construction of the statute "violate[] the canon against superfluity." Br. 31. Plaintiffs note that Section 2421A(a) is disjunctive: it applies where a defendant engages in certain conduct with the intent to facilitate "or" promote the prostitution of another. Plaintiffs contend that the district court interpreted "facilitate" to mean "aiding and abetting" and that, on that understanding, "promote" would either be surplusage or mean "something more than 'aiding and abetting.'" *Id.* But the district court did not interpret "facilitate," standing alone, to mean "aid and abet"; it interpreted the entire phrase "promote or facilitate" as duplicating "the canonical formulation for the offense of aiding and abetting." JA730 (quoting 948 F.3d at 375 (Katsas, J.)).

In any event, "promote" is not surplusage any more than "abet" is, or any of the other many words typically used to invoke aiding-and-abetting liability. *See* 18 U.S.C. § 2(a) (providing for general accomplice liability for anyone who "aids, abets, counsels, commands, induces or procures" the commission of a crime); Br. 39 n.9 (noting, in contradiction of the surplusage argument made just pages earlier in the same brief, that legal sources often use "many more verbs and gerunds"

43

to describe aiding-and-abetting liability). The phrase "aid and abet" is sometimes thought to be "unnecessarily verbose" to the extent that "[a]ny aid given with mens rea is abetment." *Aid and Abet*, Black's Law Dictionary (11th ed. 2019) (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 724-25 (3d ed. 1982)). But any such overlap would never cause a court to conclude that "abet" in the phrase "aid and abet" must therefore be read according to a more general dictionary definition to sweep beyond the criminal law concept of aiding-and-abetting accomplice liability. The same is true with "promote or facilitate" as an established term of art.

**c.** The Immigration and Naturalization Act and the Anti-Riot Act cases that plaintiffs cite (Br. 29-33, 35-36) offer no support for their reading of FOSTA. The immigration cases addressed 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a crime to "encourage[] or induce[] an alien" to come to or remain in the United States, knowing that the alien would thereby violate federal law. In holding that statute overbroad under the First Amendment, the Ninth and Tenth Circuits have declined to read the terms "encourage[] or induce[]" as invoking traditional criminal-law concepts of facilitating or soliciting unlawful

44

activity. *See United States v. Hansen*, 25 F.4th 1103, 1108-09 (9th Cir. 2022); *United States v. Hernandez-Calvillo*, 39 F.4th 1297, 1303-07 (10th Cir. 2022). Those decisions are incorrect, and the government is seeking Supreme Court review in *Hansen. See* No. 22-179 (docketed Aug. 29, 2022). The Supreme Court previously granted certiorari to review a decision of the Ninth Circuit adopting the same incorrect construction of Section 1324(a)(1)(A)(iv), and the Court vacated that decision, on other grounds. *United States v. Sineneng-Smith*, 910 F.3d 461, 481-83 (9th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 1575 (2020). Even taking the recent Ninth and Tenth Circuit decisions at face value, those courts construed the term "encourage[]" in Section 1324(a)(1)(A)(iv) expansively for reasons that do not apply here, including because a neighboring provision in Section 1324 expressly prohibits some forms of "aid[ing] or abet[ting]." 8 U.S.C. 1324(a)(1)(A)(v)(II); *Hernandez-Calvillo*, 39 F.4th at 1305 (identifying the existence of that separate "aid[] or abet[]" provision as "crucial[]" to that court's broader interpretation of "encourage[]"); *Hansen*, 25 F.4th at 1108-09 (same).

45

The cases addressing the Anti-Riot Act are similarly inapposite. That statute criminalizes, among other things, interstate travel with intent to "incite a riot," to "organize, promote, encourage, participate in, or carry on a riot," or to "aid or abet any person in inciting or participating in or carrying on a riot." 18 U.S.C. § 2101(a). The Fourth and Ninth Circuits, in the course of determining that the Anti-Riot Act was overbroad in part, have concluded that to "promote" or "encourage" a riot, within the meaning of that statute, includes "abstract advocacy" in favor of rioting. *United States v. Miselis*, 972 F.3d 518, 536-37 (4th Cir. 2020); *United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021) (per curiam). In so holding, those courts emphasized that a definitional provision of the same Act, as they interpreted it, expressly provided that "promoting" and "encouraging" a riot in the underlying criminal offense "shall … be deemed to mean the mere … advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." *Miselis*, 972 F.3d at 539 (alterations in original) (emphases omitted) (quoting 18 U.S.C. § 2102(b)); *Rundo*, 990 F.3d at 718. FOSTA contains no similar provision, and the Anti-Riot Act cases are readily distinguishable on that basis alone.

46

The courts interpreting the Anti-Riot Act also recognized that "promote" can bear different meanings in different contexts, and they further recognized that the Supreme Court had construed "promote" in another criminal statute, 18 U.S.C. § 2252A, to have a narrow, "transactional connotation" of "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer." *Miselis*, 972 F.3d at 537 (quoting *Williams*, 553 U.S. at 294, 299-300). The courts concluded that such a limiting construction was not available for the Anti-Riot Act because, in their view, a riot is "wholly non-transactional" and "can't materialize until a sufficient number of people are persuaded to show up." *Id.* "In *this* statutory context," the courts concluded, "'promote' refers to abstract advocacy." *Id.*; *see also Rundo*, 990 F.3d at 717. FOSTA, by contrast, addresses promoting and facilitating a quintessentially transactional crime—the exchange of sex for money in jurisdictions where that is prohibited. The district court here thus correctly concluded that, regardless of whether the out-of-circuit Anti-Riot Act cases were correctly decided, the reasoning of those cases, on their own terms, would not apply here, where "[a] limiting

47

construction" encompassing "only such aiding and abetting of specified instances of criminal conduct" is "readily available." JA732-33.

### B. The First Amendment Does Not Provide Immunity For Those Who Intentionally Aid And Abet The Crimes At Issue Here Under Traditional Principles Of Criminal Law.

Plaintiffs recognize that the kind of speech that they filed this lawsuit to protect—*e.g.*, answering prostitutes' health questions or sharing information about abusive clients—"cannot be said to be 'aiding or abetting' the crime of prostitution." Br. 33. And they offer no argument as to why the statute should be held to violate the First Amendment if it reaches only traditional aiding-and-abetting accomplice liability.

"[L]ong-established caselaw provides that speech … that constitutes criminal aiding and abetting" under traditional principles of accomplice liability "does not enjoy the protection of the First Amendment." *Rice v. Paladin Enters.*, 128 F.3d 233, 242-43 (4th Cir. 1997). Plaintiffs do not dispute that point. And rightly so. It "has never been deemed an abridgment of freedom of speech … to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written,

48

or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). "[T]he constitutional freedom for speech" does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Id.* at 498. "Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities." *Williams*, 553 U.S. at 298. Such "'prevention and punishment'" of "speech integral to criminal conduct" has "'never been thought to raise any Constitutional problem.'" *United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (citation omitted). There is thus "no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes," or that it could be forbidden to publish sex-segregated job ads that "aid" employers in indicating illegal sex preferences in hiring. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973).

**1.** Plaintiffs' facial overbreadth claim thus fails on the merits. "[I]nvalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that

49

it has been made criminal—has obvious harmful effects." *Williams*, 553
U.S. at 292. For that reason, the Supreme Court has "vigorously
enforced the requirement that a statute's overbreadth be *substantial*,
not only in an absolute sense, but also relative to the statute's plainly
legitimate sweep." *Id*.

FOSTA is not overbroad at all, much less substantially so. Indeed,
plaintiffs offer no argument that the statute would be substantially
overbroad if "promote or facilitate" were read consistent with traditional
criminal law concepts. The district court thus correctly concluded that
FOSTA's "legitimate sweep, encompassing only conduct or unprotected
speech integral to criminal activity, predominates any sweep into
protected speech." JA734. "[I]ndeed," the court concluded, in the
circumstances presented here, FOSTA does not "prohibit *any* such
protected speech, much less a sufficient amount so as to render the Act
overbroad." JA734.

**2.** Plaintiffs' argument that FOSTA is a content-based or
viewpoint-based regulation of speech that is subject to strict scrutiny is
similarly without merit. "FOSTA, on its face, is not a direct regulation
of speech." JA738. It prohibits owning, managing, or operating an

50

interactive computer service with a specific intent to aid or abet a

specific crime under traditional principles of accomplice liability. 18

U.S.C. § 2421A(a). That the government has permissibly rendered this

"course of conduct" a criminal act, even if it may in some circumstances

be "carried out by means of language," does not render the statute a

content-based regulation of speech subject to any First Amendment

scrutiny. *Giboney*, 336 U.S. at 502.

As the district court correctly noted, "[p]laintiffs' contention to the

contrary rests, again, primarily on their overreading of" FOSTA as

regulating "the use of the internet to host the generalized 'promotion' of

prostitution as a concept." JA739. Because the statute does not regulate

generalized advocacy, "FOSTA does not enact a government regulation

of speech that takes a 'pro-prostitution' stance." JA739. It does not

"target[] speech based on its communicative content"—that is, based on

"the topic discussed or the idea or message expressed." *City of Austin v.

Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022)

(quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Moreover,

FOSTA's prohibition on criminal aiding and abetting in the

circumstances presented here is "clearly justified by purposes wholly

51

[un]related to any expressive content" of language used to effectuate that criminal course of conduct. JA739; *see Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Congress enacted FOSTA to ensure that criminal facilitators like Backpage could no longer attempt to invoke Section 230 to escape justice for their crimes. And "[t]he First Amendment permits" the government to outlaw that "particularly virulent form" of criminal conduct. *Virginia v. Black*, 538 U.S. 343, 363 (2003).[1]

**3.** Plaintiffs' contention that FOSTA violates the First Amendment by "selective[ly] remov[ing]" Section 230's protections (Br. 2) is similarly without basis. Just as there is no First Amendment right to aid and abet a crime, there is no First Amendment right to retain a statutory protection against being held accountable for aiding and abetting a crime.

Even before FOSTA was enacted, Section 230 allowed the federal government to enforce any "Federal criminal statute." 47 U.S.C. § 230(e)(1). The federal government could thus, before the enactment of

---

[1] Plaintiffs forfeited in district court any argument that FOSTA would be subject to or fail any form of First Amendment scrutiny below strict scrutiny. JA739 n.10.

52

FOSTA and notwithstanding any other provision of Section 230, criminally prosecute anyone who sexually trafficked a child or an adult by force, fraud, or coercion in violation of 18 U.S.C. § 1591. And the federal government could also already prosecute anyone who used a facility in interstate commerce, such as the internet, "with intent to … promote" or "facilitate" the "unlawful activity" of "prostitution" in violation of the Travel Act, 18 U.S.C. § 1952(a)(3), (b). Moreover, Section 230 allowed for such federal criminal prosecutions while, at the same time, protecting under Section 230(c)(2) any service provider against liability predicated on actions voluntarily taken in good faith to restrict access to material that the provider considers to be "objectionable." 47 U.S.C. § 230(c)(2). Plaintiffs recognize this pre-existing state of the law before FOSTA and correctly raise no argument that it violated anyone's First Amendment rights.

FOSTA did not alter Section 230 in any way relevant to the First Amendment. FOSTA only amended Section 230 so that it would no longer stand in the way of state criminal enforcement of state laws for conduct that would also violate the same federal criminal laws discussed above (sex trafficking in violation of Section 1591 and

promoting or facilitating prostitution under the Travel Act) that the
federal government could already enforce, or thwart the ability of
victims to recover civilly for sex trafficking. *See* 47 U.S.C. § 230(e)(5). In
this way, Section 2421A serves as a convenient way for Congress to
cross-reference in Section 230 a subset of conduct that was already
subject to federal criminal prosecution under the Travel Act in order to
ensure that such conduct (and only such conduct, not all other conduct
covered by the Travel Act) could be the basis for state criminal
enforcement alongside preexisting federal criminal enforcement.

That is far from the "sweeping" change that plaintiffs suggest,
Br. 54, and it poses no First Amendment concerns. Congress was not
compelled by the First Amendment to enact Section 230 in the first
place. And, when it enacted Section 230, Congress was not forbidden by
the First Amendment from carving out certain things, such as federal
prosecution of certain crimes, from Section 230's protections, while also
maintaining protections for service providers who, in good faith,
establish and police their own standards of decency. That much is
common ground between the parties. *See, e.g.*, JA12 (challenging

FOSTA, not Section 230 as originally enacted in the Communications Decency Act).

Congress is also not forbidden from amending Section 230 to further clarify or expand the set of prosecutors and victims who may bring a narrow set of specified actions against criminal actors such as Backpage. As the district court correctly noted, "plaintiffs cannot point to a First Amendment principle" that would prevent Congress from doing so. JA737. Allowing states to apply traditional principles to punish criminal accomplices and allowing victims to recover damages from sex traffickers and their accomplices does not create a "heckler's veto," Br. 55, or "threaten lifestyle choices," Br. 40. And allowing such legal actions, while keeping in place the protections for those service providers who take actions in good faith to restrict material they deem "objectionable," 47 U.S.C. § 230(c)(2), does not incentivize "unconstitutional collateral censorship," Br. 55. As this Court has already explained, the good-faith protections of Section 230(c)(2) merely allow a service provider to permissibly "establish" its own "standards of decency." *Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) (quotation marks omitted). And no First Amendment principle compels

a service provider to keep material on its service that aids and abets a crime. Indeed, plaintiffs do not argue that FOSTA's modification of Section 230, construed in the manner that the government and district court interpret it, would violate the First Amendment.

Plaintiffs' claim instead turns entirely on plaintiffs' other arguments that FOSTA is an impermissibly overbroad and vague regulation of protected speech. *See* Br. 2 (arguing that FOSTA's "broad and poorly defined restrictions on Internet speech and selective removal of immunity" violate the First Amendment); Br. 52 (arguing that FOSTA's amendments to Section 230 "combined with its other provisions" violate the First Amendment (initial capitalizations omitted)); Br. 54 (arguing that a constitutional infirmity arises from "the intersection of FOSTA's amendments to Section 230 and its sweeping new liability provisions"). As plaintiffs concede, this claim will thus "collapse" if the Court affirms the district court's judgment as to plaintiffs' other First and Fifth Amendment claims. Br. 54 n.13.

## II.   FOSTA Is Consistent With The Fifth Amendment In Providing Adequate Notice Of What Is Unlawful.

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Williams*, 553

56

U.S. at 304. It requires that a statute "provide a person of ordinary intelligence fair notice of what is prohibited." *Id.* Determining whether a statute provides fair notice depends on "the application of traditional rules for statutory interpretation." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017). In conducting that analysis, it does not present a constitutional problem that "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* at 1107 (quotation marks omitted). A statute is thus not unconstitutionally vague where, as here, terms that may be potentially ambiguous in isolation come with "narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306.

**1.** FOSTA provides adequate notice of what it prohibits. All of the conduct prohibited by FOSTA was already unlawful before FOSTA, and plaintiffs correctly do not contend that the Travel Act or the prohibition on sex trafficking in Section 1591, before FOSTA, were impermissibly vague. Neither is FOSTA. As explained above, applying the usual tools of statutory construction demonstrates that FOSTA prohibits operating an interactive computer service with the specific intent of aiding and

57

abetting the crime of prostitution of another, or knowingly benefiting

from participating in a venture by knowingly aiding and abetting sex

trafficking. That the statute does not set out exhaustively all the

specific conduct that would constitute aiding and abetting crimes is not

a constitutional defect. "[P]erfect clarity and precise guidance have

never been required even of regulations that restrict expressive

activity." *Ward*, 491 U.S. at 794. The "settled legal meaning[],"

*Williams*, 553 U.S. at 306, of aiding and abetting liability in criminal

law, combined with the criminal law of the relevant jurisdictions that

makes the prostitution of another person unlawful, and the other

elements of the sex trafficking offense in Section 1591, provide more

than enough guidance to allow ordinary people to avoid becoming, like

Backpage, criminally complicit.

Indeed, plaintiffs do not even contend that the statute, interpreted

narrowly as the district court did, would be unconstitutionally vague.

Plaintiffs' vagueness challenge instead rests on their incorrectly broad

reading of the statutory phrases "promote or facilitate" and "assisting,

supporting, or facilitating." Br. 37-38. By focusing on the alleged

breadth of FOSTA rather than its clarity, plaintiffs attempt to

58

improperly "merge[]" their "vagueness challenge with their First Amendment claims." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). Plaintiffs' vagueness challenge fails because FOSTA's invocation of terms with settled legal meanings provides adequate notice.

Plaintiffs further contend that FOSTA is impermissibly vague in providing for an aggravated offense in Section 2421A(b)(2) where a service provider's intentional aiding and abetting of the prostitution of another person also "contributes to sex trafficking." Br. 38 (quoting 18 U.S.C. § 2421A(b)(2)). But the statute does not end where plaintiffs stop quoting. It provides for enhanced criminal punishment where aiding and abetting the prostitution of another person also "contribute[s] to sex trafficking, *in violation of [Section] 1591(a)*." 18 U.S.C. § 2421A(b)(2) (emphasis added). The aggravated offense thus applies where the commission of the base offense also helped cause a violation of another well-defined criminal prohibition on aiding and abetting sex trafficking. Plaintiffs cite no authority for the proposition that such a provision fails to provide adequate notice of what is prohibited.

**2.** The statute's *mens rea* requirements further "dispel[]" any remaining vagueness concerns. *Grayned v. City of Rockford*, 408 U.S. 104, 113 (1972). The base and aggravated offenses in Section 2421A both require that the defendant specifically "inten[d]" to aid and abet the prostitution of another person. 18 U.S.C. § 2421A(a), (b). And "the 'every day' task of assessing intent" is not "inherently vague." *National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 27 (D.C. Cir. 2009) (quoting *Williams*, 553 U.S. at 306). The definition that FOSTA added for "participation in a [sex-trafficking] venture," as used in Section 1591, requires that the criminal defendant "knowingly" assist, support, or facilitate a violation of the prohibitions on sex trafficking in Section 1591(a). 18 U.S.C. § 1591(e)(4). And "the Supreme Court has found a 'knowing' requirement sufficient to ameliorate vagueness concerns." *National Ass'n of Mfrs.*, 582 F.3d at 28.

Plaintiffs note (Br. 42) that there is disagreement among some courts about the standards that apply to certain types of civil suits brought under Section 1595 against interactive computer services. That disagreement centers on whether such suits must satisfy the "knowingly assisting, supporting, or facilitating" sex trafficking

60

standard that FOSTA added to Section 1591 (but not to Section 1595) in order to fall within FOSTA's amendments to Section 230. As amended by FOSTA, Section 230 allows Section 1595 civil suits "if the conduct underlying the claim constitutes a violation of section 1591." 47 U.S.C. § 230(e)(5)(A).

Regardless of which side of that dispute is ultimately determined to be correct, plaintiffs' vagueness challenge fails. Deciding which side of that dispute is correct does not turn on an impermissibly vague "subjective judgment," *Williams*, 553 U.S. at 306, but on the proper application of the traditional tools of statutory construction. Plaintiffs identify no authority for their implicit proposition that a statute is unconstitutionally vague simply because some lower courts so far have disagreed as to its meaning. *See Johnson v. United States*, 576 U.S. 591, 600-01 (2015) (finding a statute impermissibly vague, not because of numerous "division[s]" among courts about whether the statute applied in certain circumstances, but because "pervasive disagreement about the nature of the inquiry" made application of the statute no more than "guesswork"); *cf. Reno v. Koray*, 515 U.S. 50, 64 (1995) (holding that a "statute is not ambiguous for purposes of lenity merely because there is

61

a division of judicial authority over its proper construction" and that "[t]he rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended" (quotation marks and citations omitted)).

Plaintiffs are also mistaken in arguing that Section 2421A(b)(2)'s aggravated offense imposes liability based only on "a generalized notion" that some speech "may be construed to 'promote or facilitate' prostitution or to 'contribute to sex trafficking.'" Br. 41 (quoting 18 U.S.C. § 2421A(b)(2)). To the contrary, Section 2421A(b)(2) requires that the defendant (i) operate an interactive computer service with the specific "inten[t]" to thereby aid and abet the prostitution of another in violation of Section 2421A(a), and (ii) do so in "reckless disregard" that such intentionally criminal conduct also "contributed to sex trafficking, in violation of [Section] 1591(a)." 18 U.S.C. § 2421A(b)(2). The first requirement supplies "the crucial element separating legal innocence from wrongful conduct." *Elonis v. United States*, 575 U.S. 723, 737 (2015) (quotation marks omitted).

The second requirement adds an *additional mens rea* element that further separates criminal conduct from aggravated criminal conduct.

62

Liability for that aggravated offense does not turn on any "generalized notion" of how speech "may be construed." Br. 41. It turns on the defendant himself knowing the facts necessary to realize, and actually realizing, that—like Backpage deleting "Lolita" when posting ads for sex in exchange for money—the defendant's conduct in aiding and abetting the prostitution of another person has also created a substantial and unjustifiable risk of criminal sex trafficking. *See Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994) (noting that criminal recklessness requires that "a person disregard[] a risk of harm of which he is aware"); Model Penal Code § 2.02(c). Plaintiffs identify no authority for the extraordinary proposition that, where a criminal defendant knows the facts of his intentionally aiding and abetting prostitution *and* realizes that those criminal actions also created a substantial and unjustifiable risk of enabling sex trafficking as prohibited by another well-defined statute, he cannot be held criminally liable without some greater degree of culpability. *Cf. Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (allowing criminal punishment for defamation where public official knew a statement was false or acted "in reckless disregard" of its falsity).

63

### III. Plaintiffs' Pre-Enforcement Ex Post Facto Challenge Also Fails.

Plaintiffs note that the amendments to Section 230 brought about by FOSTA Section 4(a) (codified at 47 U.S.C. § 230(e)(5)) "shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after" FOSTA was enacted. FOSTA § 4(b), 132 Stat. at 1254-55. Plaintiffs contend that FOSTA thereby violates the Ex Post Facto Clause, which provides that no "ex post facto Law shall be passed." U.S. Const, art. I, § 9, cl. 3. The district court correctly held that, regardless of whether applying FOSTA's changes to Section 230 to conduct occurring before the date of FOSTA's enactment would violate the Ex Post Facto Clause, the court could not "provide the plaintiffs with any relief" because plaintiffs had not brought suit against anyone who "could even hypothetically undertake enforcement of FOSTA in a manner that would violate the Ex Post Facto Clause." JA743.

FOSTA Section 4(a) amended Section 230 to permit state prosecutors to bring certain criminal charges under state law (where the underlying conduct would also constitute a violation of specified federal criminal laws) and to permit the victims of sex trafficking to bring civil suits against perpetrators for violations of the federal

64

criminal prohibition on sex trafficking. 47 U.S.C. § 230(e)(5). But

plaintiffs did not name as defendants the people who could bring such

actions: state prosecutors or victims of sex trafficking. They named as

defendants only the United States and the Attorney General. JA19.

Accordingly, even if plaintiffs had violated the prohibition on sex

trafficking or aiding and abetting the prostitution of another before

FOSTA had passed, plaintiffs' asserted injury would not be remediable

in this suit. Judicial remedies "do not simply operate on legal rules in

the abstract"; they "operate with respect to specific parties." *California

v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quotation marks omitted). That

is true even for declaratory judgments, which, just like injunctions,

cannot be issued in the absence of a remediable and concrete case or

controversy between the relevant parties. *Id.*

In any event, plaintiffs' facial Ex Post Facto challenge fails on the

merits. Plaintiffs would have to show that "no set of circumstances

exists under which the Act would be valid." *United States v. Salerno*,

481 U.S. 739, 745 (1987). Yet FOSTA's modification of Section 230 has

numerous applications that would not, in plaintiffs' view, violate the Ex

Post Facto clause, such as state prosecutions for conduct occurring after

65

the enactment of FOSTA. No authority supports plaintiffs' bare assertion (Br. 56-57) that facial Ex Post Facto Clause challenges receive the relaxed "overbreadth" treatment available for facial claims brought under the First Amendment.

Nor do plaintiffs say that, if FOSTA is construed in the narrow way in which the district court interpreted it, they will be imminently subject to criminal prosecution for sex trafficking or aiding and abetting the prostitution of another based on conduct occurring before FOSTA was enacted. Plaintiffs identify no such attempted prosecution since FOSTA was enacted in April 2018, and such hypotheticals become increasingly unlikely over time. If a state prosecutor were to bring criminal charges against plaintiffs or anyone else for violating specific state laws against sex trafficking or aiding and abetting the prostitution of another for conduct pre-dating FOSTA, the defendant in such a criminal proceeding would have every incentive and opportunity to fully litigate an Ex Post Facto Clause argument in that as-applied setting. *E.g. Stogner v. California*, 539 U.S. 607 (2003).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MARK B. STERN
/s/ ***Joseph F. Busa***
JOSEPH F. BUSA
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*Joseph.F.Busa@usdoj.gov*

NOVEMBER 2, 2022

67

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,686 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joseph F. Busa*
JOSEPH F.BUSA
Counsel for Defendants-Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Joseph F. Busa*

JOSEPH F.BUSA
Counsel for Defendants-Appellees

**ADDENDUM**

# TABLE OF CONTENTS

18 U.S.C. § 1591 ................................................................... A1

18 U.S.C. § 1595 ................................................................... A3

18 U.S.C. § 1952 ................................................................... A4

18 U.S.C. § 2421A ................................................................. A5

47 U.S.C. § 230 .................................................................... A6

## 18 U.S.C. § 1591. Sex trafficking of children or by force, fraud, or coercion

**(a)** Whoever knowingly—

**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is—

**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or

A1

recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)** In this section:

    **(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

    **(2)** The term "coercion" means—

        **(A)** threats of serious harm to or physical restraint against any person;

        **(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

        **(C)** the abuse or threatened abuse of law or the legal process.

    **(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

    **(4) [Added by FOSTA]** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

    **(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

    **(6)** The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

**18 U.S.C. § 1595. Civil remedy**

**(a)** An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

**(b)**

   **(1)** Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

   **(2)** In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

**(c)** No action may be maintained under subsection (a) unless it is commenced not later than the later of—

   **(1)** 10 years after the cause of action arose; or

   **(2)** 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

**(d) [Added by FOSTA]** In any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who violates section 1591, the attorney general of the State, as parens patriae, may bring a civil action against such person on behalf of the residents of the State in an appropriate district court of the United States to obtain appropriate relief.

A3

## 18 U.S.C. § 1952 [Travel Act]. Interstate and foreign travel or transportation in aid of racketeering enterprises

**(a)** Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

   **(1)** distribute the proceeds of any unlawful activity; or

   **(2)** commit any crime of violence to further any unlawful activity; or

   **(3)** otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform—

   **(A)** an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or

   **(B)** an act described in paragraph (2) shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

**(b)** As used in this section (i) "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title and (ii) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

**...**

A4

**18 U.S.C. § 2421A. [Added by FOSTA] Promotion or facilitation of prostitution and reckless disregard of sex trafficking**

**(a) In General.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person shall be fined under this title, imprisoned for not more than 10 years, or both.

**(b) Aggravated Violation.**—Whoever, using a facility or means of interstate or foreign commerce or in or affecting interstate or foreign commerce, owns, manages, or operates an interactive computer service (as such term is defined in defined in section 230(f) the Communications Act of 1934 (47 U.S.C. 230(f))), or conspires or attempts to do so, with the intent to promote or facilitate the prostitution of another person and—

    **(1)** promotes or facilitates the prostitution of 5 or more persons; or

    **(2)** acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of [18 U.S.C.] 1591(a),

shall be fined under this title, imprisoned for not more than 25 years, or both.

**(c) Civil Recovery.**—Any person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees in an action before any appropriate United States district court.

**(d) Mandatory Restitution.**—Notwithstanding sections 3663 or 3663A [of title 18 of the U.S. Code] and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any violation of subsection (b)(2). The scope and nature of such restitution shall be consistent with section 2327(b).

**(e) Affirmative Defense.**—It shall be an affirmative defense to a charge of violating subsection (a), or subsection (b)(1) where the defendant proves, by a preponderance of the evidence, that the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted.

A5

## 47 U.S.C. § 230. Protection for private blocking and screening of offensive material

**(a) Findings.** The Congress finds the following:

**(1)** The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

**(2)** These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

**(3)** The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

**(4)** The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.

**(5)** Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

**(b) Policy.** It is the policy of the United States—

**(1)** to promote the continued development of the Internet and other interactive computer services and other interactive media;

**(2)** to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

**(3)** to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

**(4)** to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict

A6

their children's access to objectionable or inappropriate online material; and

**(5)** to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

## (c) Protection for "Good Samaritan" blocking and screening of offensive material

**(1) Treatment of publisher or speaker.** No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

**(2) Civil liability.** No provider or user of an interactive computer service shall be held liable on account of—

**(A)** any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

**(B)** any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

...

## (e) Effect on other laws.

**(1) No effect on criminal law.** Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal statute.

...

**(3) State law.** Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be

A7

imposed under any State or local law that is inconsistent with this section.

...

**(5) [added by FOSTA] No effect on sex trafficking law.**
Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit—

> **(A)** any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title;

> **(B)** any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of title 18; or

> **(C)** any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

**(f) Definitions**. As used in this section:

...

**(2) [cross-referenced by FOSTA] Interactive computer service**. The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

**(3) Information content provider.** The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.

...

A8